UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NICOLE DEL VECCHIO and ARIANA DEL VECCHIO, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiffs, | **COMPLAINT — CLASS ACTION** |
| vs. | JURY TRIAL DEMAND |
| AMAZON.COM, INC. | |
| Defendant. | |

Plaintiffs, individually and on behalf of all others similarly situated, alleging as follows based on personal knowledge of their own acts and observations and, otherwise, on information and belief based on investigation of counsel.

## I.  NATURE OF THE ACTION

1.     For years, Amazon has been taking visitors' personal information that it was not entitled to take.  It does so by misusing privacy-protection software on users' own computers, bending the software to Amazon's purpose of collecting more personal information than it had a right to collect or that users have given it consent to collect.

2.     When Microsoft armed its widely used Internet Explorer web browser ("IE") with new privacy controls that easily and automatically assessed websites' privacy policies for users (*see* Figure 1, below), Amazon turned the advance into a step backward for its visitors. Amazon circumvents the privacy filters of IE users by spoofing IE into categorizing Amazon.com as more privacy-protective than it actually is.

LAW OFFICES OF
**CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813  ●  Fax: (425) 868-7870

Figure 1.  IE privacy settings—Medium **(default)**



3.      By default, as shown above, IE's new "Privacy" feature not only automatically reads websites' privacy policies but, based on the websites' privacy policies, automatically restricts websites' ability to set cookies on IE users' computers.

4.      For users who set IE's privacy filters higher than the default setting, Amazon is ready with another circumvention technique.  In place of browser cookies, Amazon collects user information using Adobe Flash Local Shared Objects, also called "Flash Cookies."

5.      Amazon effectively raises the price of admission to its website without telling users and reaches into users' pockets to extract a premium.

6.      In this complaint, Plaintiffs, individually and on behalf of a class of similarly situated persons, seeks relief under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; the Consumer Protection Act, RCW § 19.86.010 et seq.; and common law.

## II.  PARTIES

7.      Plaintiffs are individuals who used IE versions 6, 7, and/or 8 to visit Amazon.com and purchase products on Amazon.com.  They were protected by IE's default privacy settings and/or higher privacy settings to restrict the ability of websites that use persistent browser cookies in collecting users' personally identifiable information ("PII").

COMPLAINT                                                          - 2 -

8.      Defendant Amazon.com, Inc. is a publicly traded Delaware corporation head-quartered at 410 Terry Avenue North, Seattle, Washington 98109.  Amazon does business throughout the state of Washington and the United States.

9.      Amazon is the owner and operator of the website located at http://www.ama-zon.com, an online marketplace where consumers can purchase retail goods sold by Amazon and other merchants.

10.     Amazon generates revenue in a number of ways, including:

        a.      sales of its goods;

        b.      fixed fees, revenue-share fees, and/or per-unit activity fees that Amazon charges merchants that sell goods on Amazon's website and, in conjunction with Amazon, on their own websites;

        c.      fees from advertisers that display ads to consumers visiting Amazon's website;

        d.      fees earned from website operators and their agents by serving online advertisements to Amazon users visiting other websites;

        e.      fees earned by providing promotional services and participating in co-branded credit card agreements.

### III.   JURISDICTION AND VENUE

11.     This Court has diversity jurisdiction in this case under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).  This complaint states claims on behalf of a national class of consumers who are minimally diverse from Amazon.  The amount in controversy exceeds $5 million, exclusive of interest and costs.  The class consists of more than one hundred members.

12.     This Court also has federal question jurisdiction under 28 U.S.C. § 1331 as this action arises in part under a federal statute, the Computer Fraud and Abuse Act.

13.     This Court has supplemental jurisdiction with respect to the pendent state law claims under 28 U.S.C. § 1367.

14.     This Court has personal jurisdiction over Amazon because some of the acts

LAW OFFICES OF
**CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813  •  Fax:  (425) 868-7870

1   alleged herein were committed in the state of Washington and because Amazon is registered to

2   do business in this state and systematically and continuously conducts business here.

3       15.     Venue is proper in this Court under 28 U.S.C. § 1391 because Amazon is a

4   corporation headquartered in this District and/or because Amazon's improper conduct occurred

5   in, was directed from, and/or emanated from this District.

6       16.     In addition, Amazon's "Conditions of Use" declare Amazon's decision that dis-

7   putes between Amazon and users of its websites are governed by Washington law; and Amazon

8   has designated the state and federal courts in King County, Washington as the exclusive venue

9   for disputes relating to use of Amazon's websites or transactions occurring on its websites for

10  which the aggregate total claim for relief sought, as in this complaint, exceeds $7,500.  *See*

11  "Amazon Conditions of Use," available at http://www.amazon.com/gp/help/customer/display.

12  html/ref=footer_cou?ie=UTF8&nodeId=508088 (last accessed February 14, 2011).

### IV.   GENERAL ALLEGATIONS

14  **A.    Amazon's Misuse of P3P**

15      **(i)       Background: Internet Explorer's Incorporation of P3P for Cookie Filtering**

16      17.     P3P, the Platform for Privacy Preferences, provides a language and process that

17  websites can use to post their privacy policies in a machine-readable form — that is, a form that

18  can be processed by software such as web browsers.  A website can post a full P3P policy, de-

19  scribing a variety of its privacy practices, or a "Compact Policy," describing its uses of browser

20  cookies.

