1

2

Honorable Robert S. Lasnik

3

4

5

6

7  UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
8  AT SEATTLE

9

NICOLE DEL VECCHIO and ARIANA
10  DEL VECCHIO, individually and on behalf          No. C11-00366-RSL
of all others similarly situated,
11                                                   AMAZON.COM, INC.'S MOTION TO
                                    Plaintiffs,      DISMISS PURSUANT TO RULE
12                                                   12(b)(6) AND RULE 12(b)(1)
           v.
13                                                   Note on Motion Calendar: July 15, 2011
Amazon.com, Inc.,
14                                                   Oral Argument Requested
                                    Defendant.
15

16

17

18

19

20

21

22

23

24

25

26

AMAZON.COM, INC.'S MOTION TO
DISMISS
Case No. C11-00366-RSL

K:\2040741\00273\20361_DHR\20361P22LM

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION AND RELIEF REQUESTED ........................................................ 1

II.  SUMMARY OF ALLEGATIONS ......................................................................... 1

    A.   The Parties ............................................................................................. 1

    B.   Amazon's Alleged Wrongs ..................................................................... 2

        1.   Amazon's Alleged Misuse of P3P ................................................. 2

        2.   Amazon's Alleged Misuse of Adobe Flash LSOs ................................ 3

        3.   Amazon's Alleged Misuse of PII ................................................... 4

    C.   Alleged Harm to Users ............................................................................. 4

        1.   Misappropriation of Users' "Individual Information Assets" ............... 4

        2.   Value to Users of Information about Them and Users' Lost
            Browsing Opportunities ................................................................. 5

        3.   Harm to Users' Computers .......................................................... 5

III. ARGUMENT ............................................................................................... 6

    A.   Plaintiffs' Unsupported Conjecture, Implausible Conclusions, and
       Formulaic Recitations Should Be Disregarded .................................... 6

    B.   The Complaint Should Be Dismissed for Failure to Allege Injury-in-
       Fact ........................................................................................................ 8

    C.   Plaintiffs' Complaint Should Be Dismissed with Prejudice for Failure
       to State a Claim .................................................................................... 9

        1.   Plaintiffs Do Not Plausibly Allege a CFAA Claim ............................ 10

            a.   Plaintiffs Do Not Allege $5,000 in "Loss." .............................. 11

            b.   Documents Relied Upon in the Complaint Establish that
               Users Authorized Amazon to Place Cookies on Their
               Computers ................................................................................. 15

        2.   Plaintiffs Do Not Allege a Plausible Claim for Trespass to
          Chattels ..................................................................................... 19

            a.   Plaintiffs Allege No Harm Related to Chattels ....................... 19

            b.   Plaintiffs Do Not Allege Lack of Consent ............................. 21

        3.   Plaintiffs' CPA Claim Should Be Dismissed ...................................... 22

            a.   Plaintiffs Do Not Have Standing to Assert a Washington
               CPA Claim ................................................................................. 22

            b.   Plaintiffs Do Not Plausibly Allege an Unfair or
               Deceptive Act or Practice ....................................................... 22

            c.   Plaintiffs Do Not Plausibly Allege a Cognizable Injury
               to Business or Property ........................................................... 24

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

4.   Plaintiffs Do Not Allege a Plausible Claim for Promissory Estoppel ................................................................. 26

5.   Plaintiffs Do Not Allege a Plausible Claim for Unjust Enrichment .................................................................. 27

IV.   CONCLUSION ................................................................. 29

AMAPON'S MOTION TO DISMISS
Case No. C11-00366-RSL

ii

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Ashcroft v. Iqbal*,
___ U.S. ___, 129 S. Ct. 1937 (2009) ................................................ 6, 7, 8, 14, 18, 27

*AtPac, Inc. v. Aptitude Solutions, Inc.*,
730 F. Supp. 2d 1174 (E.D. Cal. 2010) ......................................................... 12

*Brotherson v. Prof'l Basketball Club, L.L.C.*,
604 F. Supp. 2d 1276 (W.D. Wash. 2009) ..................................................... 25

*Carnival Cruise Lines v. Shute*,
499 U.S. 585 (1991) ...................................................................................... 17

*Chance v. Avenue A, Inc.*,
165 F. Supp. 2d 1153 (W.D. Wash. 2001) ..................................................... 21

*Colony Cove Properties, LLC v. City of Carson*,
___ F.3d ___, 2011 WL 1108226 (9th Cir. Mar. 28, 2011) ............................ 18

*Daniels-Hall v. Nat'l Educ. Ass'n.*,
629 F.3d 992 (9th Cir. 2010) ......................................................................... 16

*Dilorenzo v. Costco Wholesale Corp.*,
515 F. Supp. 2d 1187 (W.D. Wash. 2007) ..................................................... 25

*Doyle v. Taylor*,
2010 WL 2163521 (E.D. Wash. May 24, 2010) ............................................. 11

*EF Cultural Travel BV v. Zefer Corp.*,
318 F.3d 58 (1st Cir. 2003) ............................................................................ 16

*Elektra Entm't Group, Inc. v. Santangelo*,
2008 WL 4452393 (S.D.N.Y. Oct. 1, 2008) .................................................. 21

*Fadaie v. Alaska Airlines, Inc.*,
293 F. Supp. 2d 1210 (W.D. Wash. 2003) ..................................................... 16

*Flynn v. Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor LLP*,
2010 WL 4339368 (D. Nev. Oct. 15, 2010) ................................................... 12

*Frees Inc. v. McMillian*,
2007 WL 2264457 (W.D. La. Aug. 6, 2007) .................................................. 11

*Friends of the Earth, Inc., v. Laidlaw Envtl. Servs. (TOC), Inc.*,
528 U.S. 167 (2000) ........................................................................................ 8

*Hanson v. Hancock Cnty. Mem'l Hosp.*,
938 F. Supp. 1419 (N.D. Iowa 1996) ............................................................. 24

*In re Apple & AT&T Antitrust Litigation*,
596 F. Supp. 2d 1288 (N.D.Cal. 2008) ................................................... 14, 21

*In re Apple & AT&TM Antitrust Litig.*,
2010 WL 3521965, *6 (N.D. Cal. July 8, 2010) ............................................ 19

AMAZON'S MOTION TO DISMISS
Case No. C11-00366-RSL

iii

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

*In re Doubleclick Privacy Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001) .................................................................. 21, 28

*In re Jetblue Airways Corp. Privacy Litig.*,
379 F. Supp. 2d 299 (E.D.N.Y. 2005) .................................................................. 19, 29

*Keithly v. Intelius Inc.*,
___ F. Supp. 2d ___, 2011 WL 538480 (W.D. Wash. Feb. 2, 2011) .................................. 22

*Keithly v. Intelius*,
2011 WL 538480 (W.D. Wash. Feb. 8, 2011) ...................................................... 16

*La Mar v. H & B Novelty & Loan Co.*,
489 F.2d 461 (9th Cir. 1973) ...................................................................... 14, 22

*LaCourt v. Specific Media, Inc.*,
2011 WL 1661532 (C.D. Cal. Apr. 28, 2011) ........................................ 9, 14, 20, 21

*Lambert v. Hartman*,
517 F.3d 433 (6th Cir. 2008) ...................................................................... 24

*Lasco Foods, Inc. v. Hall & Shaw Sales, Mktg. & Consulting, LLC*,
600 F. Supp. 2d 1045 (E.D. Mo. 2009) ........................................................ 13

*Lewis v. Casey*,
518 U.S. 343 (1996) .................................................................................. 14

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
350 F.3d 1018 (9th Cir. 2003) ................................................................ 8, 22

*Lowden v. T-Mobile USA Inc.*,
378 Fed. Appx. 693 (9th Cir. 2010) .......................................................... 23

*LVRC Holdings LLC v. Brekka*,
581 F.3d 1127 (9th Cir. 2009) .................................................................. 10

*Lyons v. Coxcom, Inc.*,
2009 WL 347285 (S.D. Cal. Feb. 6, 2009) .................................................. 14

*Meier v. Midwest Recreational Clearinghouse, LLC*,
2010 WL 2738921 (E.D. Cal. July 12, 2010) ............................................... 17

*Minnick v. Clearwire US, LLC*,
683 F. Supp. 2d 1179 (W.D. Wash. 2010) ............................................. 22, 23

*Mortensen v. Bresnan Communication, LLC*,
2010 WL 5140454 (D. Mont. Dec. 13, 2010) ............................................. 17

*Nexans Wires S.A. v. Sark-USA, Inc.*,
319 F. Supp. 2d 468 (S.D.N.Y. 2004) ..................................................... 12, 13

*Océ North America, Inc. v. MCS Services, Inc.*,
2010 WL 3703277 (D. Md. Sept. 16, 2010) ................................................. 12

*Register.com v. Verio, Inc.*,
356 F.3d 393 (2d Cir. 2004) .................................................................... 19

