1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NICOLE DEL VECCHIO, ARIANA DEL VECCHIO, TYLER ZANDERS, KAYE HORINEK, and ROBERT NICHOLS individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC.,<br><br>Defendant. | No. C11-00366-RSL<br><br>AMAZON.COM, INC.'S MOTION TO DISMISS CONSOLIDATED AMENDED SUPPLEMENTAL COMPLAINT PURSUANT TO RULE 12(b)(6) AND RULE 12(b)(1)<br><br>Note on Motion Calendar: August 19, 2011<br><br>Oral Argument Requested |

AMAZON'S MOTION TO DISMISS
CONSOLIDATED AMENDED
SUPPLEMENTAL COMPLAINT
Case No. C11-00366-RSL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION AND RELIEF REQUESTED ........................................................... 1

II.    SUMMARY OF ALLEGATIONS ................................................................................. 2

    A.     The Parties ....................................................................................................... 2

    B.     Amazon's Alleged Wrongs ............................................................................. 2

        1.     Platform for Privacy Preferences Compact Policy ............................... 3

        2.     Local Shared Objects ............................................................................ 3

        3.     Disclosure of Personal Information ....................................................... 4

    C.     Alleged Harm to Users .................................................................................... 4

        1.     Diminished Value of Information .......................................................... 4

        2.     Diminished Value of Computer Assets .................................................. 6

III.   ARGUMENT ............................................................................................................... 6

    A.     Plaintiffs' Unsupported Conjecture, Implausible Conclusions, and
        Formulaic Recitations Should Be Disregarded ............................................... 6

    B.     The CASC Should Be Dismissed for Failure to Allege Injury-in-Fact ............. 9

    C.     The CASC Should Be Dismissed for Failure to State a Claim ........................ 10

        1.     Plaintiffs Do Not Plausibly Allege a CFAA Claim .............................. 11

                a.     Plaintiffs Do Not Allege $5,000 in "Loss" ............................... 12

                      i.     Plaintiffs allege no investigative or remedial
                      costs .............................................................................. 13

                      ii.     Plaintiffs allege no costs incurred due to
                      interruption of service ................................................... 13

                      iii.     Plaintiffs do not allege $5,000 in costs ......................... 15

                b.     Plaintiffs Authorized Amazon to Place Cookies on Their
                  Computers................................................................................. 18

AMAZON'S MOTION TO DISMISS
CONSOLIDATED AMENDED
SUPPLEMENTAL COMPLAINT
Case No. C11-00366-RSL

i

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

2.   Plaintiffs Do Not Plausibly Allege Trespass to Chattels......................22

a.   Plaintiffs Allege No Harm Related to Chattels .......................22

b.   Plaintiffs Do Not Allege Lack of Consent ...............................25

3.   Plaintiffs Do Not Plausibly Allege a Violation of the
Washington CPA .....................................................................................25

a.   Plaintiffs Do Not Plausibly Allege an Unfair or
Deceptive Act or Practice ........................................................26

b.   Plaintiffs Do Not Plausibly Allege a Cognizable Injury
to Business or Property.............................................................27

i.   Any injuries relating to control of personal
information are not injuries to business or
property........................................................................27

ii.   Browser and computer failures to operate in
conformity with subjective expectations are not
an injury to business or property ................................28

4.   Plaintiffs Do Not Allege a Plausible Claim for Unjust
Enrichment .............................................................................................29

a.   Plaintiffs Conferred No Benefit on Amazon ...........................29

b.   There Is No Inequity in Amazon's Alleged Actions ...............31

D.   The CASC Should Be Dismissed with Prejudice ............................................31

IV.   CONCLUSION .......................................................................................................32

AMAZON'S MOTION TO DISMISS
CONSOLIDATED AMENDED
SUPPLEMENTAL COMPLAINT
Case No. C11-00366-RSL

ii

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

**TABLE OF AUTHORITIES**

**Page**

**FEDERAL CASES**

*Allen v. City of Beverly Hills*,
911 F.2d 367 (9th Cir. 1990) ................................................. 32

*Ashcroft v. Iqbal*,
556 U.S. ___, 129 S.Ct. 1937 (2009) ............................... 6, 7, 8, 21, 30

*AtPac, Inc. v. Aptitude Solutions, Inc.*,
730 F. Supp. 2d 1174 (E.D. Cal. 2010) ................................. 13

*Brotherson v. Prof'l Basketball Club, L.L.C.*,
604 F. Supp. 2d 1276 (W.D. Wash. 2009) ............................. 28

*Browne v. Avvo Inc.*,
525 F. Supp. 2d 1249 (W.D. Wash. 2007) ............................. 25

*Carnival Cruise Lines v. Shute*,
499 U.S. 585 (1991) .......................................................... 19

*Chance v. Avenue A, Inc.*,
165 F. Supp. 2d 1153 (W.D. Wash. 2001) ............................. 24

*Colony Cove Properties, LLC v. City of Carson*,
640 F.3d 948 (9th Cir. Mar. 28, 2011) ................................. 21

*Daniels-Hall v. Nat'l Educ. Ass'n.*,
629 F.3d 992 (9th Cir. 2010) ............................................ 18

*Dilorenzo v. Costco Wholesale Corp.*,
515 F. Supp. 2d 1187 (W.D. Wash. 2007) ............................. 29

*Doyle v. Taylor*,
No. CV-09-158, 2010 WL 2163521 (E.D. Wash. May 24, 2010) ......... 12

*EF Cultural Travel BV v. Zefer Corp.*,
318 F.3d 58 (1st Cir. 2003) .............................................. 19

*Elektra Entm't Group, Inc. v. Santangelo*,
No. 06 Civ. 11520, 2008 WL 4452393 (S.D.N.Y. Oct. 1, 2008) .......... 24

*Fadaie v. Alaska Airlines, Inc.*,
293 F. Supp. 2d 1210 (W.D. Wash. 2003) ............................. 18

*Fidelity Fin. Corp. v. Fed. Home Loan Bank of San Francisco*,
792 F.2d 1432 (9th Cir. 1986) ........................................... 32

*Flynn v. Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor LLP*,
No. 3:09-CV-00422, 2010 WL 4339368 (D. Nev. Oct. 15, 2010) .......... 13

*Frees Inc. v. McMillian*,
No. 05-1979, 2007 WL 2264457 (W.D. La. Aug. 6, 2007) ............... 12

*Friends of the Earth, Inc., v. Laidlaw Envtl. Servs. (TOC), Inc.*,
528 U.S. 167 (2000) .......................................................... 9

*Hanson v. Hancock Cnty. Mem'l Hosp.*,
938 F. Supp. 1419 (N.D. Iowa 1996) .................................... 28

AMAZON'S MOTION TO DISMISS
CONSOLIDATED AMENDED
SUPPLEMENTAL COMPLAINT
Case No. C11-00366-RSL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

*Hodgers-Durgin v. de la Vina*,
  199 F.3d 1037 (9th Cir. 1999) ...................................................................... 16

*In re Apple & AT&T Antitrust Litigation*,
  596 F. Supp. 2d 1288 (N.D. Cal. 2008)................................................ 16, 22, 25

*In re Broadcast.com, Inc.*,
  No. 2:00CV18, 2001 WL 36050382 (E.D. Tex. Dec. 12, 2001)........................ 17

*In re Doubleclick Privacy Litig.*,
  154 F. Supp. 2d 497 (S.D.N.Y. 2001) ................................................ 24, 30, 31

*In re Jetblue Airways Corp. Privacy Litig.*,
  379 F. Supp. 2d 299 (E.D.N.Y. 2005)................................................ 22, 23, 30, 31

*Keithly v. Intelius*,
  No. C09–1485RSL, 2011 WL 538480 (W.D. Wash. Feb. 8, 2011) ................... 18

*La Mar v. H & B Novelty & Loan Co.*,
  489 F.2d 461 (9th Cir. 1973)........................................................................... 16

*LaCourt v. Specific Media, Inc.*,
  No. SACV 10–1256–GW, 2011 WL 1661532 (C.D. Cal. Apr. 28, 2011).......... 10

*Lambert v. Hartman*,
  517 F.3d 433 (6th Cir. 2008)........................................................................... 27

*Lasco Foods, Inc. v. Hall & Shaw Sales, Mktg. & Consulting, LLC*,
  600 F. Supp. 2d 1045 (E.D. Mo. 2009) ............................................................ 14

*Leadsinger, Inc. v. BMG Music Pub.*,
  512 F.3d 522 (9th Cir. 2008)........................................................................... 32

*Lewis v. Casey*,
  518 U.S. 343 (1996)................................................................................. 16, 17

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
  350 F.3d 1018 (9th Cir. 2003) ........................................................................... 8

*Lowden v. T-Mobile USA Inc.*,
  378 Fed. Appx. 693 (9th Cir. 2010) .................................................................. 26

*LVRC Holdings LLC v. Brekka*,
  581 F.3d 1127 (9th Cir. 2009) .......................................................................... 11

*Lyons v. Coxcom, Inc.*,
  No. 08-CV-02047-H, 2009 WL 347285 (S.D. Cal. Feb. 6, 2009) ..................... 16

*Meier v. Midwest Recreational Clearinghouse, LLC*,
  No. 2:10-cv-01026, 2010 WL 2738921 (E.D. Cal. July 12, 2010) ..................... 19

*Minnick v. Clearwire US, LLC*,
  683 F. Supp. 2d 1179 (W.D. Wash. 2010) ......................................................... 26

*Mktg. Tech. Solutions, Inc. v. Medizine LLC*,
  No. 09 Civ. 8122, 2010 WL 2034404 (S.D.N.Y. May 18, 2010) ....................... 15

*Mortensen v. Bresnan Communication, LLC*,
  No. CV 10-13-BLG-RFC, 2010 WL 5140454 (D. Mont. Dec. 13, 2010) ............ 18, 19

*Nexans Wires S.A. v. Sark-USA, Inc.*,
  319 F. Supp. 2d 468 (S.D.N.Y. 2004) ............................................................... 14

AMAZON'S MOTION TO DISMISS
CONSOLIDATED AMENDED
SUPPLEMENTAL COMPLAINT
Case No. C11-00366-RSL

iv

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

*Océ North America, Inc. v. MCS Services, Inc.*,
  No. WMN–10–CV–984, 2010 WL 3703277 (D. Md. Sept. 16, 2010) ............................... 13

*Register.com, Inc. v. Verio, Inc.*,
  356 F.3d 393 (2d Cir. 2004) ...................................................................................... 14

*Ruiz v. Gap, Inc.*,
  540 F. Supp. 2d 1121 (N.D. Cal. 2008) .................................................................... 28

*Smale v. Cellco P'ship*,
  547 F. Supp. 2d 1181 (W.D. Wash. 2008) ................................................................ 27

*SmileCare Dental Grp. v. Delta Dental Plan of California, Inc.*,
  88 F.3d 780 (9th Cir. 1996) ........................................................................................ 6