21      18.     In 2001, Microsoft released version 6 of its market-leading Internet browser

22  software, Internet Explorer ("IE6"),[1] and included in it the capability to process websites' P3P

23  Compact Policies.  IE6 processed websites' Compact Policies automatically and, based on pri-

24  vacy settings that Microsoft set by default and that users could adjust, automatically allowed or

25  restricted websites' storage of cookies on users' computers.

27  [1]     With the release of IE version 7, Microsoft marketed the browser under the name
"Windows Internet Explorer."

LAW OFFICES OF
**CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813  ●  Fax: (425) 868-7870

19.    Before P3P, a privacy-conscious Internet user who wanted to learn about web-sites' cookie practices had only one choice—to read the privacy policy of every website visited — and to do so often, given that many websites advised users to "check back regularly to view updates to this policy."

20.    This approach to managing cookies raised problems for users:

a.    It is effectively impossible for a user to take the time to read the privacy policy of every website visited — and to do so continually to stay abreast of changes.

b.    It is challenging for a user to try to interpret websites' privacy policies because, even among websites with substantially similar privacy practices, each website describes its practices in different ways and with varying levels of detail.

c.    It is difficult for a user to determine which details of a website's privacy policy apply to which parts of the website, since a website's privacy practices may vary from page to page, such as a home page where the user affirmatively volunteers no information, a registration page where the user signs up to use the website, a shopping-cart page where the user's purchase selections are listed, or a checkout page where the user provides credit card and shipping information.

d.    It is impossible for a user to read a website's privacy policy "manually" without actually visiting the website, which means the user has to visit a website and receive whatever cookies the website delivers before the user has the chance to learn what the site's practices are.

21.    The advent of P3P helped address these issues, as follows:

a.    P3P provided a common language and syntax that websites could use to provide machine-readable versions of their privacy policies, including cookie-specific Compact Policies.  *See* "The Platform for Privacy Preferences 1.1 (P3P1.1) Specification, W3C Working Group Note, Nov. 2006, available at http://www.w3.org/TR/P3P11 (last accessed on February 7, 2011).

b.    P3P privacy statements could be quickly read by the user's web browser

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813  •  Fax: (425) 868-7870

1   each time the user directed the browser to access a web page.

2             c.     P3P permitted websites to offer granular privacy policies, tailored to the

3   unique cookie practices of specific web pages within a website.

4             d.     P3P-enabled web browsers could alert users to a websites' privacy prac-

5   tices before the user actually communicated with, and received cookies from, the website; and

6   could automatically filter and restrict cookies based on users' privacy settings (including de-

7   fault privacy settings).

8       22.     In a world in which websites automatically and nontransparently examine a us-

9   er's every online movement, IE6 gave users the ability to have their computers automatically

10   examine the abbreviated privacy information that websites choose to disclose in their Compact

11   Policies.  Subsequent versions of IE gave users the same or better capabilities.  IE assessed

12   websites' cookie policies for users before the users even visited and acquired cookies from

13   websites.  In addition, in response to the users' privacy settings, IE could take certain actions in

14   response to the P3P information it acquired, such as accept, reject, or restrict the cookies that

15   websites transmitted to users.

16       23.     Compact Policies, such as those that IE enabled users to assess automatically

17   through their web browser, are expressed as a series of codes, called "tokens," each of which

18   represents a standardized privacy expression defined in the P3P specification.  For example, in

19   the following Compact Policy.

20           CP="NOI DSP COR NID ADMa OPTa OUR NOR"

21   the "NID" token means that no identified user information is collected by the web pages to

22   which the Compact Policy applies or, if it is collected, it is anonymized in a way that cannot

23   reasonably be reversed to reveal the user's identity; and the "OUR" token means that identified

24   user information is shared only with an agent whose use of the information is restricted to the

25   purposes stated by the website.  Likewise, the other tokens have predetermined meanings.

26       24.     Under IE's default privacy settings, a website's unsatisfactory P3P Compact Pol-

27   icy can lead to several consequences.  IE allows or limits cookies in different ways, depending

COMPLAINT          - 6 -

on the statements in the Compact Policy and whether the web entity offering the policy is a first party (a website that the user explicitly chooses to visit) or a third party (such as entities that display advertisements on a first-party website).  For example, if a first-party website's Compact Policy states that the website shares user PII without user consent, IE downgrades the website's "persistent" cookie to a "session" cookie — i.e., one that expires at the end of the user's browser session.  See Figure 1, page 2, depicting IE's privacy settings page with default settings enabled.

25.     Persistent cookies serve as an important device for websites to identify users and collect their information; the release of IE6 prompted many websites to implement P3P Compact Policies so they could continue to set persistent cookies on the computers of users who adopted IE6.

**(ii)     Amazon's Exploit to Circumvent IE P3P-Based Cookie-Filtering**

26.     Amazon published a P3P Compact Policy that stated:

$$CP = \text{``AMZN''}$$

27.     "AMZN" is not a valid P3P Compact Policy token.  It is gibberish.