*Ruiz v. Gap, Inc.*,
540 F. Supp. 2d 1121 (N.D. Cal. 2008) ..................................................... 24

*Smale v. Cellco P'ship*,
547 F. Supp. 2d 1181 (W.D. Wash. 2008) .................................................. 23

AMAZON'S MOTION TO DISMISS
Case No. C11-00366-RSL

iv

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

*SmileCare Dental Grp. v. Delta Dental Plan of California, Inc.,*
88 F.3d 780 (9th Cir. 1996) ................................................................... 6

*Toys R Us, Inc., Privacy Litig.,*
2001 WL 34517252 (N.D. Cal. Oct. 9, 2001) .................................... 14

*United States v. Drew,*
259 F.R.D. 449 (C.D. Cal. 2009) ....................................................... 16

*Warren v. Fox Family Worldwide, Inc.,*
328 F.3d 1136 (9th Cir. 2003) ............................................................ 18

**STATE CASES**

*Ambach v. French,*
167 Wn.2d 167 (2009) ........................................................................ 24

*Cox v. O'Brien,*
150 Wn. App. 24 (2009) ..................................................................... 27

*Donald B. Murphy Contractors, Inc. v. King County,*
112 Wn. App. 192 (2002) ................................................................... 26

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,*
105 Wn.2d 778 (1986) ........................................................................ 24

*Hilton v. Alexander & Baldwin, Inc.,*
66 Wn.2d 30, 31 (1965) ...................................................................... 26

*Intel Corp. v. Hamidi,*
71 P.3d 296 (Cal. 2003) ...................................................................... 20

*Leingang v. Pierce County Med. Bureau, Inc.,*
131 Wn.2d 133 (1997) ........................................................................ 24

*McCurdy v. Union Pac. R. Co.,*
68 Wn.2d 457 (1966) .......................................................................... 19

*Robinson v. Avis Rent A Car Sys., Inc.,*
106 Wn. App. 104 (2001) ................................................................... 24

*Seattle-First Nat. Bank v. Westwood Lumber, Inc.,*
65 Wn. App. 811 (1992) ..................................................................... 26

*Sexton v. Brown,*
2008 WL 4616705 (Wn. App. 2008) ................................................. 19

*Wright v. Miller,*
93 Wn. App. 189 (1998) ..................................................................... 26

**FEDERAL STATUTES**

18 U.S.C. § 1030 ................................................................................. 10

18 U.S.C. § 1030(c)(4)(A)(i)(I) ......................................................... 11

18 U.S.C. § 1030(c)(4)(A)(i)(I)-(V) .................................................. 11

18 U.S.C. § 1030(e)(11) ...................................................................... 11

18 U.S.C. § 1030(g) ............................................................................ 10

28 U.S.C. § 1332(d) ............................................................................ 15

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

28 U.S.C. § 1332(d)(6) .......................................................................................... 15

**STATE STATUTES**

RCW 19.86.010(2) ................................................................................................. 22

**RULES**

Fed. R. Civ. Proc. § 11 ......................................................................................... 10

Fed. R. Civ. Proc. § 12(b)(6) .................................................................................. 1

Fed. R. Civ. Proc. § 12(c) ..................................................................................... 23

**OTHER**

Rest. 2d of Torts § 217 .......................................................................................... 19

Rest. 2d of Torts § 221 .......................................................................................... 20

Rest. 3d of Restitution and Unjust Enrichment § 2 .............................................. 29

S. Rep. No. 109-14 ................................................................................................. 15

AMAZON'S MOTION TO DISMISS
Case No. C11-00366-RSL

vi

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

# I.    INTRODUCTION AND RELIEF REQUESTED

Plaintiffs assert wholly novel theories of liability and harm, recognized by no court or law, on behalf of a difficult-to-ascertain putative class comprising every person to have visited and purchased an item on <amazon.com> using particular settings on certain versions of Internet Explorer.  They claim that certain of Amazon's methods of identifying customers for the purpose of serving personalized advertisements and pages were done in misleading ways.  Plaintiffs contend that this causes users harm by "misappropriating" their "information assets," depriving users of browsing "opportunities," and harming their computers in unstated ways.

Despite the far-ranging conjectures plaintiffs offer to support their novel theories, their Complaint is nearly bereft of allegations specific to plaintiffs.  Instead, plaintiffs rely upon speculative claims that unspecified "users" expect certain things, take certain actions, and suffer certain harms.  Even if these claims were not completely conjectural, plaintiffs can not "borrow" facts from persons not before the court to make out their own claims for relief.

Stripped of its unsupported conclusions and formulaic recitations, the Complaint fails to make out a plausible injury-in-fact to plaintiffs, requiring dismissal of the Complaint under Rule 12(b)(1) and Article III of the United States Constitution.  For largely the same reasons, the Complaint also fails to state a claim and should be dismissed under Rule 12(b)(6).  Moreover, amendment of the Complaint would be futile.  Even if plaintiffs' own experiences match the conjectural experiences of "users," and the Complaint was so pleaded, their theories are not cognizable under any of the legal claims they advance.  For this reason, Amazon respectfully requests that the Court dismiss plaintiffs' claims with prejudice.

# II.    SUMMARY OF ALLEGATIONS

## A.    The Parties

Amazon.com, Inc. ("Amazon") is a Delaware corporation with principal place of business in Seattle.  *Id.* ¶ 8.  Amazon owns and operates the website <amazon.com>, an

AMAZON'S MOTION TO DISMISS
Case No. C11-00366-RSL

1

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

online marketplace where consumers can purchase retail goods sold by Amazon and others. *Id.* ¶ 9. Plaintiffs allege that Amazon derives revenue from advertisements displayed on its website and to Amazon users visiting other websites. *Id.* ¶ 10. Plaintiffs base venue in this Court in part on Amazon's Conditions of Use for <amazon.com>. *Id.* ¶ 16.

The Complaint contains little specific information about plaintiffs Ariana and Nicole Del Vecchio. They are individuals of unknown residence who allegedly visited and purchased products on <amazon.com>. *Id.* ¶ 7. They seek to represent a class that comprises:

> All individuals or entities in the United States who, from March 2, 2007 through the date the Court certifies the Class, used the IE browser, versions 6, 7, and/or 8, with default or higher privacy settings to access the www.amazon.com website and purchased goods on that website.

*Id.* ¶ 90.

**B.    Amazon's Alleged Wrongs**

Plaintiffs generally allege that Amazon wronged "users" (presumably visitors to and purchasers from <amazon.com>) in three ways: (1) by transmitting to users' computers misleading Platform for Privacy Preferences ("P3P") Compact Policy code and placing persistent browser "cookies" on users' computers, *id.* ¶¶ 17-38; (2) by transmitting to users' computers Adobe Flash LSOs, or "Flash cookies," *id.* ¶¶ 39-63; and (3) by sharing users' personally identifiable information ("PII"). *Id.* ¶¶ 64-68.

**1.    Amazon's Alleged Misuse of P3P**

Plaintiffs allege that valid P3P Compact Policies are comprised of a series of tokens transmitted from a website to a visitor's computer that represent "a standardized privacy expression defined in the P3P specification." *Id.* ¶ 23. Amazon is alleged to have "published a P3P Compact Policy" that did not contain valid P3P tokens, and was "gibberish." *Id.* ¶¶ 26-27. According to plaintiffs, certain versions of Microsoft's Internet Explorer ("IE"), when used at certain privacy settings, had a "design flaw in [its] processing of Compact Policies" that caused it treat Amazon's P3P Compact Policy as valid. *Id.* ¶ 29. As a result, plaintiffs

AMAZON'S MOTION TO DISMISS
Case No. C11-00366-RSL

2

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  allege, IE permitted Amazon to store persistent cookies on their computers that it would

2  otherwise have blocked. *Id.* ¶¶ 29, 33, 37.

3       Notably, the Complaint lacks any specific information about the computer usage of the

4  two named plaintiffs. Paragraph 7 of the Complaint makes the vague assertion that plaintiffs

5  "used IE versions 6, 7, and/or 8" for visits to and purchases on <amazon.com>, and utilized

6  "IE's default privacy setting and/or higher privacy settings." *Id.* ¶ 7. Plaintiffs do not allege

7  which specific version of IE they used or which specific privacy settings they employed.

8  Similarly, plaintiffs do not assert that Amazon placed any persistent cookie on their

9  computers.

10       **2.    Amazon's Alleged Misuse of Adobe Flash LSOs**

11       Plaintiffs also allege that Amazon uses certain technology associated with the Adobe

12  Flash Player to store on site visitors' computers Locally Stored Objects or "LSOs," sometimes

13  referred to as "Flash cookies." *Id.* ¶¶ 39-63. LSOs are used by consumers' Adobe Flash

14  Player software for purposes such as storing volume control setting or retaining video game

15  scores. *Id.* ¶ 40. LSOs can also be used as "a substitute for a browser cookie," *id.* ¶ 42, and

16  plaintiffs allege that Amazon used this technology to circumvent the privacy settings of site

17  visitors who set IE "privacy filters higher than the default setting." *Id.* ¶¶ 47-49, 57.