*Thurmond v. Compaq Computer Corp.*,
  171 F. Supp. 2d 667 (E.D. Tex. 2001) ...................................................................... 17

*Ticketmaster Corp. v. Tickets.com, Inc.*,
  No. 99CV7654, 2000 WL 1887522 (C.D. Cal. Aug. 10, 2000) ................................. 23

*United States v. Drew*,
  259 F.R.D. 449 (C.D. Cal. 2009) ............................................................................... 19

*Warren v. Fox Family Worldwide, Inc.*,
  328 F.3d 1136 (9th Cir. 2003) ................................................................................... 21

**STATE CASES**

*Ambach v. French*,
  167 Wn.2d 167 (2009) ................................................................................................ 25

*Cox v. O'Brien*,
  150 Wn. App. 24 (2009) ............................................................................................. 29

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
  105 Wn.2d 778 (1986) ......................................................................................... 25, 27

*Intel Corp. v. Hamidi*,
  71 P.3d 296 (Cal. 2003) .............................................................................................. 23

*Leingang v. Pierce County Med. Bureau, Inc.*,
  131 Wn.2d.133 (1997) ................................................................................................ 27

*Lynch v. Deaconess Med. Cen.*,
  113 Wn.2d 162 (1989) ................................................................................................ 31

*McCurdy v. Union Pac. R. Co.*,
  68 Wn.2d 457 (1966) .................................................................................................. 22

*Robinson v. Avis Rent A Car Sys., Inc.*,
  106 Wn. App. 104 (2001) ........................................................................................... 27

*Sexton v. Brown*,
  2008 WL 4616705 (Wn. App. 2008) .......................................................................... 22

AMAPON'S MOTION TO DISMISS
CONSOLIDATED AMENDED
SUPPLEMENTAL COMPLAINT
Case No. C11-00366-RSL

v

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

**FEDERAL LAWS**

18 U.S.C. § 1030 ................................................................................................ 11

18 U.S.C. § 1030(a)(4) ................................................................................. 11, 15

18 U.S.C. § 1030(a)(5)(A) .................................................................................. 11

18 U.S.C. § 1030(a)(5)(B) .................................................................................. 11

18 U.S.C. § 1030(a)(5)(C) .................................................................................. 11

18 U.S.C. § 1030(c)(4)(A)(i)(I) .......................................................................... 12

18 U.S.C. § 1030(e)(11) ..................................................................................... 12

18 U.S.C. § 1030(g) ........................................................................................... 11

28 U.S.C. § 1332(d) ........................................................................................... 17

28 U.S.C. § 1332(d)(6) ....................................................................................... 17

U.S. Const. art. III ................................................................................... 1, 10, 24

**STATE LAWS**

RCW § 19.86.010 ............................................................................................... 25

**FEDERAL RULES**

Fed. R. Civ. Proc. 12(b)(1) ..................................................................... 1, 10, 32

Fed. R. Civ. Proc. 12(b)(6) ................................................................. 1, 6, 18, 32

Fed. R. Civ. Proc. 8 ............................................................................................. 6

**OTHER AUTHORITIES**

Rest. 2d of Torts § 217 ....................................................................................... 22

Rest. 2d of Torts § 221 ........................................................................... 22, 23, 25

Rest. 3d of Restitution and Unjust Enrichment § 2 ........................................... 31

S. Rep. No. 109-14 ............................................................................................. 17

AMAZON'S MOTION TO DISMISS
CONSOLIDATED AMENDED
SUPPLEMENTAL COMPLAINT
Case No. C11-00366-RSL

vi

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

# I.    INTRODUCTION AND RELIEF REQUESTED

Plaintiffs assert attenuated theories of liability and harm, recognized by no court or law, based on Amazon's alleged practices in setting "cookies" on user's computers.  They seek to represent a class comprising every person who visited <amazon.com> using particular settings on certain versions of Internet Explorer.  Despite its extended argument, plaintiffs' latest complaint remains nearly bereft of allegations specific to plaintiffs.  Plaintiffs tell us that they pay for their computers, visited and purchased items from <amazon.com>, and saw several files ("Flash cookies" or "LSOs") on their computers that enabled Amazon to observe their interactions with <amazon.com>.  They theorize that this diminished the value of their "information" and of their computers, but do not allege any cognizable harm that they have suffered due to Amazon's practices.

Stripped of its unsupported conclusions, hypothetical discussions, and formulaic recitations, plaintiffs' complaint fails to make out a plausible injury-in-fact to plaintiffs, requiring its dismissal under Rule 12(b)(1) and Article III of the United States Constitution.  In addition, plaintiffs' failure to allege actionable harm and their unequivocal consent to Amazon's placement of cookies on their computers renders each of their claims insufficient under Rule 12(b)(6).  Plaintiffs' failure to plead a cognizable legal theory or facts plausibly supporting a recognized cause of action, after having filed three complaints and obtaining leave to file a fourth to "cure potential pleading deficiencies that Amazon identified in its motions to dismiss,"[1] indicates that further amendments would be futile.  Amazon respectfully requests that the Court dismiss plaintiffs' complaint with prejudice.

---

[1]     Mot. for Leave to File Consolidated Am. Compl. (Dkt. # 40) at 3.

AMAZON'S MOTION TO DISMISS
CONSOLIDATED AMENDED
SUPPLEMENTAL COMPLAINT
Case No. C11-00366-RSL

1

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

## II.    SUMMARY OF ALLEGATIONS

### A.    The Parties

Amazon.com, Inc. ("Amazon") is a Delaware corporation with principal place of business in Seattle.  Consolidated Amended Supplemented Complaint ("CASC") ¶ 14 (Dkt. #45).  Amazon owns and operates the website <amazon.com>, an online marketplace where consumers can purchase retail goods sold by Amazon and others.  *Id.* ¶ 15.  Plaintiffs allege that Amazon derives revenue from advertisements displayed on its website and to Amazon users visiting other websites.  *Id.* ¶ 16.  Plaintiffs base venue in this Court in part on Amazon's Conditions of Use for <amazon.com>.  *Id.* ¶ 22.

Plaintiffs, residents of New York, Connecticut, California, or Texas, allegedly visited and purchased products on <amazon.com>.  *Id.* ¶¶ 8-13.  They seek to represent a class that comprises:

> All individuals or entities in the United States who used the IE browser, versions 6, 7, and/or 8, with default or higher privacy settings to access the www.amazon.com website, and whose claims are not barred by the statute of limitations.

*Id.* ¶ 135.

### B.    Amazon's Alleged Wrongs

Plaintiffs claim that Amazon wrongfully took "information" from them, and did this in two ways: (1) by transmitting to plaintiffs' computers misleading Platform for Privacy Preferences ("P3P") Compact Policy code and placing persistent browser "cookies"[2] on their computers, *id.* ¶¶ 29-50; and (2) by transmitting to their computers Adobe Flash LSOs, or "Flash cookies," *id.* ¶¶ 51-74.  Plaintiffs also claim that Amazon shared their information with third parties for advertising purposes.  *Id.* ¶¶ 75-79.

---

[2]    Cookies are alphanumeric identifiers transferred from a website to a visitor's hard drive, through the visitor's web browser, which enable the website to recognize the visitor's browser.  *See* Decl. of Daniel H. Royalty in Support of Third Motion to Dismiss Ex. B at 1 (<amazon.com> Privacy Notice).

AMAZON'S MOTION TO DISMISS
CONSOLIDATED AMENDED
SUPPLEMENTAL COMPLAINT
Case No. C11-00366-RSL

2

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1          **1.**      **Platform for Privacy Preferences Compact Policy**

2          Plaintiffs allege that valid P3P Compact Policies are comprised of a series of tokens

3  transmitted from a website to a visitor's computer that represent "a standardized privacy

4  expression defined in the P3P specification." *Id.* ¶ 35.  Amazon is alleged to have "published

5  a P3P Compact Policy" that did not contain valid P3P tokens, and was "gibberish." *Id.* ¶¶ 38-

6  39.  According to plaintiffs, certain versions of Microsoft's Internet Explorer ("IE"), when

7  used at certain privacy settings, had a "design flaw in [its] processing of Compact Policies"

8  that caused it to treat Amazon's P3P Compact Policy as valid. *Id.* ¶ 41.  As a result, plaintiffs

9  allege, IE permitted Amazon to store persistent cookies on their computers that it would

10  otherwise have blocked. *Id.* ¶¶ 41, 45, 49.

11          Notably, the CASC offers few details about the computer usage of the five named

12  plaintiffs.  The complaint makes the vague assertion that plaintiffs "used IE versions 6, 7,

13  and/or 8" for visits to and purchases on <amazon.com>, and utilized "IE's default privacy

14  setting and/or higher privacy settings." *Id.* ¶ 13.  Plaintiffs do not allege which specific

15  version of IE they used or which specific privacy settings they employed.

16          **2.**      **Local Shared Objects**

17          Plaintiffs also allege that Amazon uses certain technology associated with the Adobe

18  Flash Player to store on site visitors' computers Local Shared Objects or "LSOs," which are

19  sometimes referred to as "Flash cookies." *Id.* ¶¶ 51-74.  LSOs are used by consumers' Adobe

20  Flash Player software for purposes such as storing volume control setting or retaining video

21  game scores. *Id.* ¶ 52.  LSOs can also be used as "a substitute for a browser cookie," *id.* ¶ 54,

22  and plaintiffs allege that Amazon used this technology to circumvent the privacy settings of

23  site visitors who set IE "privacy filters higher than the default setting" or "who set their IE

24  privacy settings at the default." *Id.* ¶¶ 58-61, 64.  Plaintiffs allege that Amazon's Privacy

25  Notice misleadingly describes its use of LSOs. *Id.* ¶¶ 85-89.  Each plaintiff alleges that they

26

AMAZON'S MOTION TO DISMISS
CONSOLIDATED AMENDED
SUPPLEMENTAL COMPLAINT
Case No. C11-00366-RSL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

observed on their computer LSOs that they attribute to Amazon and they assert that such LSOs were used "for collecting their personal information." *Id.* ¶¶ 66-71 (emphasis added).

### 3.    Disclosure of Personal Information

Finally, plaintiffs allege that Amazon shares its customers' personal information with third parties for their "independent use" without disclosing this fact to customers. *Id.* ¶ 76. This third-hand conjecture is apparently based, in turn, on the conjecture of plaintiff Ariana Del Vecchio, who received pet product advertisements via postal mail "shortly after" purchasing pet supplies from Amazon in 2008. *Id.* ¶ 77.  Based on nothing but this amorphous purported temporal relationship, Ms. Del Vecchio blithely presumes that "Amazon shared her personal information with third parties with whom Plaintiff had not done business." *Id.* ¶ 78.  The complaint does not identify the entities that sent the postal advertisements, the pet companies advertised therein, or the identity of the various pet companies with whom Ms. Del Vecchio admittedly had prior dealings.