28.     Amazon knew its Compact Policy was gibberish and did not comply with P3P specifications.

29.     Amazon also knew that, because of what might be considered a design flaw in IE's processing of Compact Policies, IE would interpret Amazon's P3P Compact Policy as if it met the requirements of IE's default privacy settings.

30.     Amazon knowingly published an invalid P3P Compact Policy and did so intending to exploit IE's interpretation that would treat it as a valid.

31.     Amazon's use of an invalid Compact Policy that circumvented IE's cookie-filtering process was independently confirmed in an academic research report in which the researchers observed, "It appears that these two websites [Amazon and its subsidiary, IMDb.com] use a CP only for the purpose of avoiding IE cookie filtering."  *See* Pedro Giovanni Leon; L. Cranor; A. McDonald; and R. McGuire, "Token Attempt: The Misrepresentation of

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813  ●  Fax: (425) 868-7870

Website Privacy Policies through the Misuse of P3P Compact Policy Tokens (CMU-Cylab-10-014)" (2010), CyLab [Carnegie Mellon University], Paper 73, available at http://repository.cmu.edu/cylab/73 (last accessed February 25, 2011).

32.   Amazon's Compact Policy was a consumer-facing representation made by Amazon regarding its privacy practices.

33.   Amazon published its invalid Compact Policy knowing and intending that IE users would receive persistent cookies that they did not expect or want and, had Amazon published accurate information, would have been blocked unless the IE user consenting to receive them.

34.   Therefore, Amazon's Compact Policy was a misleading representation and/or omission and failure to represent Amazon's true practices with respect to users' personal information.

35.   Amazon's misleading Compact Policy enabled it to engage in transactions with consumers and acquire their private information including, but not limited to, Plaintiffs and Class members' PII as well as other information that Plaintiffs and Class members intended to keep private based on their privacy settings.

36.   Amazon's Compact Policy representations and omissions were material to IE users, through their IE privacy settings, when they distinguished among websites and decided to patronize Amazon.com.

37.   As a result of Amazon's invalid Compact Policy, IE stored Amazon's persistent cookies on IE users' web browsers.

38.   Amazon used those persistent cookies to identify and track IE users and collect personal information from them, including when those users were visiting other websites on which Amazon served online advertisements.

**B.    Amazon's Misuse of Adobe Flash LSOs**

**(i)    Background: Adobe Flash LSOs**

39.   In addition to using browser cookies to collect users' personal information,

Law Offices of
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

Amazon also uses Adobe Flash Local Stored Objects, or LSOs, that it stores on users' computers.

40. By design, LSOs are used by consumers' Adobe Flash Player software for purposes such as storing volume control settings or retaining video game scores. Adobe Corporation has stated that the purpose of LSOs is to support consumers' ability to experience "rich Internet application" content using the Adobe Flash Player. Letter to FTC, Adobe Systems Inc., Jan. 27, 2010 at 3, available at http://www.ftc.gov/os/comments/privacyroundtable/544506-00085.pdf (last accessed Dec. 6, 2010).

41. Adobe Flash Player is installed on the majority of U.S. consumers' computers.

42. Local Shared Objects, or LSOs, are sometimes called "Flash cookies," but they are not cookies at all. "Cookie" has a technical meaning ascribed by globally recognized specifications published by the Internet Engineering Task Force (IETF). The term "Flash cookie" is merely a rhetorical label applied to a rogue LSO — an LSO used as a substitute or back-up for a browser cookie to circumvent the user's web-browser-based privacy controls.

43. LSOs were not designed to be used as browser-cookie surrogates or back-ups. Adobe stated in its letter to the Federal Trade Commission, "Adobe condemns the practice of using Local Storage to back up browser cookies for the purpose of restoring them later without user knowledge and express consent."

44. LSOs differ from browser cookies in a number of ways that make them unsuitable as back-ups or replacements for browser cookies, including:

a. Browser cookies are stored by and accessible to the consumer through utilities in the consumer's web browser(s), while LSOs are browser-independent. These utilities enable users to easily delete browser cookies.

b. Browser cookies expire at the end of a consumer's web-browser session by default. LSOs have no default expiration.

c. Browser cookies are four kilobytes in size. LSOs may be up to 100 kilobytes.

COMPLAINT

- 9 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813  ●  Fax:  (425) 868-7870

d.      Browser cookies operate in a manner defined by international standards that have been subject to comment by the global technical community.  The capabilities of LSOs are controlled by one vendor, Adobe.

e.      Browser cookies do not affect consumers' encrypted (https) web communications.  Adobe Flash permits websites placing LSOs on users' computers to override the encryption of a users' communications, which poses security risks for users.

f.      Browser cookie standards do not permit one website to access another website's cookies (cross-domain access).  LSOs allow for cross-domain access, which poses security risks for users.

45.     Significantly, users also have no reasonable means to refuse, detect, or delete LSOs stored on their computers.

46.     That is precisely why some website operators repurposed LSOs and used them as replacements or backups for browser cookies — because it was hard for users to find them, control them, or delete them.

47.     The lack of consumers' ability to detect or control LSOs is particularly significant for users who choose to set IE's privacy filters higher than the default setting, such as the "Block All Cookies" setting shown in Figure 2, below.