18  Plaintiffs allege that Amazon's Privacy Notice misleadingly describes its use of LSOs. *Id.*

19  ¶¶ 51-55.

20       Once again, the Complaint fails to provide any meaningful factual allegations relating

21  this technology to either of the two named plaintiffs. Neither plaintiff alleges that she used IE

22  privacy filters "higher than the default setting," or that Amazon.com used LSOs to circumvent

23  the privacy settings on her specific computer. Indeed, plaintiff Ariana Del Vecchio does not

24  even contend that Amazon placed an LSO on her computer. And while plaintiff Nicole Del

25  Vecchio alleges that she observed on her computer seven LSOs that she attributes to Amazon,

26

AMAZON'S MOTION TO DISMISS                         3
Case No. C11-00366-RSL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

she alleges only that she "believes" such LSOs were used "for collecting her personal information." *Id.* ¶¶ 59-60 (emphasis added).

### 3.     Amazon's Alleged Misuse of PII

Finally, plaintiffs allege that Amazon shares its customers' PII with third parties for their "independent use" without disclosing this fact to customers. *Id.* ¶ 65. This conjecture is apparently based on the experience of plaintiff Ariana Del Vecchio, who claims to have received unsolicited pet product advertisements via postal mail "shortly after" purchasing pet supplies from Amazon in 2008. *Id.* ¶ 66. Based on nothing but this amorphous purported temporal relationship, Ms. Del Vecchio blithely alleges that "Amazon shared her personal information with third parties with whom Plaintiff had not done business." *Id.* ¶ 67. The Complaint does not identify the entities that sent the postal advertisements, the pet companies advertised therein, or the identity of the various pet companies with whom Ms. Del Vecchio admittedly had prior dealings.

## C.     Alleged Harm to Users

Plaintiffs claim that, as a result of the activities above, Amazon placed cookies on users' computers, identified and tracked users, collected personal information about users, and shared that information with third parties for "independent purposes." *Id.* ¶¶ 38, 63, 67. Although plaintiffs do not assert any particularized individual harm that they have suffered, they sketch out three distinct and novel theories of harm to "users."

### 1.     Misappropriation of Users' "Individual Information Assets"

Plaintiffs first allege that Amazon's tracking of user activity on <amazon.com> constitutes "misappropriation" of users' "information assets," such as "personal information" and "details of their browsing activities." *Id.* ¶¶ 69-73.

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

2.      **Value to Users of Information about Them and Users' Lost Browsing Opportunities**

Plaintiffs next claim that by tracking users on <amazon.com>, Amazon "takes" users' information and "imposes financial harm to those users." *Id.* ¶ 81.  Plaintiffs theorize that Amazon's alleged practices cause users to provide to Amazon more information than they intended to provide.  *Id.* ¶¶ 77-80.  Plaintiffs assert that this information "has discernable value to those users." *Id.* ¶ 80.  Despite this, plaintiffs propose that the correct way to measure this value is not by reference to this discernable value to users, but by reference to the value of those data to "the market" and to Amazon. *Id.*

Plaintiffs also claim that Amazon's tracking imposes browsing "opportunity costs" on users. *Id.* ¶¶ 82-83.  This theory rests on the assumption that by visiting a website, users forego the opportunity to visit another website and "promote [its] continued availability." *Id.* ¶ 82.  This foregone opportunity to visit another website, they say, imposes "discernable opportunity costs" upon users, the value of which "takes into account the costs that would be charged to users for access to the particular goods and services without having provided their personal information." *Id.* ¶ 83.

3.      **Harm to Users' Computers**

Plaintiffs also claim that Amazon's cookies "diminish[ed] the performance and value to users of their browsers and computers," and "impaired, the condition, quality, and value" of users' browsers and computers. *Id.* ¶¶ 88, 127; *see also id.* ¶ 129.  But plaintiffs do not allege that their own computers were diminished or impaired, and offer no actual facts, beyond these conclusory assertions, about how the unnamed users' computers were diminished or impaired.

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

### III.    ARGUMENT

**A.    Plaintiffs' Unsupported Conjecture, Implausible Conclusions, and Formulaic Recitations Should Be Disregarded.**

Under Rule 12(b)(6), a court must dismiss a complaint for "(1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of California, Inc.*, 88 F.3d 780, 783 (9th Cir. 1996). A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted). This means that the plaintiff has the burden of pleading enough "factual content [to] allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1949-50. "Labels and conclusions" and "formulaic recitation[s] of the elements of a cause of action" are insufficient to state a plausible claim for relief under Rule 8. *Id.* at 1949

The Complaint is nearly devoid of any factual allegations, let alone allegations of the type that satisfy the *Iqbal* standard. Stripping out plaintiffs' speculation about unnamed "users," their formulaic recitations, and their conclusory assertions, <u>the Complaint alleges only three particularized facts related to plaintiffs</u>:

- In February 2011, Plaintiff Nicole Del Vecchio "observed" on her computer "approximately seven LSOs that indicated they were set by the Amazon.com domain." Compl. ¶ 59.

- In 2008, Plaintiff Ariana Del Vecchio purchased pet-related products through <amazon.com> after having purchased such products from offline sources for some time. *Id.* ¶ 66.

- Shortly after purchasing products through <amazon.com>, plaintiff Ariana Del Vecchio received postal advertisements from unnamed pet products companies with whom she had not previously done business. *Id.* ¶ 66.

Upon these three allegations, plaintiffs build an elaborate complaint, including three alleged wrongs committed by Amazon, three theories of harm, and five legal claims.

AMAZON'S MOTION TO DISMISS
Case No. C11-00366-RSL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Most of plaintiffs' conclusions are wholly unsupported by factual allegations. For example, plaintiffs weave into their theories of liability and harm the claim that Amazon installs "persistent cookies" on users' computers. *See, e.g., id.* ¶¶ 37-38, 104-05. Yet neither plaintiff alleges that <u>her</u> computer contains any persistent cookies installed by Amazon. Plaintiffs recite that Amazon diminished the value of their computers, *see, e.g., id.* ¶¶ 88, 127, 129, parroting required elements of their legal claims, but they offer no insight into how their computers have actually been affected. Plaintiffs also make nonspecific claims, couched as factual allegations, that are transparently designed to map plaintiffs to the outer bounds of their broadly defined class, alleging that plaintiffs "used IE versions 6, 7, <u>and/or</u> 8" and "were protected by IE's default privacy setting <u>and/or</u> higher privacy settings." *Id.* ¶ 7 (emphases added). The Complaint does not say which specific versions of IE each plaintiff used, which specific privacy settings each plaintiff selected, or when. These factually unsupported conclusions, formulaic recitations, and nonspecific allegations should be disregarded. *Iqbal*, 129 S. Ct. at 1949-50.

Even where a factual conclusion in the complaint is conceivably related to an actual fact alleged by plaintiffs, plaintiffs take a conjectural leap that is not plausibly supported. The allegations regarding plaintiff Arian Del Vecchio's pet purchases no more than "possibly" support the far-reaching conjecture that Amazon disclosed her personal information. *See* Compl. ¶ 67. The vague temporal proximity of her pet supply purchases on Amazon ("In or about 2008") to the postal advertisements she received ("shortly after"), particularly in light of her admitted purchases from other pet supply purveyors, does not offer more than "possible" support for her conclusion that Amazon (as opposed to any one of those other purveyors) disclosed her personal information to those advertisers. This conclusory assertion should be stripped from the Complaint, as her factual allegations do not cross the line from "possible" to "plausible" as required by *Iqbal* and *Twombly*. *See Iqbal*, 129 S. Ct. at 1949 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

stops short of the line between possibility and plausibility of entitlement to relief.") (internal quotation marks omitted).   Plaintiffs' claim that Amazon discloses users' personal information should thus be disregarded.  *See id.*

In addition, although the actual facts alleged by plaintiffs are particular to one plaintiff or the other, plaintiffs inappropriately cobble them together to support each of their independent claims.  Plaintiff Nicole Del Vecchio relies upon Ariana Del Vecchio's pet supply advertisement allegations to support her own legal claims; Plaintiff Ariana Del Vecchio relies upon Nicole Del Vecchio's LSO allegation to support her own legal claims. Among other things, this foreshadows serious trouble for commonality and plaintiffs' typicality.  More immediately, the Court should strip from each plaintiff's claims allegations relating only to the other plaintiff, and dismiss any legal claims thereby left unsupported as to a particular plaintiff.  *See Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) (one party generally cannot assert another party's rights).  Thus, for example, Ariana Del Vecchio's CFAA claim can not rely upon Nicole Del Vecchio's LSO allegation, and Nicole Del Vecchio's promissory estoppel claim can not rely upon Ariana Del Vecchio's postal advertisement allegation.