## C.    Alleged Harm to Users

Plaintiffs speculate that they suffered two types of "economic loss" due to Amazon's placement of browser and Flash cookies on their computers: diminished value of information related to them and diminished value of their computer systems.

### 1.    Diminished Value of Information

Plaintiffs exhaust a number of adjectives in characterizing the information that Amazon "took" from them,[3] but a close reading of plaintiffs' complaint is needed to determine exactly what information plaintiffs claim that Amazon collected.  It was:

- information about which particular <amazon.com> web pages the plaintiffs viewed and the products they purchased on <amazon.com>, *id.* ¶ 117;

- information about "when [plaintiffs] were visiting other websites on which Amazon served online advertisements," *id.* ¶ 50;

---

[3] *See, e.g.,* CASC *passim* ("valuable"); *id. passim* ("personal"); *id.* ¶¶ 73, 80, 90, 97, 121 ("private"); *id.* ¶ 121 ("confidential"); *id.* ¶¶ 13, 73, 76, 90, 97, 117, 143 ("personally identifiable"); *id.* ¶ 118 ("unique, personal, and individual").

AMAZON'S MOTION TO DISMISS
CONSOLIDATED AMENDED
SUPPLEMENTAL COMPLAINT
Case No. C11-00366-RSL

4

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

- information provided to Amazon by plaintiffs in the course of registering for an <amazon.com> account or making purchases from the site. *Id.* ¶ 153.

Plaintiffs characterize this information as "an asset they exchange for valuable content and services provided by Websites." *Id.* ¶ 123.  They contend that Amazon's collection of their information imposes "opportunity costs" upon them. *Id.* ¶¶ 102-103, 123.  These opportunity costs arise from plaintiffs' premise that, by visiting <amazon.com>, plaintiffs forewent the opportunity to visit other websites and "promote [their] continued availability," or to "give[] and obtain[] the benefits of doing business" with other websites that conform with plaintiffs' expectations. *Id.* ¶¶ 102, 123, 126.

Apparently based on these purportedly lost opportunities, plaintiffs theorize that Amazon's collection of their information—which they unequivocally agreed to in accepting Amazon's Conditions of Use and Privacy Notice—somehow reduces its value.  They assert that Amazon's collection reduces the "scarcity" of their information and prevents plaintiffs "from realizing for themselves [its] full value." *Id.* ¶¶ 130-31.  Yet they provide no examples of how plaintiffs have failed to "realize" the full value of their information, such as which websites Amazon prevented plaintiffs from promoting the continued availability of and how this harmed plaintiffs.  They do not contend that they actually attempted to sell this information, or that they were involved in any type of transaction in which they were unable to obtain the "full value" of this supposedly valuable information.  Indeed, despite claiming that the information collected by Amazon has "discernable value to" plaintiffs, the only ways that they propose to discern the value of that information is by reference of that value to the "the advertising-related market" and to Amazon, and through unexplained "expert valuation." *Id*. ¶ 133.

AMAZON'S MOTION TO DISMISS
CONSOLIDATED AMENDED
SUPPLEMENTAL COMPLAINT
Case No. C11-00366-RSL

5

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

## 2.    Diminished Value of Computer Assets

Plaintiffs contend that Amazon's activities diminished in three ways the value of their Computer Assets, which plaintiffs define as "their computers, Internet connectivity through their ISPs, and software installed on their computers." *Id.* ¶ 105.  First, they claim that, through its LSOs, Amazon "acquired the use of" plaintiffs' Computer Assets without compensation.  *Id.* ¶ 109.  Second, they claim that LSOs necessarily cause websites to load more slowly on computers, *id.* ¶¶ 110-11, but do not allege that they actually experienced or were inconvenienced by this slow loading on their own computers.  Regardless, plaintiffs argue that this constitutes an "economic loss" to them.  *Id.* ¶ 110.  Third, plaintiffs complain that Amazon's practices caused their computers "to perform in ways Plaintiffs . . . do not want."  *Id.* ¶ 115.  Plaintiffs do not suggest any way by which any of these harms may be measured or even if they are capable of measurement.

## III.    ARGUMENT

### A.    Plaintiffs' Unsupported Conjecture, Implausible Conclusions, and Formulaic Recitations Should Be Disregarded.

A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S.Ct. 1937, 1949 (2009) (internal quotation marks omitted).  This means that the plaintiff has the burden of pleading enough "factual content [to] allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The court is not "bound to accept as true a legal conclusion couched as a factual allegation."  *Id.* at 1949-50.  "Labels and conclusions" and "formulaic recitation[s] of the elements of a cause of action" are insufficient to state a plausible claim for relief under Rule 8.  *Id.* at 1949.  Similarly, plaintiffs' complaint must state a "cognizable legal theory" to withstand dismissal under Rule 12(b)(6).  *SmileCare Dental Grp. v. Delta Dental Plan of California, Inc.*, 88 F.3d 780, 783 (9th Cir. 1996).

AMAZON'S MOTION TO DISMISS
CONSOLIDATED AMENDED
SUPPLEMENTAL COMPLAINT
Case No. C11-00366-RSL

6

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Despite its extensive argument, the CASC is nearly devoid of factual allegations related to plaintiffs, let alone allegations of the type that satisfy the *Iqbal* standard.  Stripping out plaintiffs' formulaic recitations, conclusory assertions, and speculation about Amazon's practices, the complaint alleges only five particularized facts related to the plaintiffs:

- Each plaintiff paid for their computers and Internet connectivity, CASC ¶ 110;

- Each plaintiff visited and purchased products on <amazon.com>, *id.* ¶ 13;

- Each plaintiff "observed" on his or her computer "LSOs that indicated they were set by the Amazon.com domain," *id.* ¶ 66-70;

- In 2008, Plaintiff Ariana Del Vecchio purchased pet-related products through <amazon.com> after having purchased such products from offline sources for some time, *id.* ¶ 77;

- Shortly after purchasing products through <amazon.com>, Ms. Del Vecchio received postal advertisements from unnamed pet products companies with whom she had not previously done business.  *Id.*

Upon these five allegations, plaintiffs build an elaborate complaint consisting almost entirely of unsupported conclusions and theoretical harms.

Plaintiffs make nonspecific claims, couched as factual allegations, that are transparently designed to map plaintiffs to the outer bounds of their broadly defined class, alleging that plaintiffs "used IE versions 6, 7, and/or 8" and "were protected by IE's default privacy setting and/or higher privacy settings."  *Id.* ¶ 13 (emphases added).  The complaint does not say which specific versions of IE each plaintiff used, which specific privacy settings each plaintiff selected, or when.  These nonspecific allegations should be disregarded.  *Iqbal*, 129 S.Ct. at 1949-50.

Even where a factual conclusion in the complaint is conceivably related to an actual fact alleged by plaintiffs, plaintiffs' consequent conjectural leaps are not plausibly supported.  The allegations regarding plaintiff Arian Del Vecchio's pet purchases no more than "possibly" support the far-reaching conjecture that Amazon disclosed her personal information.  *See* CASC ¶¶ 77-78.  The vague temporal proximity of her pet supply purchases

AMAZON'S MOTION TO DISMISS
CONSOLIDATED AMENDED
SUPPLEMENTAL COMPLAINT
Case No. C11-00366-RSL

7

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

on Amazon ("In or about 2008") to the postal advertisements she received ("shortly after"), does not offer more than "possible" support for her conclusion that Amazon (as opposed to any one of those other purveyors) disclosed her personal information to those advertisers—particularly in light of her admitted purchases from other pet supply purveyors.  This conclusory assertion should be stripped from the complaint, as her factual allegations do not cross the line from "possible" to "plausible" as required by *Iqbal* and *Twombly*.  *See Iqbal*, 129 S.Ct. at 1949 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (internal quotation marks omitted).  Plaintiffs' claim that Amazon discloses users' personal information should thus be disregarded.  *See id.*

In addition, although some of the five actual facts alleged by plaintiffs are particular to one plaintiff or the other, plaintiffs inappropriately cobble them together to support each of their independent claims.  All plaintiffs rely upon Ariana Del Vecchio's pet product advertisement allegations to support their own legal claims.  The Court should strip from each plaintiff's claims allegations relating only to another plaintiff, and dismiss any legal claims thereby left unsupported as to a particular plaintiff.  *See Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) (one party generally cannot assert another party's rights).  Thus, other plaintiffs may not rely upon Ariana Del Vecchio's postal advertisement allegation.  These same defects foreshadow serious trouble for commonality and plaintiffs' typicality.

As explained in more detail below, other conclusions by plaintiffs are not reasonably tethered to the factual allegations they do make.  Plaintiffs' factually unsupported conclusions, formulaic recitations, and nonspecific allegations should be disregarded because they do not cross the line from "possible" to "plausible" as required by *Iqbal*.  *See Iqbal*, 129 S. Ct. at 1949 ("Where a complaint pleads facts that are merely consistent with a defendant's

AMAZON'S MOTION TO DISMISS
CONSOLIDATED AMENDED
SUPPLEMENTAL COMPLAINT
Case No. C11-00366-RSL

8

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  liability, it stops short of the line between possibility and plausibility of entitlement to relief.")

2  (internal quotation marks omitted).

3  **B.    The CASC Should Be Dismissed for Failure to Allege Injury-in-Fact.**

4         The Complaint's factual gaps and conjectural leaps render it deficient under the

5  injury-in-fact requirement for standing under Article III of the United States Constitution.  *See*

6  *Friends of the Earth, Inc., v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).

7  Among other things, an injury-in-fact must be "concrete and particularized," "actual or

8  imminent, not conjectural or hypothetical," and "fairly traceable to the challenged action of

9  the defendant."  *Id.*  Plaintiffs' allegations fail on all counts.

10        None of the plaintiffs make out any concrete and particular injury.  Although plaintiffs

11 offer a number of theories about how users might subtly be harmed by Amazon's alleged

12 practices, they do not plausibly explain any real-world harm.  Plaintiffs claim that Amazon

13 took their "private information" and PII, CASC ¶ 73, but do not specify how this led to an

14 actual injury to them.  And although plaintiffs theorize that plaintiffs suffered unspecified

15 "financial harm" from Amazon's alleged practices, *id.* ¶ 132, they do not specify that harm or

16 allege how they have otherwise been harmed by those practices.  Although plaintiffs theorize

17 that Amazon's alleged practices caused them economic harm by "reducing the scarcity" of

18 their information, *id.* ¶ 131, and "depriving them of the opportunity to exchange their valuable

19 information for the content and services" of other websites, *id.*¶ 123, no plaintiff offers a

20 single instance how he or she has been harmed personally by Amazon's alleged practices.

21 Plaintiffs contend that LSOs slow the loading of web pages on computers, "constitut[ing] an

22 economic loss to Plaintiffs." *Id.*¶ 110.  But they do not allege that they actually experienced

23 any such purported harm, much less explain how loading web pages more slowly caused them

24 to lose money or impaired the value of their property.  Indeed, they do not even allege that

25 they noticed or were inconvenienced by it.