COMPLAINT                                    - 10 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813  •  Fax:  (425) 868-7870

Figure 2.  IE Privacy Settings—Block All Cookies



48.     IE users who chose a privacy setting of "Block All Cookies" expect that IE will block all websites from placing cookies in their computers — including cookies that track, collect, and transmit personal information — unless the user affirmatively volunteers.

49.     The use of LSOs by a website defeats that expectation.

**(ii)     Amazon's use of LSOs to Circumvent Users' Privacy Settings**

50.     Amazon uses LSOs in place of and in addition to browser cookies and, in some cases, to re-spawn browser cookies that the user previously deleted.

51.     Regarding its use of LSOs, Amazon makes the following statements in the portion of its privacy notice labeled "What About Cookies?"

> The Help portion of the toolbar on most browsers will tell you how to prevent your browser from accepting new cookies, how to have the browser notify you when you receive a new cookie, or how to disable cookies altogether.  Additionally, you can disable or delete similar data used by browser add-ons, such as Flash cookies, by changing the add-on's settings or visiting the Web site of its manufacturer.

> However, because cookies allow you to take advantage of some of Amazon.com's essential features, we recommend that you leave them turned on. For instance, if you block or otherwise reject our cookies, you will not be

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813  ●  Fax:  (425) 868-7870

able to add items to your Shopping Cart, proceed to Checkout, or use any Amazon.com products and services that require you to Sign in.

52.     It was inaccurate and misleading of Amazon to confound browser cookies with LSOs in its privacy notice and to refer to LSOs as "similar data used by browser add-ons, such as Flash cookies" when, in fact LSOs and browser cookies are very different in ways that, as discussed in paragraph 44 starting on page 9, above, would be material to users had users been adequately informed of such differences.

53.     It was inaccurate and misleading of Amazon to state that users could manage "data used by browser add-ons, such as Flash cookies by changing the add-on's settings or visiting the Web site of its manufacturer" when, in fact, Amazon was aware that Adobe provided no reasonable utility to users to manage LSOs.

54.     It was inaccurate and misleading of Amazon to state that users could control or manage "data used by browser add-ons, such as Flash cookies by changing the add-on's settings or visiting the Web site of its manufacturer" when, in fact, Amazon knew that users were unlikely to be aware of or understand LSOs.

55.     It was inaccurate and misleading of Amazon to state that users could control or manage "data used by browser add-ons, such as Flash cookies by changing the add-on's settings or visiting the Web site of its manufacturer" when, in fact, Amazon was unfairly burdening users by shifting to them the responsibility for managing LSOs that Amazon had forced on them by deliberately bypassing the privacy management settings that users had already put in place.

56.     By using LSOs in place of and as back-ups for users' browser cookies, Amazon circumvented users' web browser privacy controls.

57.     In particular, Amazon used LSOs to circumvent the privacy controls of users who set their IE privacy settings at a level higher than the default — that is, users whose web browsers were not spoofed by Amazon's deceptive Compact Policy.

58.     Amazon's use of LSOs was knowingly and intentionally deceptive and its

COMPLAINT                                          - 12 -

statements about LSOs were knowingly and intentionally misleading.

59.     Plaintiff Nicole Del Vecchio observed that, on her computer, on or about mid-February, 2011, she had approximately seven LSOs that indicated they were set by the Amazon.com domain.  The LSOs had file names and contents that included text such as "apnuserid" and originated from Amazon server directories with names such as "x-locale/personalization."

60.     Plaintiff believes the LSOs she observed on her computer were not for purposes of displaying rich Internet application content but were used for tracking her activities on Amazon and collecting her personal information.

61.     Amazon used LSOs knowing and intending that IE users would not understand and be aware of Amazon's use of them and knowing that, based on IE users' privacy settings, they did not want to receive.

62.     Amazon's inadequately disclosed use of LSOs enabled it to engage in transactions with consumers and acquire their private information including but not limited to Plaintiffs' and the Class members' PII as well as other information that Plaintiffs and Class members intended to keep private based on their privacy settings.

63.     Amazon used LSOs to identify and track IE users and collect personal information from them, including when those users were visiting other websites on which Amazon served online advertisements.

C.     **Amazon's Misuse of PII**

64.     Amazon claims in its privacy notice that it does not share users' information with third parties for advertising purposes and that, instead, it delivers third parties' advertisements on their behalf.

65.     In fact, Amazon shares users' PII with third parties for those third parties' independent use and does not disclose this fact to consumers.

66.     For example, in or about 2008, Plaintiff Ariana Del Vecchio decided to begin purchasing pet supplies and other pet-related products through Amazon.com. These were products she had previously purchased from other, offline sources for some time.  Shortly after

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813  ●  Fax: (425) 868-7870

1   she purchased these products on Amazon.com, she began to receive numerous advertisements

2   and promotional materials in the postal mail, all from pet products companies with whom she

3   had not previously done business.

4          67.    Plaintiff Arian Del Vecchio received these mailings because Amazon shared her

5   personal information with third parties with whom Plaintiff had not done business.

6          68.    Plaintiff did not want to receive these advertisements and did not want her PII

7   shared with the sender by Amazon.