**B.      The Complaint Should Be Dismissed for Failure to Allege Injury-in-Fact.**

The Complaint's factual vacuum renders it deficient under the injury-in-fact requirement for standing under Article III of the United States Constitution.  *See Friends of the Earth, Inc., v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).  Among other things, an injury-in-fact must be "concrete and particularized," "actual or imminent, not conjectural or hypothetical," and "fairly traceable to the challenged action of the defendant". *Id.*  Plaintiffs' allegations fail on all counts.

First, none of the three facts alleged by either plaintiff makes out any concrete and particular injury that either has suffered.  As explained by the United States District Court for

AMAZON'S MOTION TO DISMISS
Case No. C11-00366-RSL

8

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

the Central District of California in dismissing for lack of Article III standing a similar complaint filed by plaintiffs' counsel:

> While the Court would recognize the viability in the abstract of such concepts as "opportunity costs," "value-for-value exchanges," "consumer choice," and other concepts . . . , what Plaintiffs really need to do is give some particularized example of their application in this case.

*LaCourt v. Specific Media, Inc.*, 2011 WL 1661532, at *4 (C.D. Cal. Apr. 28, 2011). Although plaintiffs offer a number of complicated theories about how users might be subtly injured by Amazon's alleged practices, they do not allege how they have been harmed by those practices.  Neither plaintiff alleges any facts, beyond formulaic recitations, suggesting that her computer's performance has been diminished.  Neither plaintiff offers any actual facts, beyond unsupported conjecture, about how she has been harmed personally by Amazon's alleged practices.

Second, plaintiffs have not plausibly "connected the dots" from Amazon's alleged practices to their purported injury.  The *Specific Media* court pointed out the same deficiencies:

> [T]he portions of the [amended complaint] . . . describing the nature of Specific Media's alleged practices [] do not specifically allege that Plaintiffs were affected by them.  An inference might be drawn, but rather than invite an argument over the reasonableness of such an inference, Plaintiffs should have specifically alleged that they were affected by Defendant's alleged practices.

*Id.*  Although plaintiffs repeatedly recite how Amazon's alleged practices harm "users," they offer no particularized allegations describing how they themselves were affected by those practices.

For these reasons, the Complaint should be dismissed under Rule 12(b)(1) for failure to allege an injury-in-fact under Article III of the United States Constitution.

C.   **Plaintiffs' Complaint Should Be Dismissed with Prejudice for Failure to State a Claim.**

Unsurprisingly, given the paucity of their factual allegations and the conclusory assertions constructed from those allegations, plaintiffs fail to allege facts sufficient to support

AMAZON'S MOTION TO DISMISS
Case No. C11-00366-RSL

9

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

<u>any</u> of their individual causes of action.  Even if plaintiffs were permitted to replead the Complaint and substitute (where Rule 11 allows) the word "plaintiffs" for the word "users," their complaint would still fail to make out any cause of action.  As addressed below, Plaintiffs' hypothetical theories do not map onto the elements required by their legal claims.  It would be futile to amend, and for this reason, the Court should dismiss Plaintiffs' complaint with prejudice.

### 1.    Plaintiffs Do Not Plausibly Allege a CFAA Claim.

Plaintiffs allege that Amazon's alleged activities violate Section 1030(a)(4) of the federal Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030.  That provision makes it a crime to "knowingly, and with intent to defraud," access a computer without authorization and, by way of that access, "further the intended fraud and obtain anything of value."  Plaintiffs contend that Amazon's placement of persistent browser cookies on users' computers constitutes access and is the object of Amazon's fraud, and that Amazon's alleged circumvention of IE filtering through an invalid P3P Compact Policy renders that access unauthorized.  Compl. ¶¶ 104-108, 109.

The CFAA is "primarily a criminal statute," enacted to target hackers and technology criminals.  *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1132, 1134 (9th Cir. 2009).  The CFAA permits a private cause of action in the limited circumstances spelled out in 18 U.S.C. § 1030(g).  *Id.*  However, because the CFAA is a criminal statute, its interpretation even in civil cases must follow the rule of lenity, lest the law be construed "in surprising and novel ways that impose unexpected burdens on [criminal] defendants."  *Id.* at 1134.  The rule of lenity requires the Court "to limit the reach of criminal statutes to the clear import of their text and construe any ambiguity against the government," or in this case, the plaintiffs.  *Id.* at 1135.

Plaintiffs' novel theories stretch the CFAA beyond what its language can bear, even without the application of the rule of lenity.  In this instance, plaintiffs' allegations do not

AMAZON'S MOTION TO DISMISS
Case No. C11-00366-RSL

10

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  plausibly support a finding that they suffered the requisite $5,000 in loss; nor can they support

2  a finding that Amazon lacked authorization to place cookies on plaintiffs' computers.

3  **a.   Plaintiffs Do Not Allege $5,000 in "Loss."**

4  Plaintiffs fail to plausibly plead that either they or unnamed users have incurred either

5  the type or magnitude of specially defined "loss" needed to maintain a private cause of action

6  under the CFAA.  Among other things, a civil litigant must establish one of the five factors

7  enumerated by 18 U.S.C. § 1030(c)(4)(A)(i)(I)-(V) to maintain a claim.  The only one of these

8  factors touched upon by plaintiffs' complaint is the first—"loss to 1 or more persons during

9  any 1-year period . . . aggregating at least $5,000 in value."  18 U.S.C. § 1030(c)(4)(A)(i)(I);

10  *see* Compl. ¶ 109.

11  "Loss" is specially defined under the CFAA as

12      any reasonable cost to any victim, including the cost of responding to an offense,
        conducting a damage assessment, and restoring the data, program, system, or
13      information to its condition prior to the offense, and any revenue lost, cost incurred, or
        other consequential damages incurred because of interruption of service.
14
15  18 U.S.C. § 1030(e)(11).  Under this definition, two types of losses can count towards the

16  CFAA $5,000 loss threshold: (1) costs to investigate or remedy an unauthorized intrusion; and

17  (2) costs incurred due to "interruption of service."  *See, e.g., Frees Inc. v. McMillian*, 2007

18  WL 2264457, at *3 (W.D. La. Aug. 6, 2007) ("Courts have consistently interpreted 'loss' . . .

19  to mean a cost of investigating or remedying damage to a computer, or a cost incurred

20  because the computer's service was interrupted."); *see also Doyle v. Taylor,* 2010 WL

21  2163521, at *2 (E.D. Wash. May 24, 2010) ("[P]laintiffs must identify impairment of or

22  damage to the computer system that was accessed without authorization.").

23  Although the Complaint recites the statutory element of "loss," Compl. ¶ 109,

24  nowhere do plaintiffs allege any facts that plausibly suggest that they suffered monetary harm

25  that falls within either of the cognizable categories of "loss."  Similarly, plaintiffs fail to

26  plausibly assert that their loss meets the statutory $5,000 threshold.  For these reasons, their

AMAZON'S MOTION TO DISMISS
Case No. C11-00366-RSL

11

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

CFAA claim should be dismissed.  *See, e.g., Océ North America, Inc. v. MCS Services, Inc.*, 2010 WL 3703277, at *5 (D. Md. Sept. 16, 2010) ("Plaintiff's allegation that 'it has suffered impairment to the integrity or availability of its data, programs, systems, and information resulting in losses or damages in excess of $5000 during a one year period' is merely a conclusory statement and thus does not sufficiently plead the $5000 minimum damages requirement to bring a suit under the CFAA.").

### i.     Plaintiffs allege no investigative or remedial costs.

Plaintiffs do not allege that they incurred any actual, non-theoretical, costs to investigate or remedy Amazon's purported access to their computers.  *See, e.g., AtPac, Inc. v. Aptitude Solutions, Inc.*, 730 F. Supp. 2d 1174, 1177 (E.D. Cal. 2010) (dismissing CFAA claim that "does not allege any facts that indicate that it incurred costs to update its server security protocols or otherwise analyze the circumstances of the unauthorized server access"); *Flynn v. Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor LLP*, 2010 WL 4339368, at *8 (D. Nev. Oct. 15, 2010) (dismissing CFAA claim that did not "allege any costs incurred by responding to the hacking itself, conducting a damage assessment, restoring data, or other consequential damages incurred because of an interruption in service").

Even if the two named plaintiffs had actually alleged that Amazon placed persistent browser cookies on their own computers, they still did not allege that they either attempted to remove those cookies or incurred measurable costs in doing so.  Indeed, any effort to remove cookies would be *de minimis* and not susceptible to the quantification necessary to meet the $5,000 threshold.