26

AMAZON'S MOTION TO DISMISS
CONSOLIDATED AMENDED
SUPPLEMENTAL COMPLAINT
Case No. C11-00366-RSL

9

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  Plaintiffs' complex and subtle theories about how they might have come to harm from

2  Amazon's alleged practices fit neatly within the "conjectural or hypothetical" bar of the

3  injury-in-fact requirement.  Plaintiffs write dozens of paragraphs and cite to several academic

4  studies to argue that Amazon's collection of their information causes them theoretical

5  economic harms, but fail to provide even a single example of how this purported harm has

6  affected them in the real world, with which Article III is concerned.

7  For the one real-world effect that plaintiffs allege—Plaintiff Ariana Del Vecchio's

8  receipt of postal mail advertisements—they fail to fairly trace it to Amazon's alleged

9  practices.  Ms. Del Vecchio contends that she received the advertisements because Amazon

10  disclosed her personal information to third parties, but, as explained below, that is a

11  conclusion not plausibly supported by her factual allegations.  *See infra* Part III.A.

12  Another court that has considered similar theories of harm as alleged in the CASC

13  concluded that plaintiffs lacked Article III standing.  The United States District Court for the

14  Central District of California, in dismissing a complaint challenging the use of LSOs filed by

15  plaintiffs' counsel, explained:

16  > While the Court would recognize the viability in the abstract of such concepts as
   > "opportunity costs," "value-for-value exchanges," "consumer choice," and other
17  > concepts . . . , what Plaintiffs really need to do is give some particularized example of
   > their application in this case.

18

19  *LaCourt v. Specific Media, Inc.*, No. SACV 10–1256–GW, 2011 WL 1661532, at *4 (C.D.

20  Cal. Apr. 28, 2011).  Because plaintiffs have failed to allege facts plausibly suggesting more

21  than theoretical injury, their Complaint should be dismissed for failure to allege an injury-in-

22  fact under Rule 12(b)(1) and under Article III of the United States Constitution.

23  **C.    The CASC Should Be Dismissed for Failure to State a Claim**.

24  Unsurprisingly, given the paucity of their factual allegations and the conclusory

25  assertions constructed from those allegations, plaintiffs fail to allege facts sufficient to support

26  any of their individual causes of action.  The deficiencies of plaintiffs' claims fall into two

AMAZON'S MOTION TO DISMISS
CONSOLIDATED AMENDED
SUPPLEMENTAL COMPLAINT
Case No. C11-00366-RSL

10

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

general categories: their inability to marshal facts in support of their attenuated theories of harm, and their unequivocal consent to the very Amazon actions about which they now complain.

### 1.    Plaintiffs Do Not Plausibly Allege a CFAA Claim.

Plaintiffs argue that Amazon's practices violate four subsections of the federal Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030.[4]  The CFAA is "primarily a criminal statute," enacted to target hackers and technology criminals.  *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1132, 1134 (9th Cir. 2009).  The law permits a private cause of action in the limited circumstances spelled out in 18 U.S.C. § 1030(g).  *Id.*  However, because the CFAA is a criminal law, its interpretation even in civil cases must follow the rule of lenity, lest the law be construed "in surprising and novel ways that impose unexpected burdens on [criminal] defendants."  *Id.* at 1134.  The rule of lenity requires the Court "to limit the reach of criminal statutes to the clear import of their text and construe any ambiguity against the government," or in this case, the plaintiffs.  *Id.* at 1135.

Even without the rule of lenity, plaintiffs' novel theories stretch the CFAA beyond what its language can bear.  In particular, plaintiffs fail to plausibly allege two elements

---

[4]    Those are:
- Section 1030(a)(4), which makes it a crime to "knowingly, and with intent to defraud," access a computer without authorization and, by way of that access, "further the intended fraud and obtain anything of value;"
- Sections 1030(a)(5)(B) and (a)(5)(C), which make it a crime to intentionally access a computer without authorization and, respectively, to recklessly cause damage or to cause damage and loss; and
- Section 1030(a)(5)(A), which criminalizes the knowing transmission of a program, information, code, or command, thereby causing "damage without authorization" to a computer.

Plaintiffs contend that Amazon's placement of persistent browser cookies and LSOs on their computers constitutes access and transmission and is the object of Amazon's fraud, and that Amazon's purportedly misleading Privacy Notice and invalid P3P Compact Policy render that access unauthorized.  CASC ¶¶ 152, 159-62.  They argue that transmission of Amazon's P3P compact code and LSOs from <amazon.com> to plaintiffs' computers caused damage to those computers by "circumvent[ing] their browser privacy controls."  *Id.* ¶ 154.

AMAZON'S MOTION TO DISMISS
CONSOLIDATED AMENDED
SUPPLEMENTAL COMPLAINT
Case No. C11-00366-RSL

11

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

required by each of their CFAA claims: that plaintiffs suffered $5,000 in specially defined

"loss;" and that Amazon lacked authorization to place cookies on plaintiffs' computers.

### a.    Plaintiffs Do Not Allege $5,000 in "Loss."

Plaintiffs fail to plausibly plead that they have incurred either the type or magnitude of

specially defined "loss" needed to maintain a private cause of action under the CFAA.

Among other things, a civil litigant must establish one of the five factors enumerated by 18

U.S.C. § 1030(c)(4)(A)(i)(I)-(V) to maintain a claim.  The only one of these factors touched

upon by plaintiffs' complaint is the first—"loss to 1 or more persons during any 1-year period

. . . aggregating at least $5,000 in value."  18 U.S.C. § 1030(c)(4)(A)(i)(I); *see* CASC ¶¶ 157,

165, 167.

"Loss" is specially defined under the CFAA as

> any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.

18 U.S.C. § 1030(e)(11).  Under this definition, two types of losses count towards the CFAA

$5,000 loss threshold: (1) costs to investigate or remedy an unauthorized intrusion; and (2)

costs incurred due to "interruption of service."  *See, e.g., Frees Inc. v. McMillian*, No. 05-

1979, 2007 WL 2264457, at *3 (W.D. La. Aug. 6, 2007) ("Courts have consistently

interpreted 'loss' . . . to mean a cost of investigating or remedying damage to a computer, or a

cost incurred because the computer's service was interrupted."); *see also Doyle v. Taylor,* No.

CV-09-158, 2010 WL 2163521, at *2 (E.D. Wash. May 24, 2010) ("[P]laintiffs must identify

impairment of or damage to the computer system that was accessed without authorization.").

Although the CASC recites the statutory element of "loss," nowhere do plaintiffs

allege any facts that plausibly suggest that they suffered <u>any</u> monetary harm, much less harm

that falls within either of the cognizable categories of "loss."  Similarly, plaintiffs fail to

plausibly assert any measurable cost that could possibly meet the statutory $5,000 threshold.

AMAZON'S MOTION TO DISMISS
CONSOLIDATED AMENDED
SUPPLEMENTAL COMPLAINT
Case No. C11-00366-RSL

12

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1   For these reasons, their CFAA claim should be dismissed. *See, e.g., Océ North America, Inc.*

2   *v. MCS Services, Inc.*, No. WMN–10–CV–984, 2010 WL 3703277, at *5 (D. Md. Sept. 16,

3   2010) ("Plaintiff's allegation that 'it has suffered impairment to the integrity or availability of

4   its data, programs, systems, and information resulting in losses or damages in excess of $5000

5   during a one year period' is merely a conclusory statement and thus does not sufficiently

6   plead the $5000 minimum damages requirement to bring a suit under the CFAA.").

7                          **i.      Plaintiffs allege no investigative or remedial costs.**

8           Plaintiffs do not allege that they incurred any costs to investigate or remedy Amazon's

9   purported access to their computers. *See, e.g., AtPac, Inc. v. Aptitude Solutions, Inc.*, 730 F.

10  Supp. 2d 1174, 1177 (E.D. Cal. 2010) (dismissing CFAA claim that "does not allege any facts

11  that indicate that [plaintiff] incurred costs to update its server security protocols or otherwise

12  analyze the circumstances of the unauthorized server access"); *Flynn v. Liner Grode Stein*

13  *Yankelevitz Sunshine Regenstreif & Taylor LLP*, No. 3:09-CV-00422, 2010 WL 4339368, at

14  *8 (D. Nev. Oct. 15, 2010) (dismissing CFAA claim that did not "allege any costs incurred by

15  responding to the hacking itself, conducting a damage assessment, restoring data, or other

16  consequential damages incurred because of an interruption in service").

17          Although plaintiffs generally allege that they found LSOs associated with Amazon on

18  their computers, they do not allege that they incurred any costs to investigate Amazon's access

19  or to remove those LSOs.  Indeed, any effort to remove cookies would be *de minimis* and not

20  susceptible to the quantification necessary to meet the $5,000 threshold, particularly given

21  plaintiffs' routine searches for and deletion of cookies, including LSOs. CASC ¶¶ 66-70.

22                          **ii.     Plaintiffs allege no costs incurred due to interruption of
                                      service.**

23
            Nor do plaintiffs allege any loss caused by an "interruption of service."  An
24
    "interruption of service" means that plaintiffs' computer is "down" or "inoperable"; resultant
25
    costs include those incurred "because the computer cannot function while or until repairs are
26

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

made," *Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468, 474, 477 (S.D.N.Y. 2004), *aff'd* 166 F.App'x 559 (2d Cir. 2006), or because defendants' conduct prevented plaintiffs from using the computer.  *See, e.g., Lasco Foods, Inc. v. Hall & Shaw Sales, Mktg. & Consulting, LLC*, 600 F. Supp. 2d 1045, 1052-53 (E.D. Mo. 2009) (interruption of service where defendants wrongfully retained plaintiffs' computers for weeks, physically preventing access).

Plaintiffs do not allege that Amazon's actions caused their computers to go "down" or rendered them "inoperable," *see Nexans Wires*, 319 F. Supp. 2d at 477, or affected them in any way that plausibly rises to an "interruption of service."  Plaintiffs' only specific allegation related to the physical operation of computers is that LSOs "require the transfer of larger files using more resource-intensive computer processes . . . , causing web pages to load more slowly than Web pages involving the transfer of cookie values."  CASC ¶ 110.  But plaintiffs do not allege that <u>they</u> experienced a slow loading of web pages due to Amazon's LSOs. Even if plaintiffs had been inconvenienced by slow-loading pages, such an incremental diminishment would not constitute an "interruption of service," particularly in light of the narrow interpretation of the term that the rule of lenity requires.  A slight diminishment in performance does not amount to an interruption of service.  *Cf. Register.com, Inc. v. Verio, Inc.,* 356 F.3d 393, 440 (2d Cir. 2004) (holding that "slight diminishment in capacity" could not meet $5,000 loss threshold).