8   **D.**    **Harm**

9          **(i)**    **Privacy of Users' Personal Information**

10         69.    IE users seek to maintain privacy and confidentiality of their unique, personal,

11   and individual information assets, including PII and details of their browsing activities.

12         70.    The private confidential character of Plaintiffs' and Class members' personal in-

13   formation is further demonstrated by their utilization of browser privacy controls, including

14   Microsoft's default settings.

15         71.    The private and confidential character of Plaintiffs' and Class members' personal

16   information is further demonstrated by Amazon's use of surreptitious and deceptive methods to

17   deposit unconsented browser cookies and LSOs on Plaintiffs and Class members' computers.

18         72.    Amazon' actions in acquiring user's personal information were surreptitious and

19   without reasonable notice and so were conducted without authorization and exceeding authori-

20   zation.

21         73.    Amazon's acquisition of users' personal information without authorization and

22   exceeding authorization constituted misappropriation of that personal information.

23         **(ii)**    **Value to Users of their Personal Information**

24         74.    Entities involved in online marketing often speak of their efforts in terms of

25   "driving" consumers to a website. In reality, users "drive" themselves to a website using re-

26   sources that include a computer, browser software, and an Internet connection acquired from an

27   Internet services provider.

COMPLAINT              - 14 -

LAW OFFICES OF
**CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

75.     The act of driving takes place with each click—that is, each time a user directs the user's browser to download a particular web page, which the user does by clicking on a hypertext link or by using the address bar of the user's browser to enter the address for a specific web page (its Uniform Resource Locator, or URL).

76.     Each click initiates an electronic exchange between the user's computer and the server on which the requested web page resides. Depending on the user's privacy settings, During that exchange, the website's server can tag the user's computer with its cookies and read cookies it previously set, depending on the user's privacy settings. Thus, with every click, the user's browser transmits certain information about the user to the website, including information that the website caused to be stored in cookies on the user's computer.

77.     For users visiting Amazon, the information transmitted with each click constitutes each user's ticket to acquire the content and services that the user is requesting from Amazon with that click.  The information transmitted by users is their currency for acquiring Amazon's content and services.

78.     Amazon raises the price of admission without telling users.  By using a misleading Compact Policy and unconsented LSOs to circumvent users' privacy settings, Amazon acquires more user information than it is entitled to acquire.  Amazon does so for each user, with each click.

79.     Amazon's circumvention enables it to set persistent cookies, and so Amazon is able to collect a user's navigation history on its website across multiple user sessions and connect that navigation history with personally identifiable information it acquired in the course of the user's purchase transactions.

80.     The user information acquired by Amazon had and has discernable value to those users.  That value can be established through information that is available in the market, combined with usage information that is available in Amazon's records.

81.     Amazon's unauthorized taking of users' personal information therefore imposes financial harm to those users.

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813  ●  Fax: (425) 868-7870

82.     In addition, Amazon imposes discernable opportunity costs on users.  Websites such as Amazon.com can compete and thrive only if they sustain a sufficient traffic volume to attract merchants and advertisers. Consumers, through their collective patronage, provide that traffic and so barter for their ability to access — and continue to enjoy — the content and services they bought with that patronage. Amazon, through its conduct, deprives users of the opportunity to use their information to purchase and promote the continued availability of websites that deal honestly in the content and services offered to consumers.

83.     The opportunity costs imposed by Amazon have a discernable value in the marketplace, the computation of which takes into account the costs that would be charged to users for access to the particular goods and services without having provided their personal information.

**(iii)     Computer Tampering**

84.     IE users acquired their computers and software for value, with the expectation that their browsers would perform in certain advertised ways that were of value to consumers.

85.     Amazon's Compact Policy causes persistent cookies to be stored on IE users' computers and Amazon causes LSOs to be stored on IE users' computers.

86.     These cookies and LSOs contained code that is meaningful to Amazon, through its software.

87.     Amazon stores the cookies and LSOs on users' computers and causes them to be retained there so that Amazon, through its software, can read, modify, and analyze them on a recurring basis, for Amazon's benefit.

88.     Amazon, through its use of an invalid Compact Policy and Adobe Flash LSOs, causes IE users' browsers and computers to perform in ways the users do not want.  Amazon does so intentionally, diminishing the performance and value to users of their browsers and computers.

89.     The costs and harms described above are aggravated by Amazon's continued retention and commercial use of the improperly acquired user data.

COMPLAINT                                                    - 16 -

# V.  CLASS ALLEGATIONS

90.     Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(a) and (b)(2) and 23(b)(3) on behalf of themselves and the following "Class":

> All individuals or entities in the United States who, from March 2, 2007 through the date the Court certifies the Class, used the IE browser, versions 6, 7, and/or 8, with default or higher privacy settings to access the www.amazon.com website and purchased goods on that website.

Excluded from the Class is Defendant, its, assigns, and successors, legal representatives, and any entity in which Defendant has a controlling interest.  Also excluded is the judge to whom this case is assigned and the judge's immediate family.

91.     Plaintiffs reserve the right to revise this definition of the Class based on facts they learn as litigation progresses.

92.     The Class consists of millions of individuals and other entities, making joinder impractical.  In December 2010 alone, 91 million U.S. users visited Amazon websites.  As of January 2011, Internet Explorer versions 6, 7, and 8 accounted for 54 percent of the browser market worldwide.