### ii.     Plaintiffs allege no losses caused by interruption of service.

Nor do plaintiffs allege any loss caused by an "interruption in service."  An "interruption in service" means that plaintiffs' computer is "down" or "inoperable"; resultant costs include those incurred "because the computer cannot function while or until repairs are made," *Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468, 474, 477 (S.D.N.Y. 2004),

AMAZON'S MOTION TO DISMISS                                12
Case No. C11-00366-RSL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

*aff'd* 166 F.App'x 559 (2d Cir. 2006), or because defendants' conduct prevented plaintiffs from using the computer.  *See, e.g., Lasco Foods, Inc. v. Hall & Shaw Sales, Mktg. & Consulting, LLC*, 600 F. Supp. 2d 1045, 1052-53 (E.D. Mo. 2009) (interruption in service where defendants "retained" plaintiffs' computers for matter of weeks, physically preventing access).

Plaintiffs do not allege that Amazon's actions caused their computers to go "down" or rendered their computers "inoperable," *see Nexans Wires*, 319 F. Supp. 2d at 477, or affected them in any way that plausibly rises to an "interruption of service."  Rather, they opaquely claim that Amazon's actions caused "<u>users</u>' browsers and computers to perform in ways the users do not want" and "diminish[ed] the performance and value to <u>users</u> of their browsers and computers."  Compl. ¶ 88 (emphases added).  Even assuming that these supposed variances from users' subjective expectations were injuries redressable under the CFAA, which they are not, they do not arise from an "interruption of service" and thus can not count towards the $5,000 jurisdictional threshold.  And even if plaintiffs alleged an incremental diminishment in the processing and speed capabilities of their own computers and browsers, which they do not, that still would not constitute an "interruption in service," particularly in light of the narrow interpretation of the term that the rule of lenity requires.  Simply put, plaintiffs do not plausibly plead any facts that suggest they will be able to show that they suffered an "interruption in service."

iii.     **Plaintiffs can not meet the $5,000 jurisdictional threshold.**

Even if plaintiffs had alleged the type of loss that is cognizable under the CFAA, they still could not show the magnitude of loss necessary to sustain their claims.  Plaintiffs do not contend that they personally suffered $5,000 in loss—they do not allege the loss of a single cent.  Rather, they alleged that the unlawful access to "Plaintiffs and Class members' computers . . . resulted in an aggregated loss to Plaintiffs and the Class of at least $5,000 within a one-year period."  Compl. ¶ 109.  These nonspecific allegations of class wide injury

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

can not be used to support plaintiffs' individual claims against Amazon. This motion tests plaintiffs' claims, not the claims of other "users" or absent class members, and plaintiffs must establish that they have an individual claim against Amazon to proceed with this action. *See, e.g., La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 462 (9th Cir. 1973) (plaintiff may not represent class in action against defendant as to whom plaintiff has no cause of action).

Plaintiffs seek to aggregate losses from absent class members. Compl. ¶ 109. There is disagreement within the Ninth Circuit whether CFAA class action plaintiffs may aggregate "loss" across absent class members. *Compare Lyons v. Coxcom, Inc.*, 2009 WL 347285, *8 (S.D. Cal. Feb. 6, 2009) (rejecting aggregation)[1] *and Specific Media,* 2011 WL 1661532, at *6 n.4 (expressing doubt about aggregation) *with Toys R Us, Inc., Privacy Litig.*, 2001 WL 34517252 (N.D. Cal. Oct. 9, 2001) (permitting aggregation) *and In re Apple & AT&T Antitrust Litigation*, 596 F. Supp. 2d 1288, 1308 (N.D.Cal. 2008) (same, relying on *Toys R Us, Inc., Privacy Litig.).* Those decisions that permit aggregation of losses from absent class members are in considerable tension with the teachings of the Supreme Court and the Ninth Circuit regarding standing in class action cases. *See Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("[E]ven named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.") (internal quotation marks omitted); *La Mar,* 489 F.2d at 462 (plaintiff may not represent class in action against defendant as to whom plaintiff has no cause of action).

Permitting aggregation of "losses" from absent class members also would be inimical to Congress's control over jurisdiction of the lower courts. Congress has shown that it is capable of drafting and adjusting jurisdictional thresholds without judicial assistance. For example, Congress recognized that many class actions may not satisfy the $75,000 amount-in-

---

[1] The court later vacated this order, after plaintiff had refiled an amended complaint that did not include a CFAA claim, and after the Supreme Court had issued its opinion in *Iqbal*. *Lyons v. Coxcom, Inc.*, 718 F. Supp. 2d 1232, 1234-35, 1240 (S.D. Cal. 2009)

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

controversy requirement for federal diversity jurisdiction because only class representatives' injuries counted towards the $75,000 threshold; that is, the amount-in-controversy requirement could not be satisfied by aggregation across the class. S. REP. NO. 109-14, at 10-11.  The Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), remedies this gap by permitting class representatives to aggregate damages across the putative class in order to reach the CAFA threshold of $5 million.  28 U.S.C. § 1332(d)(6) ("In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000 ... ."); *see generally* S. REP. NO. 109-14, at 28, 42.    Indeed, plaintiffs plead CAFA as one basis for the Court's subject matter jurisdiction.  Compl. ¶ 11.  If Congress wished to permit aggregation across absent class members to reach the $5,000 requirement under the CFAA, it could have passed a law similar to CAFA.  It did not.

The Court, however, does not need to reach the question of whether aggregation is permitted in these circumstances.  Because even if plaintiffs were permitted to borrow unalleged loss from unnamed "users" and aggregate loss across absent members, at bottom their complaint still fails to allege any cognizable "loss" whatsoever.  Plaintiffs' failure is a matter of category, not of degree.  They allege <u>no</u> "loss" that they <u>or users</u> have suffered, much less loss that is quantifiable.  Presuming that plaintiffs are typical of the class, *see* Compl. ¶ 93, their inability to allege any plausible "loss" on their own behalf (or on behalf of "users") means that aggregation with others like them will not move them across the threshold, whether that threshold is $5 or $5,000.

### b.    Documents Central to the Complaint Establish that Users Authorized Amazon to Place Cookies on Their Computers.

Plaintiffs' CFAA claim also fails because documents that plaintiffs themselves incorporate into the Complaint establish users consent to Amazon's placement of cookies on

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

their computers.[2]  The Amazon Conditions of Use and Privacy Notice unequivocally explain to users how Amazon uses cookies, what they are, and why they are necessary for the proper functioning of the <amazon.com> website.  *See* Decl. of Daniel H. Royalty in Support of Motion to Dismiss Ex. A (Conditions of Use), B (Privacy Notice).  In addition, they clearly indicate that users using the site consent to Amazon's placement of cookies on their computers.

Amazon's Conditions of Use and Privacy Notice govern users' visits to <amazon.com>.  Plaintiffs admit as much, basing both their venue allegations and legal claims upon these policies.  Compl. ¶¶ 16, 51-55, 62, 64.  Indeed, most courts to consider the issue have held that, for purposes of the CFAA, authorization to use a website is controlled by a website's terms of use.  *See, e.g., EF Cultural Travel BV v. Zefer Corp.*, 318 F.3d 58, 62 (1st Cir. 2003) ("A lack of authorization could be established by an explicit statement on the website restricting access."); *see generally United States v. Drew*, 259 F.R.D. 449, 461 (C.D. Cal. 2009) ("[T]he vast majority of the courts (that have considered the issue) have held that a website's terms of service/use can define what is (and/or is not) authorized access vis-a-vis that website.").

More particularly, the United States District Court for the District of Montana recently considered, on a motion to dismiss, the application of online privacy notices to a putative

---

[2]     The Ninth Circuit recognizes that when evaluating a motion to dismiss, the district court can consider documents on which a complaint relies.  *Daniels-Hall v. Nat'l Educ. Ass'n.*, 629 F.3d 992, 998 (9th Cir. 2010) (considering contents of prospectus and information posted on particular websites where plaintiffs "quoted this prospectus in their Complaint and provided the web address where the prospectus could be found online. Plaintiffs thereby incorporated the prospectus into the Complaint by reference.").  The court may "treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'"  *Id.*; *see also Fadaie v. Alaska Airlines, Inc.,* 293 F. Supp. 2d 1210, 1214 (W.D. Wash. 2003) (Lasnik, J.).  Plaintiffs reference and rely upon the contents of two documents that this Court should consider, in their entirety and full context, when evaluating this Motion: Amazon's Conditions of Use, and Amazon's Privacy Notice.  *See* Compl. ¶¶ 16, 51-55, 64  *See Keithly v. Intelius*, 2011 WL 538480, at *2 (W.D. Wash. Feb. 8, 2011) (Lasnik, J.) (incorporating by reference, for purposes of motion to dismiss, website terms of use referred to in complaint).