Plaintiffs also opaquely claim that Amazon's actions caused their "browsers and computers to perform in ways Plaintiffs and members of the Class do not want," thus "diminishing the performance and value to Plaintiffs and other Class Members of their browsers and computers."  CASC ¶ 115.  Even supposing that these purported variances from plaintiffs' subjective expectations were injuries redressable under the CFAA, which they are not, they do not arise from an "interruption of service" and thus can not count towards the

AMAZON'S MOTION TO DISMISS
CONSOLIDATED AMENDED
SUPPLEMENTAL COMPLAINT
Case No. C11-00366-RSL

14

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    $5,000 jurisdictional threshold.  Simply put, plaintiffs do not plausibly plead any facts that

2    suggest they will be able to show that they suffered an "interruption of service."

3                    iii.    **Plaintiffs do not allege $5,000 in costs.**

4            Even if plaintiffs had alleged the type of loss that is cognizable under the CFAA, they

5    still could not show the magnitude of loss necessary to sustain their claims.  Plaintiffs do not

6    contend that they personally suffered $5,000 in loss—indeed, they do not allege the loss of a

7    single cent.  Rather, they allege that the unlawful access to "Plaintiffs and Class members'

8    computers . . . resulted in an aggregated loss to Plaintiffs and Class Members of at least

9    $5,000 within a one-year period."  CASC ¶¶ 157, 165, 167.  This general recitation of the

10   CFAA loss element fails for two reasons: plaintiffs do not support it with facts plausibly

11   suggesting <u>any</u> measurable costs, and plaintiffs may not borrow costs from persons not before

12   this Court.

13           To sustain a claim under the CFAA, a plaintiff must allege with particularity that his

14   or her "loss" exceeds $5,000.  *See, e.g., Mktg. Tech. Solutions, Inc. v. Medizine LLC*, No. 09

15   Civ. 8122, 2010 WL 2034404, *7 (S.D.N.Y. May 18, 2010) (dismissing CFAA claim because

16   "the complaint [fails to] allege with some particularity the "damage" and "loss" (as defined in

17   the CFAA) claimed to be involved, with, moreover, facts showing that the $5,000 threshold of

18   Section 1030(a)(4) is satisfied").  This plaintiffs do not do.  Plaintiffs' allegations that their

19   download of Amazon's LSOs diminished the performance of their computers can not count

20   towards the "loss" threshold because plaintiffs do not offer any facts from which <u>any</u>

21   measurable amount may be plausibly calculated.  *See Register.com,* 356 F.3d at 440

22   (reversing district court's injunction because plaintiff failed to show $5,000 in "actual"

23   losses).

24           In addition, plaintiffs' allegations of class wide injury can not be used to support

25   <u>plaintiffs'</u> individual claims against Amazon.  This motion tests plaintiffs' claims, not the

26   claims of absent class members, and each plaintiff must establish that he or she has an

AMAZON'S MOTION TO DISMISS                          15
CONSOLIDATED AMENDED
SUPPLEMENTAL COMPLAINT
Case No. C11-00366-RSL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1   individual claim against Amazon to proceed with this action.  *See, e.g., La Mar v. H & B*

2   *Novelty & Loan Co.*, 489 F.2d 461, 462 (9th Cir. 1973) (plaintiff may not represent class in

3   action against defendant as to whom plaintiff has no cause of action).

4          District courts within the Ninth Circuit disagree whether CFAA class action plaintiffs

5   may aggregate "loss" across absent class members.  *Compare Lyons v. Coxcom, Inc.*, No. 08-

6   CV-02047-H, 2009 WL 347285, *8 (S.D. Cal. Feb. 6, 2009) (rejecting aggregation)[5] *and*

7   *Specific Media,*, 2011 WL 1661532, at *6 n.4 (expressing doubt about aggregation) *with Toys*

8   *R Us, Inc., Privacy Litig.*, No. 00-CV-2746, 2001 WL 34517252 (N.D. Cal. Oct. 9, 2001)

9   (permitting aggregation) *and In re Apple & AT&TM Antitrust Litigation*, 596 F. Supp. 2d

10  1288, 1308 (N.D. Cal. 2008) (same, relying on *Toys R Us, Inc., Privacy Litig.).*  Those

11  decisions that permit aggregation of losses from absent class members are in considerable

12  tension with the teachings of the Supreme Court and the Ninth Circuit about standing in class

13  action cases.  *See Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("[E]ven named plaintiffs who

14  represent a class must allege and show that they personally have been injured, not that injury

15  has been suffered by other, unidentified members of the class to which they belong and which

16  they purport to represent.") (internal quotation marks omitted); *La Mar,* 489 F.2d at 462, 468-

17  70 (plaintiff may not represent class in action against defendant as to whom plaintiff has no

18  cause of action); *cf. Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999)

19  ("Unless the named plaintiffs are themselves entitled to seek injunctive relief, they may not

20  represent a class seeking that relief.  Any injury unnamed members of this proposed class may

21  have suffered is simply irrelevant to the question whether the named plaintiffs are entitled to

22  the injunctive relief they seek.").[6]

23

---

24  [5]     The court later vacated this order, after plaintiff had refiled an amended complaint that
    did not include a CFAA claim, and after the Supreme Court had issued its opinion in *Iqbal*.
25  *Lyons v. Coxcom, Inc.*, 718 F. Supp. 2d 1232, 1234-35, 1240 (S.D. Cal. 2009).

26  [6]     Indeed, relying on *Casey* and similar circuit-level class action jurisprudence, district
    courts within the Fifth Circuit have uniformly rejected attempts to aggregate CFAA "loss"
    across a putative class.  *Thurmond v. Compaq Computer Corp.*, 171 F. Supp. 2d 667, 680

AMAZON'S MOTION TO DISMISS
CONSOLIDATED AMENDED
SUPPLEMENTAL COMPLAINT
Case No. C11-00366-RSL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1       Moreover, permitting aggregation of "losses" from absent class members would be

2  inimical to Congress's Article III control over jurisdiction of the lower courts.  Congress has

3  shown that it is capable of drafting and adjusting jurisdictional thresholds without judicial

4  assistance.  For example, Congress recognized that many class actions may not satisfy the

5  $75,000 amount-in-controversy requirement for federal diversity jurisdiction because only

6  class representatives' injuries counted towards the $75,000 threshold; that is, the amount-in-

7  controversy requirement could not be satisfied by aggregation across the class.  S. REP. NO.

8  109-14, at 10-11.  The Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), remedies

9  this gap by permitting class representatives to aggregate damages across the putative class in

10  order to reach the CAFA threshold of $5 million.  28 U.S.C. § 1332(d)(6) ("In any class

11  action, the claims of the individual class members shall be aggregated to determine whether

12  the matter in controversy exceeds the sum or value of $5,000,000 ... ."); *see generally* S. REP.

13  NO. 109-14, at 28, 42.  Indeed, plaintiffs plead CAFA as one basis for the Court's subject

14  matter jurisdiction.  CASC ¶ 17.  If Congress wished to permit aggregation across absent class

15  members to reach the $5,000 requirement under the CFAA, it could have explicitly provided

16  for putative class-wide aggregation, as it did for CAFA.  It did not.

17       The Court, however, does not need to reach the questions of whether aggregation is

18  permitted across unnamed members of the putative class or whether plaintiffs' conclusory

19  assertions plausibly allege $5,000 in costs.  Because even if plaintiffs were permitted to

20  borrow injury from persons not before this Court, at bottom their complaint still fails to allege

21  any cognizable "loss" whatsoever.  Plaintiffs' failure is a matter of category, not of degree.

22

23  (E.D. Tex. 2001) (because plaintiffs must establish the $5,000 loss threshold individually,
"the Court will not consider any purported damage to unnamed class members in its summary

24  judgment determination") (citing *Casey*, 518 U.S. at 357); *In re Broadcast.com, Inc.*, No.
2:00CV18, 2001 WL 36050382, *4 (E.D. Tex. Dec. 12, 2001) ("[T]o the extent the plaintiff

25  argues that aggregation of all of the class members' losses is proper to meet the statutory
amount in controversy, that argument is foreclosed by the class action jurisprudence in this

26  circuit—the court must view this action as an individual claim at this point in the
proceedings.").

AMAZON'S MOTION TO DISMISS
CONSOLIDATED AMENDED
SUPPLEMENTAL COMPLAINT
Case No. C11-00366-RSL

17

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1   They allege no "loss" that either they or users not before this court have suffered, much less

2   loss that is quantifiable.  As plaintiffs claim they are typical of the putative class, CASC

3   ¶ 138, their inability to allege any plausible "loss" on their own behalf means that aggregation

4   with others like them will not move them across the threshold, whether that threshold is $5 or

5   $5,000.

6           **b.      Plaintiffs Authorized Amazon to Place Cookies on Their**
                       **Computers**.

7

8           Plaintiffs' CFAA claim also fails because plaintiffs can not demonstrate that

9   Amazon's placement of cookies on users' computers was done without authorization.  The

10  Amazon Conditions of Use and Privacy Notice unequivocally explain to users how Amazon

11  uses cookies, what they are, and why they are necessary for the proper functioning of the

12  <amazon.com> website.  *See* Decl. of Daniel H. Royalty in Support of Third Motion to

13  Dismiss Ex. A (Conditions of Use), B (Privacy Notice).  These documents—which plaintiffs

14  rely upon in their complaint—establish visitors' consent to Amazon's placement of cookies

15  and LSOs on their computers.[7]

16          Amazon's Conditions of Use and Privacy Notice govern users' visits to

17  <amazon.com>.  Plaintiffs admit as much, basing both their venue allegations and theories of

18  ─────────────────────────────────────

19  [7]      The Ninth Circuit recognizes that when evaluating a motion to dismiss, the district
    court can consider documents on which a complaint relies.  *Daniels-Hall v. Nat'l Educ.*
20  *Ass'n.*, 629 F.3d 992, 998 (9th Cir. 2010) (considering contents of prospectus and information
    posted on particular websites where plaintiffs "quoted this prospectus in their Complaint and
    provided the web address where the prospectus could be found online. Plaintiffs thereby
21  incorporated the prospectus into the Complaint by reference.").  The court may "treat such a
    document as 'part of the complaint, and thus may assume that its contents are true for
22  purposes of a motion to dismiss under Rule 12(b)(6).'"  *Id.*; *see also Fadaie v. Alaska*
    *Airlines, Inc.,* 293 F. Supp. 2d 1210, 1214 (W.D. Wash. 2003) (Lasnik, J.).  Plaintiffs
23  reference and rely upon the contents of two documents that this Court should consider, in
    their entirety and full context, when evaluating this Motion: Amazon's Conditions of Use, and
24  Amazon's Privacy Notice.  CASC ¶¶ 22, 75, 85-97; *see Keithly v. Intelius*, No. C09–
    1485RSL, 2011 WL 538480, at *2 (W.D. Wash. Feb. 8, 2011) (Lasnik, J.) (incorporating by
25  reference, for purposes of motion to dismiss, website terms of use referenced in complaint);
    *Mortensen v. Bresnan Communication, LLC*, No. CV 10-13-BLG-RFC, 2010 WL 5140454
26  (D. Mont. Dec. 13, 2010) (considering, for purposes of motion to dismiss consumer class
    action, online privacy notice).