93.     The claims of Plaintiffs are typical of the claims of all other members of the Class.

94.     Plaintiffs will fairly and adequately represent the interests of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions, including privacy cases.  Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so.  Neither Plaintiffs nor their counsel have any interests adverse to those of the Class.

95.     Absent a class action, most Class members would find the cost of litigating their claims to be prohibitive and would have no effective remedy.  The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813  ●  Fax: (425) 868-7870

96.     Amazon has acted and failed to act on grounds generally applicable to Plaintiffs and the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class.

97.     The factual and legal bases of Amazon's liability to Plaintiffs and to the other Class members are the same, resulting in injury to Plaintiffs and all of the other Class members. Plaintiffs and the other Class members have all suffered harm and damages as a result of Amazon's wrongful conduct.

98.     There are many questions of law and fact common to Plaintiffs and the Class, and those questions predominate over any questions that may affect only individual Class members.  Common and predominant questions for the Class include but are not limited to the following:

a.     whether the P3P Compact Policy created and used by Amazon on Amazon.com was invalid, false, and misleading;

b.     whether the privacy notice published by Amazon was false and misleading;

c.     whether Amazon placed persistent cookies on the computers of Plaintiffs and the Class without authorization or exceeding authorization;

d.     whether Amazon placed Adobe Flash Local Shared Objects on the computers of Plaintiffs and the Class without authorization or exceeding authorization.

e.     whether Amazon obtained and shared Plaintiffs' and Class members' PII through persistent cookies and LSOs placed on their computers;

f.     what personal information continues to be retained and used by Amazon;

g.     what are the identities of third parties that obtained Plaintiffs' and Class members' PII as a result of Amazon's conduct;

h.     whether Amazon's conduct described herein violates the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 et seq. or the Washington Consumer Protection Act, RCW § 19.86.010 et seq.;

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813  ●  Fax: (425) 868-7870

1        i.      whether Amazon's conduct has resulted in its unjust enrichment;

2        j.      whether Amazon has committed trespass to personal property/chattels;

3        k.      whether representations made by Amazon through its P3P Compact Poli-

cy constituted promises made to Plaintiffs and the Class and whether Amazon should have rea-

sonably expected such promised to cause Plaintiffs and the Class to change their position justi-

fiably relying on such a promise;

        l.      whether representations made by Amazon through its privacy notice con-

stituted promises made to Plaintiffs and the Class and whether Amazon should have reasonably

expected such promised to cause Plaintiffs and the Class to change their position justifiably

relying on such a promise;

        m.      whether, as a result of Amazon's conduct, Plaintiffs and the Class are en-

titled to equitable relief and/or other relief, and if so the nature of such relief; and

        n.      whether, as a result of Amazon's conduct, Plaintiffs and the Class are en-

titled to damages and/or treble damages.

99.      The questions of law and fact common to the Class predominate over any ques-

tions affecting only individual members and a class action is superior to all other available

methods for the fair and efficient adjudication of this controversy.

100.      Based on the foregoing allegations, Plaintiffs' legal theories for relief include

those set forth below.

## VI.  CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**Violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 et seq.**

101.      Plaintiffs incorporate the above allegations as if fully set forth herein.

102.      Plaintiffs and the Class members' computers are computers used in and affecting

interstate commerce and communication and are therefore "protected computers" as defined in

the Computer Fraud and Abuse Act (the "CFAA"), 18 U.S.C. § 1030(e)(2).

103.      Amazon violated the CFAA, 18 U.S.C. § 1030(a)(4) in that it knowingly and

COMPLAINT             - 19 -

LAW OFFICES OF
**CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

1   with intent to defraud, accessed the protected computers of Plaintiffs and the Class without

2   authorization, or exceeding authorized access, and by means of such conduct, furthered the

3   intended fraud and obtained things of value.

4       104.    As described above, Amazon published an invalid P3P Compact Policy to

5   transmit false information to Plaintiffs' and Class members' browsers and to thereby to

6   surreptitiously gain access to and place persistent cookies onto their computers.

7       105.    Amazon acted without authorization or exceeding authorization in that

8   Plaintiffs and the Class members did not give Amazon permission or consent to place persistent

9   cookies on their computers.  In fact, they reasonably believed that IE would block such cookies

10  from being placed on their computers or downgrade such cookies to the status of session cook-

11  ies.

12      106.    Amazon's conduct was done knowingly and with intent to defraud in that Ama-

13  zon created and used an invalid P3P Compact Policy for the purpose of circumventing the

14  cookie-filtering functions of Plaintiffs' and the Class members' browsers and because it had no

15  legitimate purpose for using an invalid P3P Compact Policy.

16      107.    Through Amazon's conduct, it was able to further its intended fraud of placing

17  persistent cookies on Plaintiffs' and Class members' computers and using such cookies to

18  collect and maintain Plaintiffs' and Class members' PII and to share that information with third

19  parties without the knowledge and consent, and authorization of Plaintiffs and Class members.

20      108.    As a direct and proximate result of Amazon's conduct, Plaintiff and Class

21  members have suffered harms and losses that include those described above in paragraphs 69

22  through 89.