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

privacy class action in *Mortensen v. Bresnan Communication, LLC*, 2010 WL 5140454 (D. Mont. Dec. 13, 2010).  The plaintiffs claimed that, by diverting and examining their Internet traffic for purposes of targeting advertisements, their ISPs intercepted electronic communications in violation of the federal Wiretap Act.  *Id.* at *2.  However, the court examined the defendants' online subscriber agreement and privacy notice and held that they disclosed that defendants would undertake the very activity about which defendants complained.  *Id.* at *3 to *5.  The court thus dismissed the plaintiffs' Wiretap Act claim because the plaintiffs had consented.  *Id.* at *5; *cf. Meier v. Midwest Recreational Clearinghouse, LLC*, 2010 WL 2738921, at *3 (E.D. Cal. July 12, 2010) (holding that website visitor was bound to forum selection clause contained in terms of use; citing *Carnival Cruise Lines v. Shute*, 499 U.S. 585 (1991)).

As is clear from the documents relied upon in the Complaint itself, Amazon's policies explain that it will place both browser cookies and Flash cookies on users' computers, that these cookies will be used to track users' activity on Amazon, and that Amazon will use the information it collects to enable certain features, to target advertisements, and to personalize <amazon.com>, among other things.

In the first section of the Privacy Notice, prominently titled "What Personal Information About Customers Does Amazon.com Gather?," the Privacy Notice explains:

> Automatic Information: We receive and store certain types of information whenever you interact with us. For example, like many Web sites, **we use "cookies,"** and we obtain certain types of information when your Web browser accesses Amazon.com or advertisements and other content served by or on behalf of Amazon.com on other Web sites. Click here to see examples of the information we receive.

Royalty Decl. Ex. B at 1 (emphasis added).  In the next section, prominently titled "What About Cookies," Amazon explains:

> **Cookies are alphanumeric identifiers that we transfer to your computer's hard drive through your Web browser to enable our systems to recognize your browser and to provide features** such as 1-Click purchasing, Recommended for You, personalized advertisements on other Web sites (e.g., Amazon Associates with content served by Amazon.com and Web sites using Checkout by Amazon payment service), and storage of items in your Shopping Cart between visits.

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

*Id.*, Ex. B at 1-2 (emphasis added).   This section also includes the explanation cited in Paragraph 51 of plaintiffs' complaint.

Documents referenced in the Complaint also reflect that Amazon provides an extensive listing of the information it collects and how it uses that information in the Privacy Notice section titled "Examples of Information Collected," which is also hyperlinked from various places within the Privacy Notice.   One part of this section, titled "Automatic Information," explains:

> Examples of the information we collect and analyze include the Internet protocol (IP) address used to connect your computer to the Internet; login; e-mail address; password; computer and connection information such as browser type, version, and time zone setting, browser plug-in types and versions, operating system, and platform; **purchase history**, which we sometimes aggregate with similar information from other customers to create features such as Purchase Circles and Top Sellers; **the full Uniform Resource Locator (URL) clickstream to, through, and from our Web site, including date and time; cookie number; products you viewed or searched for;** and the phone number you used to call our 800 number. We may also use browser data such as **cookies, Flash cookies (also known as Flash Local Shared Objects), or similar data on certain parts of our Web site for fraud prevention and other purposes.** During some visits we may use software tools such as JavaScript to measure and collect session information, including page response times, download errors, length of visits to certain pages, page interaction information (such as scrolling, clicks, and mouse-overs), and methods used to browse away from the page.

*Id.*, Ex. B at 4-5 (emphases added).

Accordingly, plaintiffs cannot maintain their claim that Amazon's placement of cookies on users' computers was done "without authorization, or exceed[ing] authorized access," and the Court need not credit any conclusory statements plaintiffs attempt to make in contradiction of the documents which plaintiffs themselves incorporate into the Complaint. *See Colony Cove Properties, LLC v. City of Carson*, ___ F.3d ___, 2011 WL 1108226, *5 (9th Cir. Mar. 28, 2011) (citing *Iqbal*, 129 S. Ct. at 1950); *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (holding that "we are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint"). By visiting and using <amazon.com>, plaintiffs, and users, unequivocally consented to Amazon's placement of cookies on their computers through the Conditions of Use and

AMAZON'S MOTION TO DISMISS
Case No. C11-00366-RSL

18

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Privacy Notice.  Whether or not plaintiffs "reasonably believed" that IE would block Amazon from placing cookies on their computers, Compl. ¶ 105, has no bearing on whether plaintiffs did in fact give Amazon that authority.

**2.     Plaintiffs Do Not Allege a Plausible Claim for Trespass to Chattels.**

**a.     Plaintiffs Allege No Harm Related to Chattels.**

In states that have embraced trespass to chattels,[3] the tort requires that plaintiffs show harm to the chattel in one of two ways: (1) harm to the condition, quality, or value of the chattel itself, or (2) deprivation of use of the chattel for a substantial period of time.  *See, e.g., Register.com v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004) ("A trespass to a chattel may be committed by intentionally ... using or intermeddling with a chattel in the possession of another, where the chattel is impaired as to its condition, quality, or value.") (citations omitted); *In re Jetblue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 329 (E.D.N.Y. 2005) ("Under New York law, liability only obtains on this cause of action if a defendant causes harm to "the [owner's] materially valuable interest in the physical condition, quality, or value of the chattel, or if the [owner] is deprived of the use of the chattel for a substantial time."; harm to "privacy interests" not sufficient to support claim).

Plaintiffs do not allege that Amazon's actions prevented them from using their computers for *any* amount of time, much less the "substantial" deprivation required to support a trespass to chattels claim.  *See, e.g., In re Apple & AT&TM Antitrust Litig.*, 2010 WL 3521965, *6 (N.D. Cal. July 8, 2010) (holding that "loss of use of a personal phone for a few

---

[3]     Amazon does not concede that Washington law actually recognizes the right to bring a claim for trespass to chattels.  No published Washington case explicitly approves the tort of trespass to chattels, although it appears that several Washington Superior Courts have permitted the claim to proceed.  One unpublished case relied upon the Restatement (Second) of Torts § 217 to define the action as "intentional interference with a party's personal property without justification that deprives the owner of possession or use."  *Sexton v. Brown*, 2008 WL 4616705, *5 (Wn. App. 2008).  The Washington Supreme Court has explored the scope of a claim of negligent damage to property, finding that the appropriate measurement of damages is based on the diminishment value of the property and may include compensation for loss of property while repairs are made.  *McCurdy v. Union Pac. R. Co.*, 68 Wn.2d.457, 467-70 (1966).

AMAZON'S MOTION TO DISMISS                                    19
Case No. C11-00366-RSL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

days" did not meet injury requirement for trespass to chattels under California law). Plaintiffs' conclusory assertion that Amazon "dispossessed" them of their browsers and computers, Compl. ¶ 126, is not supported by any factual allegation.   A person is "dispossessed" of a chattel when she is physically prevented from accessing it or it is destroyed, or if another person "assumes complete control and dominion over the chattel." *See generally* REST. 2D OF TORTS § 221 & cmt. c (1965).  Nothing in the Complaint supports such an inference here.

Nor do plaintiffs plausibly allege that Amazon's actions diminished the condition, quality, or value of their computers.  Plaintiffs recite the element that Amazon "impaired the condition, quality, and value of users' computers and browsers," or "affected the performance of [users'] browsers on an ongoing basis," Compl. ¶ 127.  But, once again, they allege no facts in support these conclusions.   Indeed, it is implausible to assume that Amazon's transmission of a P3P policy and placement of cookies on a user's computer degraded or devalued that computer in any manner that is not *de minimis.  See Intel Corp. v. Hamidi,* 71 P.3d 296, 301 (Cal. 2003) (dismissing trespass to chattels claim where plaintiff failed to demonstrate "impairment of system functionality" from hundreds of thousands of emails sent to plaintiff's computers).  Indeed, plaintiffs do not even allege that these injuries occurred to them, but rather to unspecified "users" that are not before this Court.

In the recent *Specific Media* case, the United States District Court for the Central District of California dismissed all claims for failure to allege Article III injury-in-fact. *Specific Media*, 2011 WL 1661532, at *3 to *6.  Regarding plaintiffs' trespass to chattels claim in that case, the court reasoned that:

> Plaintiffs have not alleged that the functioning of their computers was impaired (except in the trivial sene [sic] of being unable to permanently delete cookies) or would be imminently impaired to the degree that would enable them to plead the elements of the tort.

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    *Id.* at \*7.  The United States District Court for the Southern District of New York reached a

2    similar conclusion in a class action alleging harm from unauthorized installation of cookies,

3    holding that plaintiffs alleged no "damage whatsoever to plaintiffs' computers, systems, or

4    data that could require economic remedy."  *In re Doubleclick Privacy Litig.*, 154 F. Supp. 2d

5    497, 525 (S.D.N.Y. 2001) (dismissing CFAA claim).  As Judge Coughenour reasoned in

6    2001, "the transmission of an internet cookie is virtually without economic harm."  *Chance v.*

7    *Avenue A, Inc.*, 165 F. Supp. 2d 1153, 1159 (W.D. Wash. 2001) (granting defendant's

8    summary judgment motion on CFAA claim).