AMAZON'S MOTION TO DISMISS                          18
CONSOLIDATED AMENDED
SUPPLEMENTAL COMPLAINT
Case No. C11-00366-RSL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1 relief upon these policies.  CASC ¶¶ 22, 75, 85-97.  Indeed, most courts to consider the issue

2 have held that, for purposes of the CFAA, authorization to use a website is controlled by a

3 website's terms of use.  *See, e.g., EF Cultural Travel BV v. Zefer Corp.*, 318 F.3d 58, 62 (1st

4 Cir. 2003) ("A lack of authorization could be established by an explicit statement on the

5 website restricting access."); *see generally United States v. Drew*, 259 F.R.D. 449, 461 (C.D.

6 Cal. 2009) ("[T]he vast majority of the courts (that have considered the issue) have held that a

7 website's terms of service/use can define what is (and/or is not) authorized access vis-a-vis

8 that website.").

9          More particularly, the United States District Court for the District of Montana recently

10 considered, on a motion to dismiss, the application of an online privacy notice to a putative

11 privacy class action in *Mortensen v. Bresnan Communication, LLC*, No. CV 10-13-BLG-

12 RFC, 2010 WL 5140454 (D. Mont. Dec. 13, 2010).  The plaintiffs claimed that, by diverting

13 and examining their Internet traffic for purposes of targeting advertisements, their ISPs

14 intercepted electronic communications in violation of the federal Wiretap Act.  *Id.* at *2.

15 However, the court examined the defendants' online subscriber agreement and privacy notice

16 and held that they disclosed that defendants would undertake the very activity about which

17 defendants complained.  *Id.* at *3 to *5.  The court thus dismissed the plaintiffs' Wiretap Act

18 claim because the plaintiffs had consented.  *Id.* at *5; *cf. Meier v. Midwest Recreational

19 Clearinghouse, LLC*, No. 2:10-cv-01026, 2010 WL 2738921, at *3 (E.D. Cal. July 12, 2010)

20 (holding that website visitor was bound to forum selection clause contained in terms of use;

21 citing *Carnival Cruise Lines v. Shute*, 499 U.S. 585 (1991)).

22          Amazon's policies explain that it will place both browser cookies and Flash cookies

23 on users' computers, that these cookies will be used to track users' activity on

24 <amazon.com>, and that Amazon will use the information it collects to enable certain

25 features, to target advertisements, and to personalize <amazon.com>, among other things.

26

AMAZON'S MOTION TO DISMISS
CONSOLIDATED AMENDED
SUPPLEMENTAL COMPLAINT
Case No. C11-00366-RSL

19

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

In the first section of the Privacy Notice, prominently titled "What Personal

Information About Customers Does Amazon.com Gather?," the Privacy Notice explains:

> Automatic Information: We receive and store certain types of information whenever you interact with us. For example, like many Web sites, **we use "cookies," and we obtain certain types of information when your Web browser accesses Amazon.com or advertisements and other content served by or on behalf of Amazon.com on other Web sites**. Click here to see examples of the information we receive.

Royalty Decl. Ex. B at 1 (emphasis added).  In the next section, prominently titled "What

About Cookies," Amazon explains:

> **Cookies are alphanumeric identifiers that we transfer to your computer's hard drive through your Web browser to enable our systems to recognize your browser and to provide features such as 1-Click purchasing, Recommended for You, personalized advertisements on other Web sites** (e.g., Amazon Associates with content served by Amazon.com and Web sites using Checkout by Amazon payment service), **and storage of items in your Shopping Cart between visits.**

*Id.*, Ex. B at 1-2 (emphasis added).  This section also includes the explanation cited in

Paragraph 85 of plaintiffs' CASC.

Amazon also provides an extensive listing of the information it collects and how it

uses that information in the Privacy Notice section titled "Examples of Information

Collected," which is also hyperlinked from various places within the Privacy Notice.  One

part of this section, titled "Automatic Information," explains:

> **Examples of the information we collect and analyze include** the Internet protocol (IP) address used to connect your computer to the Internet; login; e-mail address; password; computer and connection information such as browser type, version, and time zone setting, browser plug-in types and versions, operating system, and platform; **purchase history**, which we sometimes aggregate with similar information from other customers to create features such as Purchase Circles and Top Sellers**; the full Uniform Resource Locator (URL) clickstream to, through, and from our Web site, including date and time; cookie number; products you viewed or searched for**; and the phone number you used to call our 800 number. **We may also use browser data such as cookies, Flash cookies (also known as Flash Local Shared Objects), or similar data on certain parts of our Web site for fraud prevention and other purposes.** During some visits we may use software tools such as JavaScript to measure and collect session information, including page response times, download errors, length of visits to certain pages, page interaction information (such as scrolling, clicks, and mouse-overs), and methods used to browse away from the page.

*Id.*, Ex. B at 4-5 (emphases added).

AMAZON'S MOTION TO DISMISS
CONSOLIDATED AMENDED
SUPPLEMENTAL COMPLAINT
Case No. C11-00366-RSL

20

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  Plaintiffs complain that these notices do not explain the "manner" by which Amazon

2  places cookies and LSOs on users' computers, which they contend vitiates user consent.

3  CASC ¶¶ 92-98.  But the source of duty identified by plaintiffs—the CFAA—imposes no

4  obligation upon Amazon to do so; plaintiffs' consent to Amazon's placement of browser and

5  Flash cookies authorizes Amazon's access to place browser and Flash cookies.  Plaintiffs also

6  claim that they did not expect Amazon to use LSOs or place persistent cookies on their

7  computers, *e.g., id.* ¶ 91, and that they expected IE to block any cookies from Amazon despite

8  any consent.  *Id.* ¶ 159.  Whatever plaintiffs' expectations, however they were formed, they

9  are subsumed by the express consent that they provided to Amazon under the Conditions of

10  Use and Privacy Notice.

11  Finally, plaintiffs argue that Amazon's Conditions of Use and Privacy Notice do not

12  control because "merely visiting" <amazon.com> would result in the placement of cookies

13  and LSOs on their computers before plaintiffs had the chance to use the website or read the

14  policies controlling their access to <amazon.com>.  *Id.* ¶ 91.  However, the activities that

15  plaintiffs contend caused them harm—Amazon's collection of transactional information and

16  observation of plaintiffs' browsing activities on <amazon.com>—arise not during initial

17  placement of cookies, but as a result of plaintiffs' continued use of <amazon.com>.

18  Accordingly, plaintiffs cannot maintain their claim that Amazon's placement of

19  cookies on users' computers was done "without authorization, or exceed[ing] authorized

20  access," and the Court need not credit any conclusory statements plaintiffs make in

21  contradiction of the documents which plaintiffs themselves incorporate into the CASC.  *See*

22  *Colony Cove Properties, LLC v. City of Carson*, 640 F.3d 948, 955 (9th Cir. 2011) (citing

23  *Iqbal*, 129 S.Ct. at 1950); *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th

24  Cir. 2003) (holding that "we are not required to accept as true conclusory allegations which

25  are contradicted by documents referred to in the complaint").  By visiting and using

26

AMAZON'S MOTION TO DISMISS
CONSOLIDATED AMENDED
SUPPLEMENTAL COMPLAINT
Case No. C11-00366-RSL

21

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  <amazon.com>, plaintiffs unequivocally consented to Amazon's placement of cookies and

2  LSOs on their computers through the Conditions of Use and Privacy Notice.

3        **2.**      **Plaintiffs Do Not Plausibly Allege Trespass to Chattels.**

4          **a.**      **Plaintiffs Allege No Harm Related to Chattels.**

5        In states that have embraced trespass to chattels,[8] the tort requires that plaintiffs show

6  injury in one of two ways: (1) harm to the condition, quality, or value of the chattel itself, or

7  (2) deprivation of use of the chattel for a substantial period of time.  *See, e.g., Register.com*,

8  356 F.3d at 404 ("A trespass to a chattel may be committed by intentionally . . . using or

9  intermeddling with a chattel in the possession of another, where the chattel is impaired as to

10  its condition, quality, or value.") (citations omitted); *In re Jetblue Airways Corp. Privacy*

11  *Litig.*, 379 F. Supp. 2d 299, 329 (E.D.N.Y. 2005) ("Under New York law, liability only

12  obtains on this cause of action if a defendant causes harm to "the [owner's] materially

13  valuable interest in the physical condition, quality, or value of the chattel, or if the [owner] is

14  deprived of the use of the chattel for a substantial time."; harm to "privacy interests" not

15  sufficient to support claim).

16        Plaintiffs do not allege that Amazon's actions prevented them from using their

17  computers for <u>any</u> amount of time, much less the substantial period of deprivation required to

18  support a trespass to chattels claim.  *See, e.g., In re Apple & AT&TM Antitrust Litig.*, No. C

19  07-05152, 2010 WL 3521965, *6 (N.D. Cal. July 8, 2010) (holding that "loss of use of a

20  personal phone for a few days" did not meet injury requirement for trespass to chattels under

21  California law); *see generally* REST. 2D OF TORTS § 218 & cmt. i (1965) ("A mere momentary

---

22

23      [8]     No published Washington case recognizes the tort of trespass to chattels.  One unpublished case relied upon the Restatement (Second) of Torts § 217 to define the action as

24  "intentional interference with a party's personal property without justification that deprives the owner of possession or use."  *Sexton v. Brown*, 2008 WL 4616705, *5 (Wn. App. 2008).

25  An older Washington Supreme Court decision explored the claim of negligent damage to property, finding that the appropriate measurement of damages is based on the diminishment

26  in value of the property and may include compensation for loss of property while repairs are made.  *McCurdy v. Union Pac. R. Co.*, 68 Wn.2d.457, 467-70 (1966).

AMAZON'S MOTION TO DISMISS
CONSOLIDATED AMENDED
SUPPLEMENTAL COMPLAINT
Case No. C11-00366-RSL

        22

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1   or theoretical deprivation of use is not sufficient unless there is a dispossession . . . .").

2   Plaintiffs' conclusory assertion that Amazon "dispossessed" them of their browsers and

3   computers, CASC ¶ 183, is not supported by any factual allegation.  A person is

4   "dispossessed" of a chattel when she is physically prevented from accessing it or it is

5   destroyed, or if another person "assumes complete control and dominion over the chattel."

6   *See generally* REST. 2D OF TORTS § 221 & cmt. c (1965).  Nothing in the CASC plausibly

7   supports such an inference.

8          Nor do plaintiffs plausibly allege that Amazon's actions impaired the condition,

9   quality, or value of their computers.  Plaintiffs offer two attenuated theories on this element,

10  neither of which is cognizable under law.