23      109.    Amazon's unlawful access to Plaintiffs' and Class members' computers through

24  the use of invalid P3P Compact Policy constituted a single act that resulted in an aggregated

25  loss to Plaintiffs and the Class of at least $5,000 within a one-year period.

26      110.    Therefore, Plaintiffs and the Class are entitled to compensatory damages.

27      111.    In addition, Amazon's unlawful access to Plaintiffs' and Class members'

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

1  computers has caused Plaintiffs and Class members' irreparable injury.

2      112.    Unless restrained and enjoined, Amazon will continue to commit such acts.

3  Plaintiffs' and Class members' remedy at law is not adequate to compensate them for these

4  inflicted, imminent, threatened, and continuing injuries, entitling Plaintiffs and the Class to

5  remedies including injunctive relief as provided by 18 U.S.C. § 1030(g).

6  **SECOND CLAIM FOR RELIEF**

7  **Violations of Washington Consumer Protection Act, RCW § 19.86,010 et seq.**

8      113.    Plaintiffs incorporate the above allegations as if fully set forth herein.

9      114.    The Washington Consumer Protection Act ("CPA") prohibits (a) an unfair or

10  deceptive act or practice, (b) occurring in trade or commerce, (c) with a public interest impact,

11  (d) that causes injury.

12      115.    Amazon's conduct as described above constitutes unfair and deceptive business

13  acts and practices that had a capacity to deceive the public in that:

14          a.    Amazon posted a misleading Compact Policy that it knew and should

15  have known that IE would treat as acceptable under IE's default (or higher) privacy settings, *i.e.*

16  as if the policy stated that Amazon shared PII only upon user consent.

17          b.    Amazon stored and used Adobe Flash Local Shared Objects on Plaintiffs

18  and Class members' computers without adequate notice or consent;

19          c.    Amazon disclosed Plaintiffs' and Class members' PII to third parties

20  without consent and authorization.

21      116.    The state of Washington has an important interest in regulating the business

22  activities of companies headquartered in the state of Washington that chose Washington law as

23  the law under which all such customers disputes would be resolved.  The practices complained

24  of herein, that are the basis of the statutory claim in this cause of action, were developed in, set

25  in, and/or emanated from Washington State.  In addition, Amazon's conduct involves matters

26  concerning the public important because concerns the invasion — and continuing invasion —

27  of privacy of many millions of consumers in the state of Washington and across the nation.

LAW OFFICES OF
**CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813  ●  Fax: (425) 868-7870

117.    Plaintiffs and Class members would not have visited Amazon.com had they known that Amazon was employing an invalid P3P Compact Policy and LSOs to circumvent the cookie filtering devices on IE and that Amazon was sharing their PII with third parties without their consent.

118.    As a proximate and direct result of Amazon's conduct, Plaintiffs and the Class have been injured in their business and/or property as described above in paragraphs 69 through 89.

119.    Because of Amazon's deception, Amazon benefitted from user traffic, transactions, and PII that it would not have otherwise received.

120.    Unless Amazon is enjoined from its unfair and deceptive acts and practices as alleged herein, Amazon will continue to cause damage to consumers.

121.    Such unfair or deceptive practices affected and continue to affect the public interest in that Amazon committed the unfair and deceptive acts and practices in the course of its business as part of a pattern and generalized course of conduct.

122.    In addition, Amazon's unfair and deceptive business acts and practices have affected and continue to affect a great many members of the public in Washington state and nationwide in the context of a business activity — operation of an Internet marketplace — available to the public at-large.

123.    Pursuant to the RCW § 19.86.090, Plaintiffs and the Class seek to recover actual and treble damages, costs of suit, reasonable attorneys' fees, and pre and post- judgment interest.

### THIRD CLAIM FOR RELIEF

### Trespass to Chattels

124.    Plaintiffs incorporate the above allegations as if fully set forth herein.

125.    Plaintiffs and Class members, at all times relevant to this action, were the owners and/or possessors of computers that utilized the IE web browser and of their personal information collected by Amazon through its placement of persistent cookies on Plaintiffs and

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813  ●  Fax: (425) 868-7870

Class members' computers.

126.    Amazon dispossessed Plaintiffs and Class members of the use of their computers and browser software by commandeering those resources for its own purposes.

127.    Amazon impaired the condition, quality, and value of users' computers and browsers by its installation and use of persistent cookies, which constituted an ongoing alteration to users' computers and which affected the performance of their browsers on an ongoing basis, circumventing users' browser privacy controls and causing users' browsers to transmit information to Amazon to which Amazon was not entitled.

128.    Plaintiffs and Class members each had and have a legally protected economic interest in the their personal information.

129.    Users sustained harm as a result of Amazon's actions, in that the expected performance of their computers and browser was diminished on an ongoing basis.

130.    As a direct and proximate result of Amazon's trespass to chattels, interference, unauthorized access of and intermeddling with Plaintiffs' and Class members' computers, Plaintiffs and Class members have been injured, as described above in paragraphs 69 through 89.

131.    Plaintiffs, individually and on behalf of the Class, seek injunctive relief restraining Amazon from trespass to chattels, to purge the data, and damages.