9        The same reasoning holds here.  Plaintiffs' speculative and vague assertions, devoid of

10   any factual allegation of harm to or loss of use of their computers, are incapable of supporting

11   their claim for trespass to chattels.  *See Elektra Entm't Group, Inc. v. Santangelo*, 2008 WL

12   4452393, \*7 (S.D.N.Y. Oct. 1, 2008) (dismissing trespass to chattels claim where there were

13   no allegations of "harm to the condition, quality, or value of the computer" or that plaintiffs

14   "were deprived of the use of the computer for a substantial period of time").  Plaintiffs have

15   simply not alleged any harm, let alone plausible harm, to their computers caused by

16   Amazon's alleged transmission of P3P policy to their computers or installation of browser

17   cookies or Flash cookies on their computers.

18                    **b.    Plaintiffs Do Not Allege Lack of Consent.**

19       Plaintiffs also fail to allege plausible grounds to find that users did not consent to

20   Amazon's activities.  Lack of consent is an element of trespass to chattels.  *See, e.g., In re*

21   *Apple & AT&TM Antitrust Litig.*, 596 F. Supp. 2d 1288, 1307 (N.D. Cal. 2008).  As discussed

22   above, Amazon's Conditions of Use and Privacy Notice unambiguously explain what cookies

23   would be placed upon users' computers.  Plaintiffs' unequivocal consent to Amazon's

24   placement of these cookies vitiates plaintiffs' trespass to chattels claim.  *See id.* at 1307

25   ("Whether Plaintiffs' trespass claim can be permitted to proceed, however, depends on

26

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

whether Plaintiffs consented to the alleged trespass when they downloaded" software that was accompanied by a notice.").

### 3.     Plaintiffs' CPA Claim Should Be Dismissed.

Plaintiffs' CPA claims should be dismissed for three separate and independent reasons.  First, plaintiffs are not Washington residents and do not have standing to bring a Washington CPA claim.  Second, each of the allegedly unfair and deceptive acts was either authorized by plaintiffs or is too speculative to permit relief.  Third, the harms alleged by plaintiffs are not cognizable injuries under the CPA.

#### a.     Plaintiffs Do Not Have Standing to Assert a Washington CPA Claim.

The CPA only reaches unfair or deceptive acts or practices in connection with "the sale of assets or services, and any commerce directly or indirectly affecting the people of the state of Washington." RCW 19.86.010(2).  Plaintiffs have not alleged that they are residents of Washington, and cannot bootstrap their CPA claims to the claims that any residents of Washington may have.  *See Lierboe*, 350 F.3d at 1022; *La Mar,* 489 F.2d at 462.  Accordingly, Plaintiffs "lack[] standing to assert a CPA claim" and the claim should be dismissed. *Keithly v. Intelius Inc.*, ___ F. Supp. 2d ___, 2011 WL 538480, at *9 (W.D. Wash. Feb. 2, 2011) (Lasnik, J.) (holding that non-resident plaintiffs do not have standing to assert CPA claims).

#### b.     Plaintiffs Do Not Plausibly Allege an Unfair or Deceptive Act or Practice.

An act is unfair or deceptive if it had the capacity to deceive a substantial portion of the public, a determination that can be made as a matter of law on a motion to dismiss. *Minnick v. Clearwire US, LLC*, 683 F. Supp. 2d 1179, 1186 (W.D. Wash. 2010).  Plaintiffs allege three things that they claim are unfair or deceptive: (1) Amazon's P3P compact policy; (2) Amazon's use of Flash cookies; and (3) Amazon's purported disclosure to third parties of Plaintiffs' personally identifiable information ("PII").  Compl. ¶ 115.

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

As an initial matter, the third contention—plaintiffs' conclusory assertion that Amazon shared their PII with pet supply purveyors—is not supported by plausible factual allegations and should be disregarded.  *See supra* Part III(A).

Plaintiffs' other two claimed unfair and deceptive acts—that Amazon promulgated a misleading P3P policy and used Flash cookies without adequate notice or consent—are foreclosed by Amazon's unequivocal disclosure of its cookie practices to plaintiffs in the Conditions of Use and Privacy Notice, which plaintiffs themselves reference and rely upon in the Complaint.  A similar situation arose in *Minnick*, where plaintiffs asserted that defendant's advertisements had the tendency and capacity to deceive.  683 F. Supp. 2d. at 1188.  The court rejected the plaintiffs' argument as conclusory, finding that they had failed to allege that they had viewed any statements of the defendant, let alone relied on the content of any particular statement of the defendant.  *Id.*  The court further found that the plaintiff's allegations were unsupported, as the documents that the plaintiffs referenced in the complaint disclosed that which the plaintiffs asserted was not disclosed.  *Id.*  The court accordingly held that the plaintiffs had only pled conclusions of law, which were insufficient to support a claim.  *Id.*

As Amazon's practices with respect to Flash cookies and commercial uses of personal information were disclosed, as a matter of law, Amazon's alleged conduct—even if true—does not have the capacity to deceive a substantial portion of the public.  *See Lowden v. T-Mobile USA Inc.*, 378 Fed. Appx. 693, 695 (9th Cir. 2010) (affirming Rule 12(c) motion where customer bill described regulatory fee—in a potentially misleading manner—as a "tax," as the terms and conditions that customers were bound by made clear that customers would be required to pay all taxes and regulatory fees); *Smale v. Cellco P'ship*, 547 F. Supp. 2d 1181, 1188-89 (W.D. Wash. 2008) (granting motion to dismiss, as imposition of charges was neither deceptive nor unfair, as a matter of law, where the charges were described in defendant's disclosures); *see also Robinson v. Avis Rent A Car Sys., Inc.*, 106 Wn. App. 104,

AMAZON'S MOTION TO DISMISS
Case No. C11-00366-RSL

23

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

118-19 (2001) (affirming summary judgment for defendants on CPA claim as there was no causation where terms were fully disclosed, and thus, there was no misrepresentation of fact).

### c.   Plaintiffs Do Not Plausibly Allege a Cognizable Injury to Business or Property.

Plaintiffs' Complaint rests on three purported injuries: (i) loss of plaintiffs' privacy; (ii) loss of the "value to users of their personal information;" and (iii) vague computer harms. None of these constitute an injury to business or property as required by Washington law. *See, e.g., Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d.778, 780, (1986).

### i.   Any injuries relating to control of personal information are not injuries to business or property.

Washington law does not recognize that plaintiffs' first two claimed injuries— purported loss of control of personal information—constitute injuries to business or property. Injuries to personal rights are not redressable under the CPA, as they are not injuries to business or property. *Leingang v. Pierce County Med. Bureau, Inc.*, 131 Wn.2d.133, 158 (1997) ("[P]ersonal injuries, including mental pain and suffering, are not compensable under the Consumer Protection Act."); *Ambach v. French*, 167 Wn.2d.167, 173-74 (2009) (financial losses from personal injury do not constitute an injury to business or property).

Other courts that have had the opportunity to consider the type of theory that plaintiffs advance here have rejected efforts to classify them as injuries to business or property. *See, e.g., Lambert v. Hartman*, 517 F.3d 433, 445-46 (6th Cir. 2008) (disclosure of personally identifying information did not implicate a property right); *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1127 (N.D. Cal. 2008) (granting motion for judgment on the pleadings for state unfair acts and deceptive practices statute, as loss of personally identifying information did not constitute an injury to property); *Hanson v. Hancock Cnty. Mem'l Hosp.*, 938 F. Supp. 1419, 1438-39 (N.D. Iowa 1996) (granting summary judgment on conversion claim as there was no legal basis for finding a property interest in personal information). Accordingly, plaintiffs'

AMAZON'S MOTION TO DISMISS
Case No. C11-00366-RSL

24

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

claimed loss of control of, or theoretical value in, their personal information or privacy is not an injury to business or property, and as such, is not actionable under the CPA.

> ### ii. Browser and computer failures to operate in conformity with subjective expectations are not an injury to business or property.

As explained above, *supra* Parts III(C)(1)(a), (C)(2)(a), plaintiffs have not plausibly alleged that Amazon's actions damaged their computers.