11         First, plaintiffs appear to argue that Amazon's placement of persistent cookies on their

12  computers affected their "legally protected economic interest in their personal information"—

13  *i.e.*, the pages they viewed on <amazon.com>.  Plaintiffs do not, of course, identify any legal

14  source of protection for any such interest.  *Cf. JetBlue*, 379 F. Supp. 2d at 328 (expressing

15  "serious doubts" about plaintiffs' legally unsupported argument that they retained a

16  "possessory interest" in personal information provided to defendant).  In any event, any such

17  interest would be a privacy interest, not redressable through a claim for trespass to chattels.

18  *See, e.g., id.* at 328-29.

19         Second, plaintiffs vaguely claim that Amazon's LSOs caused web pages to load more

20  slowly on their computers, thus affecting their performance.  CASC ¶¶ 110, 186.  This

21  unquantifiable inconvenience does not constitute an impairment, and is far below even those

22  levels of "intermeddling" that have been <u>rejected</u> by courts.  *See Intel Corp. v. Hamidi,* 71

23  P.3d 296, 301 (Cal. 2003) (granting summary judgment against trespass to chattels claim

24  where plaintiff's allegations failed to demonstrate impairment from hundreds of thousands of

25  emails sent to plaintiff's computers); *Ticketmaster Corp. v. Tickets.com, Inc.*, No. 99CV7654,

26  2000 WL 1887522, at *4 (C.D. Cal. Aug. 10, 2000) (denying preliminary injunction where

AMAZON'S MOTION TO DISMISS
CONSOLIDATED AMENDED
SUPPLEMENTAL COMPLAINT
Case No. C11-00366-RSL

23

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    defendant's automated search robots used "very small" percentage of plaintiff's server space

2    and plaintiff made "no showing that the use interferes to any extent with [its] regular

3    business").  It is implausible to assume that Amazon's transmission of a P3P policy and

4    placement of cookies on a user's computer degraded or devalued that computer in any manner

5    that is not *de minimis*.

6         In the recent *Specific Media* case, the United States District Court for the Central

7    District of California dismissed all claims for failure to allege Article III injury-in-fact.

8    *Specific Media*, 2011 WL 1661532, at *3 to *6.  Regarding plaintiffs' trespass to chattels

9    claim in that case, the court reasoned that:

10        Plaintiffs have not alleged that the functioning of their computers was impaired
          (except in the trivial sene [sic] of being unable to permanently delete cookies) or
11        would be imminently impaired to the degree that would enable them to plead the
          elements of the tort.

12   *Id.* at *7.  The United States District Court for the Southern District of New York reached a

13   similar conclusion in a class action alleging harm from unauthorized installation of cookies,

14   holding that plaintiffs alleged no "damage whatsoever to plaintiffs' computers, systems, or

15   data that could require economic remedy."  *In re Doubleclick Privacy Litig.*, 154 F. Supp. 2d

16   497, 525 (S.D.N.Y. 2001) (dismissing CFAA claim).  As Judge Coughenour reasoned in

17   2001, "the transmission of an internet cookie is virtually without economic harm."  *Chance v.

18   Avenue A, Inc.*, 165 F. Supp. 2d 1153, 1159 (W.D. Wash. 2001) (granting defendant's

19   summary judgment motion on CFAA claim).

20        The same reasoning holds here.  Plaintiffs' speculative and vague assertions are

21   incapable of supporting their claim for trespass to chattels.  *See Elektra Entm't Group, Inc. v.

22   Santangelo*, No. 06 Civ. 11520, 2008 WL 4452393, *7 (S.D.N.Y. Oct. 1, 2008) (dismissing

23   trespass to chattels claim where there were no allegations of "harm to the condition, quality,

24   or value of the computer" or that plaintiffs "were deprived of the use of the computer for a

25   substantial period of time").  Their complaints amount only to an "interest of a possessor of a

26

AMAZON'S MOTION TO DISMISS
CONSOLIDATED AMENDED
SUPPLEMENTAL COMPLAINT
Case No. C11-00366-RSL

24

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1   chattel in its inviolability," which is not protected under the law.  REST. 2D OF TORTS § 218 &

2   cmt. e (1965).  Plaintiffs have simply not pleaded any cognizable harm to their computers

3   caused by Amazon's actions.

### b.       Plaintiffs Do Not Allege Lack of Consent.

5       Plaintiffs also fail to allege plausible grounds to find that users did not consent to

6   Amazon's activities.  Lack of consent is an element of trespass to chattels.  *See, e.g., In re*

7   *Apple & AT&TM Antitrust Litig.*, 596 F. Supp. 2d 1288, 1307 (N.D. Cal. 2008).  As discussed

8   above, *supra* Part III.C.1.b, Amazon's Conditions of Use and Privacy Notice unambiguously

9   explain what cookies would be placed upon users' computers.  Plaintiffs' unequivocal consent

10  to Amazon's placement of these cookies vitiates plaintiffs' trespass to chattels claim.  *See id.*

11  at 1307 (holding that "[w]hether Plaintiffs' trespass claim can be permitted to proceed,

12  however, depends on whether Plaintiffs consented to the alleged trespass").

### 3.       Plaintiffs Do Not Plausibly Allege a Violation of the Washington CPA.

14      To state a violation of the Washington Consumer Protection Act ("CPA"), RCW

15  § 19.86.010 *et seq.*, plaintiffs must allege that Amazon's conduct was:  (1) unfair or

16  deceptive; (2) occurred in trade or commerce; (3) affects the public interest; and (4) injury to

17  plaintiff's business or property; and (5) causation. *Ambach v. French*, 167 Wn.2d 167, 171

18  (2009) (*citing Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778,

19  780 (1986)); *Browne v. Avvo Inc.*, 525 F. Supp. 2d 1249, 1254 (W.D. Wash. 2007) (Lasnik,

20  J.).

21      Plaintiffs' CPA claims should be dismissed for two reasons.  First, each of the

22  allegedly unfair and deceptive acts was either authorized by plaintiffs or is too speculative to

23  permit relief.  Second, the harms alleged by plaintiffs are not cognizable injuries under the

24  CPA.

25

26

AMAZON'S MOTION TO DISMISS
CONSOLIDATED AMENDED
SUPPLEMENTAL COMPLAINT
Case No. C11-00366-RSL

25

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

a.      **Plaintiffs Allege No Unfair or Deceptive Act or Practice.**

An act is unfair or deceptive if it has the capacity to deceive a substantial portion of the public, which is a determination that can be made as a matter of law on a motion to dismiss. *Minnick v. Clearwire US, LLC*, 683 F. Supp. 2d 1179, 1186 (W.D. Wash. 2010) (Pechman, J.).  Plaintiffs contend that Amazon did three things that were unfair or deceptive: (1) deployment of its P3P compact policy; (2) placement of LSOs; and (3) disclosure to third parties of plaintiffs' personally identifiable information ("PII").  CASC ¶ 173.

As an initial matter, the third contention—plaintiffs' conclusory assertion that Amazon shared their PII with pet supply purveyors—is not supported by plausible factual allegations and should be disregarded.  *See supra* Part III.A.

Plaintiffs' other two claimed unfair or deceptive acts—that Amazon promulgated a misleading P3P policy and used Flash cookies without adequate notice or consent—are foreclosed by Amazon's unequivocal disclosure of its cookie practices to plaintiffs in the Conditions of Use and Privacy Notice.  *See supra* Part III.C.1.b.  A similar situation arose in *Minnick*, where plaintiffs asserted that defendant's advertisements had the tendency and capacity to deceive.  683 F. Supp. 2d. at 1188.  The court rejected the plaintiffs' argument as conclusory, finding that they had failed to allege that they had viewed any statements of the defendant, let alone relied on the content of any particular statement of the defendant.  *Id.* The court further found that the plaintiff's allegations were unsupported, as the documents that the plaintiffs referenced in the complaint disclosed that which the plaintiffs asserted was not disclosed.  *Id.*   The court accordingly held that the plaintiffs had only pled conclusions of law, which were insufficient to support a claim.  *Id.*

Amazon clearly disclosed its practices in its Conditions of Use and Privacy Notice, and therefore as a matter of law, Amazon's alleged conduct—even if true—does not have the capacity to deceive a substantial portion of the public.  *See Lowden v. T-Mobile USA Inc.*, 378 Fed. Appx. 693, 695 (9th Cir. 2010) (affirming Rule 12(c) motion where customer bill

AMAZON'S MOTION TO DISMISS
CONSOLIDATED AMENDED
SUPPLEMENTAL COMPLAINT
Case No. C11-00366-RSL

26

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1   described regulatory fee—in a potentially misleading manner—as a "tax," as the terms and

2   conditions that customers were bound by made clear that customers would be required to pay

3   all taxes and regulatory fees); *Smale v. Cellco P'ship*, 547 F. Supp. 2d 1181, 1188-89 (W.D.

4   Wash. 2008) (Jones, J.) (granting motion to dismiss, as imposition of charges was neither

5   deceptive nor unfair, as a matter of law, where the charges were described in defendant's

6   disclosures); *see also Robinson v. Avis Rent A Car Sys., Inc.*, 106 Wn. App. 104, 118-19

7   (2001) (affirming summary judgment for defendants on CPA claim as there was no causation

8   where terms were fully disclosed, and thus, there was no misrepresentation of fact).

9         **b.  Plaintiffs Allege No Cognizable Injury to Business or Property.**

10     Plaintiffs allege two theoretical harms from Amazon's actions:  (i) diminished value of

11   their personal information caused by Amazon's collection of it; and (ii) diminished value of

12   their computers due to allegedly slow loading of web pages.  Neither of these constitutes an

13   injury to business or property as required by Washington law.  *See, e.g., Hangman Ridge*

14   *Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d.778, 780 (1986).

15         **i.  Any injuries relating to control of personal information are**
          **not injuries to business or property.**

16

17     Washington law does not recognize that plaintiffs' first injury—purported loss of

18   control of personal information—constitutes an injury to business or property.  Injuries to

19   personal rights are not redressable under the CPA, as they are not injuries to business or

20   property.  *Leingang v. Pierce County Med. Bureau, Inc.*, 131 Wn.2d.133, 158 (1997)

21   ("[P]ersonal injuries, including mental pain and suffering, are not compensable under the

22   Consumer Protection Act."); *Ambach*, 167 Wn.2d.at 173-74 (financial losses from personal

23   injury do not constitute an injury to business or property).