### FOURTH CLAIM FOR RELIEF

### Promissory Estoppel

132.    Plaintiffs incorporate the above allegations as if fully set forth herein.

133.    Amazon's' P3P Compact Policy and its privacy notice constituted promises made to Plaintiffs and Class members in representing that Amazon's practices concerning collection and disclosure of PII through the placement of persistent cookies and LSOs on Plaintiffs' and Class members' computers comported with their browsers' privacy settings and controls.

134.    Amazon expected and should have reasonably expected that the invalid P3P

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

1    Compact Policy would cause Plaintiffs and Class members to change their position by visiting

2    and making purchases on its web sites.

3         135.    Plaintiffs and Class members reasonably relied upon Amazon's promise to

4    refrain from using cookies to collect PII and share PII with third parties without the user's

5    consent and thereby caused Plaintiffs and the Class to choose to visit and make purchases on

6    Amazon's websites.

7         136.    Injustice can be avoided only by enforcement of Amazon's promise.

8         137.    Amazon collected, used, and disclosed Plaintiffs and Class members' PII that is

9    not otherwise available in the public domain, and used such information to generate advertising

10   revenue, raise switching costs, enhance its investment value, and retain consumers' patronage.

11        138.    As a result of Amazon's conduct, Plaintiff and the Class were harmed as

12   described above in paragraphs 69 through 89.

13        139.    Under principles of equity and good conscience, Amazon should not be

14   permitted to retain the information and revenue that it acquired by virtue of their unlawful

15   conduct.

16        140.    Plaintiffs and the Class are therefore entitled to damages in an amount to be

17   determined at trial.

### FIFTH CLAIM FOR RELIEF

### Unjust Enrichment

20        141.    Plaintiffs incorporate by reference the foregoing allegations.

21        142.    Plaintiffs and the Class have conferred upon Amazon a benefit, including user

22   traffic, transactions and PII it would not have otherwise received but for its wrongful acts and

23   practices.

24        143.    Amazon retained money belonging to Plaintiffs and the Class resulting from its

25   wrongful acts and practices and which consisted of those things of value of IE users identified

26   above in paragraphs 69 through 89.

27        144.    Amazon appreciates and has knowledge of said benefit.

COMPLAINT                                      - 24 -

145. Amazon unjustly gained money from Plaintiff and the Class as a direct result of its conduct.

146. Under principles of equity and good conscience, Amazon should not be permitted to retain the information and revenue that it acquired by virtue of its unlawful conduct. All funds, revenues, and benefits received by them rightfully belong to Plaintiffs and the Class, which Amazon has unjustly received as a result of its actions.

## VII.  PRAYER FOR RELIEF

Plaintiffs Nicole Del Vecchio and Ariana Del Vecchio each, individually and on behalf of all others similarly situated, pray for the following relief:

A. Certify this matter as a class action.

B. Enter judgment in favor of Plaintiffs and the Class.

C. Enter injunctive and/or declaratory relief as is necessary to protect the interests of Plaintiffs and the Class.

D. Award damages to Class members, in amounts to be proved.

E. Award restitution against Amazon in amounts to be proved.

F. Award increased or treble damages in amounts to be proved.

G. Award disgorgement of monies obtained through and as a result of unfair and/or deceptive acts and/or practices, in amounts to be proved.

H. Award Plaintiffs and the Class pre- and post-judgment interest, to the extent allowable.

I. Make such orders or judgments as may be necessary to restore to any person in interest any money or property that may have been acquired by means of false or misleading advertising or unfair competition.

J. Award Plaintiffs and the Class their reasonable litigation expenses and attorneys' fees.

K. Award such other and further relief as equity and justice may require.

Law Offices of
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

1

## VIII.   JURY REQUEST

2

Plaintiffs demand a trial by jury of all issues so triable.

3

4

Dated:  March 2, 2011                    Respectfully submitted,

5

LAW OFFICES OF CLIFFORD A. CANTOR, P.C.
By:  s/  Cliff Cantor, WSBA # 17893

6

cacantor@comcast.net
627 208th Ave. SE

7

Sammamish WA 98074-7033
Telephone: (425) 868-7813

8

Facsimile: (425) 868-7870

9

Scott A. Kamber

10

skamber@kamberlaw.com
KAMBERLAW, LLC

11

100 Wall Street, 23rd Floor
New York, New York 10005

12

Telephone: (212) 920-3071
Facsimile: (212) 920-3081

13

14

David A. Stampley

15

dstampley@kamberlaw.com
KAMBERLAW, LLC
100 Wall Street, 23rd Floor

16

New York, New York 10005
Telephone: (212) 920-3071

17

Facsimile: (212) 920-3081

18

Grace E. Parasmo

19

gparasmo@kamberlaw.com

20

KAMBERLAW, LLC
100 Wall Street, 23rd Floor

21

New York, New York 10005
Telephone: (212) 920-3071

22

Facsimile: (212) 920-3081

23

Joseph H. Malley

24

malleylaw@gmail.com
Law Office of Joseph H. Malley

25

1045 North Zang Blvd Dallas, TX 75208
Telephone: (214) 943-6100

26

Attorneys for Plaintiffs

27

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813  ●  Fax: (425) 868-7870