To the extent that plaintiffs claim "injury" to subjective preferences about how their web browser or computer would operate, their claim is not cognizable under the CPA. *See, e.g.*, *Brotherson v. Prof'l Basketball Club, L.L.C.*, 604 F. Supp. 2d 1276, 1295-96 (W.D. Wash. 2009) (granting motion for summary judgment). In *Brotherson*, purchasers of season tickets for Sonics games claimed that it was unfair and deceptive to fail to disclose that the Sonics were intending to leave the city at the end of the season. *Id.* at 1295. The ticket purchasers used their tickets to attend the games, and they received the benefits associated with the season ticketholder club. *Id.* However, they claimed that the value of the tickets to the games was lessened by the team's imminent departure, which was publicized before the end of the season. *Id.* The court found that the plaintiffs' injury was not a cognizable injury to business or property, and it granted summary judgment for the defendant, dismissing the CPA claim. *Id.* The principle from *Brotherson* is that when the injury allegedly suffered by an individual is not a verifiable and quantifiable injury, but rather, is only a disruption to subjective preferences, there is no injury to business or property.

As with injuries to subjective preferences, general inconveniences are not an injury to business or property. *See Dilorenzo v. Costco Wholesale Corp.*, 515 F. Supp. 2d 1187, 1198 (W.D. Wash. 2007). In *Dilorenzo*, the court granted a motion for summary judgment on the plaintiff's CPA claim where the plaintiff was stopped and questioned when she entered a store about whether her dog was actually a service animal. The court held that the subjective injury to the plaintiff's "daily shopping trade" was not a CPA injury. *Id.*

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

**4.      Plaintiffs Do Not Allege a Plausible Claim for Promissory Estoppel.**

A claim for promissory estoppel requires the following elements: "(1) a promise which (2) the promisor should reasonably expect to cause the promisee to change his position, and (3) which does cause the promisee to change his position (4) justifiably relying upon the promise, in such a manner that (5) injustice can be avoided only by enforcement of the promise." *Hilton v. Alexander & Baldwin, Inc.*, 66 Wn.2d.30, 31 (1965) (granting motion to dismiss). Plaintiffs contend that Amazon's P3P code and its Privacy Notice were promises that Amazon's cookie practices "comported with their browsers' privacy settings and controls." Compl. ¶ 133.

As to Amazon's P3P code, plaintiffs do not allege that they personally reviewed the code. Plaintiffs' promissory estoppel claim should be dismissed on this basis alone. *Donald B. Murphy Contractors, Inc. v. King County*, 112 Wn. App. 192, 198 (2002) (dismissing promissory estoppel claim where plaintiff failed to demonstrate that there was a direct promise to the plaintiff). Instead, plaintiffs make a novel claim that their computer "read" the P3P code, that the P3P code was "gibberish," and that the computer made erroneous decisions because of a "design flaw." Plaintiffs do not allege any awareness whatsoever of how their browsers (whatever they were) would interpret P3P code, or for that matter that they were aware of P3P itself. There is no Washington case law supporting the notion that a promissory estoppel claim can be based on a machine's reliance on published code, especially when that reliance is the mistaken result of a design flaw.

Equally important, statements must be "definite, clear, and unequivocal" for a promise to arise under Washington law. *Wright v. Miller*, 93 Wn. App. 189, 201-02 (1998); *Seattle-First Nat. Bank v. Westwood Lumber, Inc.*, 65 Wn. App. 811, 824-25 (1992) (holding that alleged promise was not a "definite and clear promise"). Plaintiffs themselves assert that Amazon's P3P policy consisted entirely of the four letters "AMZN" and was "gibberish."

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Compl. ¶ 27. "Gibberish" is certainly not the type of definite, clear, and unequivocal promise that can support a claim for promissory estoppel.

In addition, plaintiffs fail to allege that they read or relied on Amazon's Privacy Notice. Indeed, the Complaint asserts the opposite—namely that it was "effectively impossible" and "challenging" for users to actually examine website privacy policies because of their own unwillingness to do so. *Id.* at ¶ 20. Nor do plaintiffs cite to any language within the Privacy Notice promising that the Internet Explorer web browser would operate in any particular way for individuals using that browser to access Amazon's website. Finally, the Privacy Notice explicitly disclosed Amazon's use of cookies and Flash cookies, *see supra* Part III(C)(1)(b), the very practices about which plaintiffs now complain. *See* Compl. ¶¶ 3-4.

**5.    Plaintiffs Do Not Allege a Plausible Claim for Unjust Enrichment.**

The elements of an unjust enrichment claim under Washington common law are that "(1) one party must have conferred a benefit to the other; (2) the party receiving the benefit must have knowledge of that benefit; and (3) the party receiving the benefit must accept or retain the benefit under circumstances that make it inequitable for the receiving party to retain the benefit without paying its value." *Cox v. O'Brien*, 150 Wn. App. 24, 37 (2009). Plaintiffs have not plausibly alleged that either they or users have conferred a benefit on Amazon or that it would be inequitable for Amazon to retain any alleged benefit.

The only allegations that shed any light on the purported monetary benefit that plaintiffs conferred on Amazon are found in the portion of the Complaint that speculates about the value that could, theoretically, be attributed to personal information or website traffic. *See* Compl. ¶¶ 74-83.[4] Specifically, the plaintiffs allege that there is value in:

- the number of individuals that a website operator can get to visit a website, *see* Compl. ¶¶ 74-75;

---

[4]    Plaintiffs allege that Amazon "retained money belonging to Plaintiffs." Compl. ¶¶ 143, 145. This is simply a "[t]hreadbare recital[]" of one element of unjust enrichment that should not be afforded any credit. *See Iqbal*, 129 S. Ct. at 1949-50.

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

- browsing information transmitted when individuals "click" on web pages, which is akin to "currency," or "raising the price of admission" to websites, *see* Compl. ¶¶ 76-78;

- personally identifiable information, *see* Compl. ¶¶ 79-80; and

- the "opportunity to use" information to "purchase and promote the continued availability" of third party websites.  *See* Compl. ¶¶ 82-83.

Assuming for purposes of argument that these things have ascertainable value, none of the above theories constitute an allegation that plaintiffs or other users have conferred a benefit upon Amazon.

In a similar cookie-based privacy lawsuit, when considering the "value" of personal information collected by cookies, the United States District Court for the Southern District of New York observed that it was "unaware of any court that has held the value of this collected information constitutes damage to consumers or unjust enrichment to collectors."  *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d at 525.  The court found that it would be a "dubious assumption" to consider "the value of: (1) the opportunity to present plaintiffs with advertising; and (2) the demographic information [the defendant] has collected."  *Id.*  The court reasoned that the "value" of the plaintiffs' time and attention to advertisements should not be treated any differently than other websites or mediums in which advertisements are presented, and it found further that "although demographic information [collected by cookies] is valued highly ... the value of its collection has never been considered a economic loss to the subject."  *Id.*

Similarly, in dismissing a claim for breach of a privacy policy, the United States District Court for the Eastern District of New York held that personal information collected from individual users and admittedly provided to a third party in violation of a privacy policy did not have "any compensable value in the economy at large:"

> Plaintiffs may well have expected that in return for providing their personal information to JetBlue and paying the purchase price, they would obtain a ticket for air travel and the promise that their personal information would be safeguarded consistent

AMAZON'S MOTION TO DISMISS
Case No. C11-00366-RSL

28

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    with the terms of the privacy policy. They had no reason to expect that they would be
2    compensated for the "value" of their personal information. In addition, there is
     absolutely no support for the proposition that the personal information of an individual
3    JetBlue passenger had any value for which that passenger could have expected to be
     compensated.

4    *In re JetBlue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d at 327.

5           As these cases illustrate, plaintiffs are not damaged every time their actions are
6    observed by another person, whether on the Internet or not.  This is true even if the person
7    investing the resources to make the observation hopes to profit from those efforts.  Plaintiffs'
8    actions on <amazon.com> have no inherent value in and of themselves.  Rather, plaintiffs'
9    actions on <amazon.com> have value only to Amazon, and only if and when Amazon
10   observes those actions and uses them for commercial purposes.  "[P]eople are free to profit
11   from the achievements of others except insofar as the law of property recognizes the right of
12   another person to exclude them from doing so."  REST. 3D OF RESTITUTION AND UNJUST
13   ENRICHMENT § 2 cmt. e (2000).  Plaintiffs' theory thus boils down to a complaint that
14   Amazon took from them a benefit which they never had and which Amazon itself created, a
15   formulation that turns the theory of unjust enrichment on its head.

16   **IV.    CONCLUSION**

17          Amazon respectfully requests that the Court dismiss plaintiffs' complaint for failure to
18   state a claim and for failure to allege injury-in-fact, and that the dismissal be done with
19   prejudice because amendment would be futile.

20
            DATED this 13th day of May, 2011.
21

22                                          K&L GATES LLP

23                                          s/Daniel H. Royalty
                                            By _____
24                                              David A. Bateman, WSBA # 14262
                                                Daniel H. Royalty, WSBA # 31504
25                                              Samuel R. Castic, WSBA # 39301
                                                Andrew C. Glass, admitted *pro hac vice*
26                                          Attorneys for Defendant
                                            Amazon.com, Inc.

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022