24     Other courts that have had the opportunity to consider the type of theory that plaintiffs

25   advance here have rejected efforts to classify them as injuries to business or property.  *See,*

26   *e.g., Lambert v. Hartman*, 517 F.3d 433, 445-46 (6th Cir. 2008) (disclosure of personally

AMAZON'S MOTION TO DISMISS
CONSOLIDATED AMENDED
SUPPLEMENTAL COMPLAINT
Case No. C11-00366-RSL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  identifying information did not implicate a property right); *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d

2  1121, 1127 (N.D. Cal. 2008) (granting motion for judgment on the pleadings for state unfair

3  acts and deceptive practices statute, as loss of personally identifying information did not

4  constitute an injury to property); *Hanson v. Hancock Cnty. Mem'l Hosp.*, 938 F. Supp. 1419,

5  1438-39 (N.D. Iowa 1996) (granting summary judgment on conversion claim as there was no

6  legal basis for finding a property interest in personal information).  Accordingly, plaintiffs'

7  claimed loss of control of, or theoretical value in, their personal information or privacy is not

8  an injury to business or property, and as such, is not actionable under the CPA.

9                    ii.    **Browser and computer failures to operate in conformity
10                           with subjective expectations are not an injury to business or
                             property.**

11         As explained above, *supra* Parts III.C.1.a, C.2.a, plaintiffs have not plausibly alleged

12  that Amazon's actions damaged their computers.

13         To the extent that plaintiffs claim "injury" to subjective preferences about how their

14  web browser or computer would operate, their claim is not cognizable under the CPA.  *See,*

15  *e.g.*, *Brotherson v. Prof'l Basketball Club, L.L.C.*, 604 F. Supp. 2d 1276, 1295-96 (W.D.

16  Wash. 2009) (Jones, J.) (granting motion for summary judgment).  In *Brotherson*, purchasers

17  of season tickets for Sonics games claimed that it was unfair and deceptive to fail to disclose

18  that the Sonics were intending to leave the city at the end of the season.  *Id.* at 1295.  The

19  ticket purchasers used their tickets to attend the games, and they received the benefits

20  associated with the season ticketholder club.  *Id.*   However, they claimed that the value of the

21  tickets to the games was lessened by the team's imminent departure, which was publicized

22  before the end of the season.  *Id.*   The court found that the plaintiffs' injury was not a

23  cognizable injury to business or property, and it granted summary judgment for the defendant,

24  dismissing the CPA claim.  *Id.*   The principle from *Brotherson* is that when the injury

25  allegedly suffered by an individual is not a verifiable and quantifiable injury, but rather, is

26  only a disruption to subjective preferences, there is no injury to business or property.

AMAZON'S MOTION TO DISMISS
CONSOLIDATED AMENDED
SUPPLEMENTAL COMPLAINT
Case No. C11-00366-RSL

                              28

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

As with injuries to subjective preferences, general inconveniences are not injuries to business or property. *See Dilorenzo v. Costco Wholesale Corp.*, 515 F. Supp. 2d 1187, 1198 (W.D. Wash. 2007) (Coughenour, J.). In *Dilorenzo*, the court granted a motion for summary judgment on the plaintiff's CPA claim where the plaintiff was stopped and questioned when she entered a store about whether her dog was actually a service animal. The court held that the subjective injury to the plaintiff's "daily shopping trade" was not a CPA injury. *Id.* As in *Dilorenzo*, any purported inconvenience or affront to plaintiffs resulting from Amazon's actions do not constitute injuries to business or property, and does not give rise to a claim under the CPA.

**4.       Plaintiffs Do Not Allege a Plausible Claim for Unjust Enrichment.**

The elements of an unjust enrichment claim under Washington common law are that "(1) one party must have conferred a benefit to the other; (2) the party receiving the benefit must have knowledge of that benefit; and (3) the party receiving the benefit must accept or retain the benefit under circumstances that make it inequitable for the receiving party to retain the benefit without paying its value." *Cox v. O'Brien*, 150 Wn. App. 24, 37 (2009). Plaintiffs have not plausibly alleged that either they or users have conferred a benefit on Amazon or that it would be inequitable for Amazon to retain any alleged benefit.

**a.       Plaintiffs Conferred No Benefit on Amazon.**

Plaintiffs claim that they conferred benefits on Amazon by visiting and purchasing from <amazon.com>, thus allowing Amazon to collect information about their use of the website, and by providing to Amazon transactional information necessary to complete their purchases. CASC ¶¶ 190-91 ("traffic, transactions and PII").[9] Neither plaintiffs' visits to

---

[9]       Plaintiffs also allege that Amazon "retained money belonging to Plaintiffs." CASC ¶ 191. This is simply a "[t]hreadbare recital[]" of one element of unjust enrichment, unsupported by any factual allegation, that should not be afforded any credit. *See Iqbal*, 129 S. Ct. at 1949-50.

AMAZON'S MOTION TO DISMISS
CONSOLIDATED AMENDED
SUPPLEMENTAL COMPLAINT
Case No. C11-00366-RSL

29

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1   <amazon.com> nor their provision of information to Amazon constitute a "benefit," as neither

2   has ascertainable value.

3          In a similar cookie-based privacy lawsuit, when considering the "value" of personal

4   information collected by cookies, the United States District Court for the Southern District of

5   New York observed that it was "unaware of any court that has held the value of this collected

6   information constitutes damage to consumers or unjust enrichment to collectors."

7   *DoubleClick*, 154 F. Supp. 2d at 525.  The court found that it would be a "dubious

8   assumption" to consider "the value of: (1) the opportunity to present plaintiffs with

9   advertising; and (2) the demographic information [the defendant] has collected." *Id.*  The

10  court reasoned that the "value" of the plaintiffs' time and attention to advertisements should

11  not be treated any differently than other websites or mediums in which advertisements are

12  presented, and it found further that "although demographic information [collected by cookies]

13  is valued highly ... the value of its collection has never been considered a economic loss to the

14  subject." *Id*

15         Similarly, in dismissing a claim for breach of a privacy policy, the United States

16  District Court for the Eastern District of New York held that personal information collected

17  from individual users and admittedly provided to a third party in violation of a privacy policy

18  did not have "any compensable value in the economy at large:"

19         Plaintiffs may well have expected that in return for providing their personal
           information to JetBlue and paying the purchase price, they would obtain a ticket for air
20         travel and the promise that their personal information would be safeguarded consistent
           with the terms of the privacy policy.  They had no reason to expect that they would be
21         compensated for the "value" of their personal information.  In addition, there is
           absolutely no support for the proposition that the personal information of an individual
22         JetBlue passenger had any value for which that passenger could have expected to be
           compensated.
23

24  *JetBlue*, 379 F. Supp. 2d at 327.

25

26

AMAZON'S MOTION TO DISMISS                          30
CONSOLIDATED AMENDED
SUPPLEMENTAL COMPLAINT
Case No. C11-00366-RSL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    *DoubleClick* and *JetBlue* demonstrate that plaintiffs' visits to <amazon.com>, and the

2    information generated by those visits, do not constitute "benefits" that can support an unjust

3    enrichment claim.

**b.      There Is No Inequity in Amazon's Alleged Actions**.

5            The cases discussed above also illustrate that nothing in the facts alleged would make

6    it unjust for Amazon to retain the "benefit" of observing plaintiffs' activities on its website.

7    Unjust enrichment does not permit recovery for benefits that are volunteered or under

8    circumstances where it would not be unjust to permit the other party to retain the benefit. *See*

9    *Lynch v. Deaconess Med. Cen.*, 113 Wn.2d 162, 164-66 (1989) (mere receipt of benefit does

10   not permit unjust enrichment claim, rather, claim only exists "where money or property has

11   been placed in a party's possession such that in equity and good conscience the party should

12   not retain it."). This is true even if the "benefit" is observation of plaintiffs' activities on a

13   person's website, and if the person making the observation can profit from those observations.

14           Plaintiffs' actions in browsing <amazon.com> have no inherent value in and of

15   themselves, and, absent Amazon, generate no information. Rather, plaintiffs' browsing has

16   value only if and when Amazon observes plaintiffs' interactions with <amazon.com>, creates

17   data about those interactions, and uses those data. "[P]eople are free to profit from the

18   achievements of others except insofar as the law of property recognizes the right of another

19   person to exclude them from doing so." REST. 3D OF RESTITUTION AND UNJUST ENRICHMENT

20   § 2 cmt. e (2000). Plaintiffs' theory boils down to a complaint that Amazon received from

21   them a benefit that they never had and that Amazon itself created. This formulation would

22   turn the theory of unjust enrichment on its head.

**D.      The CASC Should Be Dismissed with Prejudice.**

24           This Court has discretion to determine whether or not to grant leave to amend a

25   complaint, and it can refuse to do so based on factors including: "futility of amendment" and

26   "repeated failure to cure deficiencies by amendments previously allowed." *Leadsinger, Inc.*

AMAZON'S MOTION TO DISMISS                    31
CONSOLIDATED AMENDED
SUPPLEMENTAL COMPLAINT
Case No. C11-00366-RSL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  *v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008).  A "district court's discretion to deny

2  leave to amend is particularly broad where plaintiff has previously amended the complaint."

3  *Allen v. City of Beverly Hills*, 911 F.2d 367, 373-74 (9th Cir. 1990) (affirming denial of leave

4  to amend complaint where it has been previously amended); *see also Fidelity Fin. Corp. v.*

5  *Fed. Home Loan Bank of San Francisco*, 792 F.2d 1432, 1438 (9th Cir. 1986).  This is

6  because prior opportunities to amend, especially after deficiencies have been identified in a

7  motion to dismiss, permits plaintiffs to correct any deficiencies.

8      In this complaint, their fourth, plaintiffs revise and extend their previous theories of

9  harm and provide dozens of additional paragraphs of argument.  But they provide scant new

10  facts related to plaintiffs, and none that plausibly allege any injury or establish the elements of

11  their claims, despite the fact that the CASC was expressly crafted in light of deficiencies that

12  Amazon identified in prior motions to dismiss.  Mot. for Leave to File Consolidated Am.

13  Compl. (Dkt. # 40) at 3 ("[A]mendment would not be futile as plaintiffs seek to cure potential

14  pleading deficiencies that Amazon identified in its motions to dismiss . . . .").  Plaintiffs are

15  simply unable to marshal the facts necessary to support their attenuated theories, and the

16  Court should dismiss the CASC with prejudice under Rules 12(b)(1) and 12(b)(6).

17  ### IV.   CONCLUSION

18      Amazon respectfully requests that the Court dismiss plaintiffs' complaint for failure to

19  state a claim and for failure to allege injury-in-fact, and that the dismissal be made with

20  prejudice because amendment would be futile.

21      DATED this 28th day of July, 2011.

22  K&L GATES LLP

23  By s/ Daniel H. Royalty
    David A. Bateman, WSBA # 14262
24      Daniel H. Royalty, WSBA # 31504
    Samuel R. Castic, WSBA # 39301
25      Andrew C. Glass, admitted *pro hac vice*
Attorneys for Defendant
26  Amazon.com, Inc.

AMAZON'S MOTION TO DISMISS
CONSOLIDATED AMENDED
SUPPLEMENTAL COMPLAINT
Case No. C11-00366-RSL

32

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022