UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NICOLE DEL VECCHIO, *et al.*,

                    Plaintiffs,

          v.

AMAZON.COM, INC.,

                    Defendant.

Case No. C11-366RSL

ORDER GRANTING IN
PART DEFENDANT'S THIRD
MOTION TO DISMISS

This matter comes before the Court on Defendant's "Motion to Dismiss [Plaintiffs']
Second Consolidated Amended Supplemental Complaint" ("SCASC").  Dkt. # 62.

The motion is Defendant's third motion to dismiss.  Defendant withdrew its first motion
after the Court granted Plaintiffs' post-motion request to amend their complaint.  Compare Dkt.
## 44, 46.  And the Court granted Defendant's subsequent 12(b)(6) motion to dismiss Plaintiffs'
Consolidated Amended Supplemental Complaint, finding that Plaintiffs failed to plead any
plausible claims.  Dkt. # 49.  The Court granted Plaintiffs leave to amend, however, to allow
them yet another opportunity to remedy the identified deficiencies.  Id.  It noted, however, that
this opportunity would be Plaintiffs' last.  Id.

In the present motion, Defendant asserts that Plaintiffs' failed to capitalize on that
opportunity.  The Court agrees in part.  Plaintiffs have failed to allege sufficient facts to plead a
Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, or common law trespass to

chattels claim.  The Court therefore GRANTS Defendants motion to dismiss with prejudice as to those claims.[1]  The Court also finds it very likely that Defendant's "Conditions of Use and Privacy Notice" disclose sufficient information to negate Plaintiffs' Washington Consumer Protection Act ("CPA") and unjust enrichment claims (as well as his CFAA and trespass to chattels claims).  Nevertheless, the Court will indulge Plaintiffs' request to allow it an opportunity to present all the material pertinent to the issue. Fed. R. Civ. P. 12(d).  The parties are directed to meet and confer and file within 30 days of the date of this Order a joint notice that sets forth a summary judgment briefing schedule on the "authorization" issue.  Limited discovery concerning the availability and location of Defendant's terms on its web site and each Plaintiff's awareness of those terms and use of the site would seem to be appropriate.

## I. BACKGROUND

As the Court previously explained, this is a case of cookies. Dkt. # 49.  Not the kind made with sugar and flour, but those alphanumeric identifiers that are transferred from a web site to a visitor's hard drive through the visitor's web browser when a web site is visited.  Dkt. # 50-2 at 1; accord Bose v. Interclick, Inc., No. 10-cv-9183, 2011 WL 4343517, at *1 (S.D.N.Y. Aug. 17, 2011) (discussing cookies).  Web sites use these internet cookies to "gather information about a computer user's internet habits" and "associate 'browsing history information' with particular computers."  Bose, 2011 WL 4343517, at *1.  Typically, the transfer of cookies is automatic.  Web site visitors who do not desire cookies and their consequences must either delete them as they are received or use software to block their acceptance.  E.g., id.

As Plaintiffs allege, however, refusing Defendant's cookies was a complicated task.  They complain that Defendant placed standard browser cookies on Plaintiffs' computers against their wishes by "exploiting" a known frailty in the cookie-filtering function of Microsoft's Internet Explorer browser software.  SCASC (Dkt. # 61) at ¶¶ 4–6 (describing browser cookies);

---

[1] Because the matter can be decided based on the parties' memoranda, the complaint, and the balance of the record, Defendant's request for oral argument is DENIED.

1    id. at ¶¶ 32–53.  Specifically, they allege that Defendant intentionally published a "gibberish"

2    web site Compact Policy[2] that fooled their browser into accepting Defendant's cookies despite

3    their filter settings.  Id. at ¶¶ 32–53.  They also contend that Defendant retooled Adobe Flash

4    Local Stored Objects ("Flash cookies") to behave as traditional browser cookies knowing that

5    Plaintiffs' browser software would not recognize them as "cookies" and thus not preclude them

6    from being placed on Plaintiffs' computers.  Id. at ¶¶ 7, 54–77.  And finally, Plaintiffs assert that

7    Defendant both used the information it gathered for its own benefit and also shared that

8    information with third parties despite the terms of its Privacy Notice.  Id. at ¶¶ 78–84.

9        As a result of these alleged wrongs, Plaintiffs' allege that "Amazon's conduct violated

10   their legally protected property interests" in the exclusive use of "their computers and computer

11   resources" and circumvented their "right to control the dissemination and use of personal

12   information belonging to them, including sensitive information about their web browsing and

13   shopping habits, purchases, and related transaction information, combined with their financial

14   information such as credit and debit card information, and their mailing and billing addresses."

15   Opp. (Dkt. # 67) at 8.  Plaintiffs contend that these injuries led to "several forms of economic

16   injuries, all of which boil down to the failure to compensate Plaintiffs and Class members for the

17   value of their personal information and computer assets that Amazon misappropriated through

18   its various 'exploits.'"  Id.  They allege that "a reasonable estimate of the economic value [of the

19   information] to each Plaintiff and Class member . . . is substantially in excess of 1/100th of one

20   cent."  SCASC (Dkt. # 61) at ¶ 145.

21       In light of these allegations, Plaintiffs seek relief on behalf of themselves and a proposed

22   class under the Computer Fraud and Abuse Act ("CFAA") and Washington's Consumer

23   Protection Act ("CPA").  They also assert claims for common law trespass to chattels and unjust

24   enrichment.

25   _____

26       [2]  According to Plaintiffs, a Compact Policy permits a visitor's browser to automatically
     determine a web site's privacy settings and adjust its security settings, including its level of cookie-
27   filtering protection, accordingly.  SCASC (Dkt. # 61) at ¶¶ 32–40.

28   ORDER GRANTING IN PART DEFENDANT'S THIRD MOTION TO DISMISS - 3

1

## II.  DISCUSSION

2      As before, Defendant raises two broad arguments as for why Plaintiffs' complaint (Dkt. #

3  45) should be dismissed.  It contends that Plaintiffs have failed to allege any injury-in-fact, and

4  thus lack Article III standing.  Fed. R. Civ. P. 12(b)(1).  And it argues that Plaintiffs have failed

5  to allege sufficient facts to support any of their four claimed bases for relief.  Fed. R. Civ. P.

6  12(b)(6).  The Court finds that Plaintiffs have alleged sufficient injury to have standing.  It thus

7  considers whether Plaintiffs have alleged sufficient facts to plead a plausible claim for relief.

8  **A.      12(b)(6) Dismissal Standard**

9      "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

10  accepted as true,[3] to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129

11  S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  This

12  standard "asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.  If "a

13  complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of

14  the line between possibility and plausibility of "entitlement to relief."'"  Id. (quoting Twombly,

15  550 U.S. at 557).

16      Accordingly, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation

17  of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders

18  'naked assertion[s]' devoid of 'further factual enhancement.'"  Id. (quoting Twombly, 550 U.S.

19  at 555, 557).  Rather, a plaintiff must plead sufficient "factual content [to] allow[] the court to

20  draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

21  **B.      Plaintiffs' Claims**

22      **1.      Computer Fraud and Abuse Act**

23      The CFAA is predominately a criminal statute.  It provides, in pertinent part, that

24

25  ─────────────────

26  [3] "We accept as true all well-pleaded allegations of material fact, and construe them in the light
    most favorable to the non-moving party."  Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th
27  Cir. 2010).  "We are not, however, required to accept as true allegations that contradict exhibits attached
    to the Complaint or matters properly subject to judicial notice . . . ."  Id.

28  ORDER GRANTING IN PART DEFENDANT'S THIRD MOTION TO DISMISS - 4

1    "[w]hoever knowingly and with intent to defraud, accesses a protected computer <u>without</u>

2    <u>authorization, or exceeds authorized access</u>, and by means of such conduct furthers the intended

3    fraud and obtains anything of value . . . shall be punished."  18 U.S.C. § 1030(a)(4); § 1030(e)(2)

4    (emphasis added) (defining the term "protected computer" to include any computer "used in or

5    affecting interstate or foreign commerce or communication").  The statute also provides a civil

6    cause of action, however, provided the allegedly fraudulent "conduct involves 1 of the factors set

7    forth in clause (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)."  18 U.S.C. § 1030(g).  Only

8    clause (I) is implicated in this case:  "loss to 1 or more persons during any 1-year period . . .

9    aggregating at least $5,000 in value."  § 1030(c)(4)(A)(i)(I).

10        Accordingly, two threshold showings are at issue:  whether Plaintiffs have alleged

11   sufficient "factual content" to allow the Court to reasonably infer that Plaintiffs suffered an

12   aggregate loss of at least $5,000.  <u>LVRC Holdings LLC v. Brekka</u>, 581 F.3d 1127, 1132 (9th Cir.

13   2009).  And whether Plaintiffs have alleged facts that, taken as true, demonstrate that Defendant

14   caused that harm by accessing Plaintiffs' computers without authorization.  <u>See id.</u>

15                    **i.    Loss of $5,000**

16        "Loss" is defined at § 1030(e)(11) as "any reasonable cost to any victim, including the

17   cost of responding to an offense, conducting a damage assessment, and restoring the data,

18   program, system, or information to its condition prior to the offense, and any revenue lost, cost

19   incurred, or other consequential damages incurred because of interruption of service."

20        As before, Defendant contends that Plaintiffs have failed to allege sufficient facts that,

21   taken as true, would demonstrate a loss of $5,000.  Plaintiffs disagree.  They reiterate their

22   previous allegations:  that Defendant's actions "raise[d] the cost of admission to Amazon's

23   website," "charge[d] an undisclosed toll for the use of its website," "imposed opportunity costs

24   on Plaintiffs," and "constituted a taking and use of their computer assets without compensation."

25   Opp. (Dkt. # 67) at 17–18.

26        They also allege two new facts:  (1) that they "purchased anti-virus software protection

27   because they did not want spyware and malware slowing down their Internet connection and

28   ORDER GRANTING IN PART DEFENDANT'S THIRD MOTION TO DISMISS - 5

1   [wanted] to prevent hackers from accessing information on files located on the hard drives of

2   their computers" and "Amazon's exploits defeated such software," SCASC (Dkt. # 61) at ¶ 128,

3   and (2) that their "private information . . . had economic value far in excess of $5,000 in that,

4   regardless of whether and to what extent such information was economically exploitable by

5   Plaintiffs and Class Members, an online advertiser such as Amazon could utilize such

6   information, and Amazon did in fact utilize such information, to derive very substantial financial

7   gain," id. at ¶ 173.  The Court finds that these allegations insufficient to "'state a claim to relief

8   that is plausible on its face.'"  Iqbal, 129 S. Ct. at 1949 (citation omitted).

9        First, the Court flatly rejects Plaintiffs' position that "'[c]ost' does not exclude non-

10  monetary detriments."  Opp. (Dkt. # 67) at 17.  The statute makes clear that losses must

11  aggregate to at least $5,000.  § 1030(c)(4)(A)(i)(I).  "[N]on-monetary detriments" plainly have

12  no relation to this requirement.  See id.

13        In addition, the Court finds again that, even assuming Plaintiffs' alleged costs qualify as

14  CFAA losses,[4] Plaintiffs have failed to allege facts from which it could plausibly be inferred that

15  those costs total at least $5,000.  The Court previously explained that Plaintiffs' broad allegation

16  that Defendant's actions "deprived [Plaintiffs] of the opportunity to exchange their valuable

17  information" was entirely speculative.  Like other district courts, this Court noted that while it

18  "recognize[d] the viability in the abstract of such concepts as 'opportunity costs,' 'value-for-

19  value exchanges,' 'consumer choice,' and other concepts referred to in the Opposition, what

20  Plaintiffs really need[ed] to do is to give some particularized example of their application in this

21  case."  Dkt. # 58 at 6 (quoting La Court v. Specific Media, Inc., No. SACV 10-1256-GW, 2011

22  WL 2473399, at *4 (C.D. Cal. April 28, 2011)).  It told Plaintiffs that they needed to allege facts

23  sufficient to demonstrate that a $5,000 loss had actually occurred.  § 1030(c)(4)(A)(i)(I); Iqbal,

24  129 S. Ct. at 1949.

25

26

27        [4] The parties dispute whether the asserted loss in value of Plaintiffs' "personally identifiable information" could constitute a CFAA losses.

28  ORDER GRANTING IN PART DEFENDANT'S THIRD MOTION TO DISMISS - 6

1    Rather than alleging such facts,[5] Plaintiffs all-but concede that they suffered no actual

2    monetary detriment by alleging that the "private information" at the heart of this dispute was not

3    "economically exploitable by Plaintiffs and Class Members"—only that it was valuable to

4    Defendant.  SCASC (Dkt. # 61) at ¶ 173 (emphasis added) ("The collective private information

5    of Plaintiffs and class members wrongfully appropriated by Amazon had economic value far in

6    excess of $5,000 in that, regardless of whether and to what extent such information was

7    economically exploitable by Plaintiffs and Class Members, an online advertiser such as Amazon

8    could utilize such information, and Amazon did in fact utilize such information, to derive very

9    substantial financial gain." (emphasis added)).  This is simply insufficient.  It is not enough to

10   allege only that the information has value to Defendant; the term "loss" requires that Plaintiffs

11   suffer a detriment—a detriment amounting to more than $5,000.  And by failing to plead any

12   such detriment in regard to their information, Plaintiffs distinguish this case from each of the

13   cases upon which they purport to rely.  Cf. Opp. (Dkt. # 67) at 19.[6]

14       Moreover, Plaintiffs' allegations only confirm what the Court previously suggested—that

15   Plaintiffs' raw information is not valuable.  Absent any factual allegations from which the Court

16   can infer that the value of Plaintiffs' raw data decreased, it is simply just as likely, if not more

17   likely, that Plaintiffs' otherwise non-"economically exploitable information" gains utility—and

18

19       [5]  For example, Plaintiffs do not allege that they attempted to sell their "private information" to
20   one of the purchasers they identify, cf. Opp. (Dkt. # 67) at 17 n.4, and were rebuffed because Defendant
     had already sold or publicized that information.  Certainly, that would be a rather easy way to
21   demonstrate the required "loss."  Instead, Plaintiffs merely reiterate their depreciation argument,
     untethered to any fact-based allegation of actual depreciation.  Thus, apart from the fact that their failure
22   to use their own identified markets suggests only that there was no actual loss, the Court can simply rely
     on Iqbal, which makes clear that argument alone is not enough.  129 S. Ct. at 1949.
23

24       [6]  Plaintiffs also fail to account for the fact that the subsection of CFAA upon which they rely
     requires a showing of "loss," not "damage."  The two are distinct.  Compare § 1030(e)(8) (defining
25   "damage" as "any impairment to the integrity or availability of data, a program, a system, or
     information"), with § 1030(e)(11) (defining "loss" as "any reasonable cost to any victim, including the
26   cost of responding to an offense, conducting a damage assessment, and restoring the data, program,
     system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other
27   consequential damages incurred because of interruption of service").

28   ORDER GRANTING IN PART DEFENDANT'S THIRD MOTION TO DISMISS - 7

1  thus value—only after it is organized and catalogued by Defendant in a manner that allows

2  advertisers to use it in a targeted fashion.  Accordingly, Plaintiffs' "naked assertion[s]" are

3  "merely consistent with" Defendant's liability and "stop[] short of the line between possibility

4  and plausibility of entitlement to relief"—the required showing.  Iqbal, 129 S. Ct. at 1949

5  (citation and internal quotation marks omitted).

6        Plaintiffs' second category of alleged loss—their assertion that Defendant's "exploits

7  defeated their valuable browser and anti-virus software because the exploits slowed down their

8  Internet connection and allowed Amazon to repeatedly access information stored on their

9  computer," Opp. (Dkt. # 67) at 19—is also deficient.  Again, Plaintiffs couch their allegations in

10 generalities.  Not one Plaintiff alleges that he or she experienced any noticeable difference in his

11 or her computer's performance traceable to Defendant's actions.  See SCASC (Dkt. # 61) at

12 ¶ 128.  This is not surprising.  It is a matter of common understanding that cookies are minute in

13 size and thus incapable of noticeably affecting the performance of modern computers.  See

14 Chance v. Ave. A, Inc., 165 F. Supp. 2d 1153, 1159 (W.D. Wash. 2001) (Coughenour, J.)

15 ("Unlike a computer hacker's illegal destruction of computer files or transmission of a

16 widespread virus which might cause substantial damage to many computers as the result of a

17 single act, here the transmission of an internet cookie is virtually without economic harm."

18 (emphasis added)), abrogated on other grounds by Creative Computing v. Getloaded.com LLC,

19 386 F.3d 930, 934–35 (9th Cir. 2004) (holding that "the $5,000 [CFAA] floor applies to how

20 much damage or loss there is to the victim over a one-year period, not from a particular

21 intrusion").

22        In addition, the Court does not see how Plaintiffs' pre-purchased "anti-virus" software is

23 relevant to this claim.  Plaintiffs' first position is that they were relying on their Internet Explorer

24 browser to exclude unwanted cookies and that Defendant exploited that browser to place

25 unwanted cookies on their computers anyway.  SCASC (Dkt. # 61) at ¶¶ 4–6; id. at ¶¶ 32–53.

26 Its second position is that Defendant re-purposed Adobe Flash cookies to behave as tracking

27 cookies.  Id. at ¶¶ 7, 54–77.  Plaintiffs allege no facts about their virus software that suggests it

28 ORDER GRANTING IN PART DEFENDANT'S THIRD MOTION TO DISMISS - 8

had any relation to these two alleged wrongs, let alone that it was intended to preclude the receipt of either cookies or Flash cookies and that Defendant's "defeated" it.[7]  Cf. id. at ¶ 128.

More importantly, these allegations are still devoid of any basis from which the Court might reasonably infer that the Plaintiffs experienced a $5,000 "loss."  Plaintiffs' own allegations reflect that they purchased their "anti-virus" software prior to visiting Defendant's web site.  Id.  And they do not allege any facts demonstrating that Defendant's actions rendered this software inoperational or caused them to purchase qualifying replacement software.  See id.; cf. id. at ¶ 172 (alleging the "purchase of additional privacy protection software" but failing to allege the timing of that purchase, the quantity, or the cost).  The same is true of the alleged diminished performance.  Plaintiffs allege nothing from which a calculable loss could be inferred.

In sum, the Court finds that Plaintiffs still fail to allege sufficient facts from which the Court may infer that their civil CFAA claim reaches the necessary threshold loss amount.

### ii.    Authorization

The Court finds that Plaintiffs' failure to plead sufficient facts of a plausible CFAA loss is dispositive.

### 2.    Washington's Consumer Protection Act

To state a claim under Washington's CPA, chapter 19.86 RCW, Plaintiffs must allege "(1) an unfair or deceptive act or practice, (2) that occurs in trade or commerce, (3) a public interest, (4) injury to the plaintiff in his or her business or property, and (5) a causal link between the unfair or deceptive act and the injury suffered."  Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc., 162 Wn.2d 59, 73 (2007).  Defendant asserts that Plaintiffs' claim should be dismissed for two reasons:  failure to adequately allege "(1) an unfair or deceptive act or practice" and "(4) injury to the plaintiff in his or her business or property."

---

[7] The Court is aware of the fact that cookies and viruses are not one and the same.  As is evidenced by Plaintiffs' reliance on their browsers to avoid cookies, rather than their newly alleged virus software, so are they.

1

### i.    Injury to Business or Property

2   The CPA requires a plaintiff "to establish that he or she has suffered harm"—"a specific

3   showing of injury." Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d

4   778, 792 (1986)).  "While [t]he injury involved need not be great, or even quantifiable, it must

5   be an injury to 'business or property.'"  Ambach v. French, 167 Wn.2d 167, 171–72 (2009)

6   (alteration in original) (internal quotation marks and citations omitted).  Notably, though,

7   Washington law does not require damages to show "injury."  Id. at 408 n.3.

8   Considering Plaintiffs' twin theories for liability, the Court finds that Plaintiffs can only

9   allege an injury if they can demonstrate that Defendant accessed their computers or their

10   information without authorization.  And, the issue of authorization is quite complicated.  As the

11   Court noted in its prior Order, Defendant's "Conditions of Use and Privacy Notice" appear to

12   notify visitors that it will take the very actions about which Plaintiffs now complain:  place

13   browser and Flash cookies on their computers and use those cookies to monitor and collect

14   information about their navigation and shopping habits.[8]  See Dkt. # 64-5 (Exhibit E: Conditions

15   _____

16   [8] For example, the Privacy Notice provides in part:

17   **Last updated: October 1, 2008.**  To see what has changed, click here.  Amazon.com knows

18   that you care how information about you is used and shared, and we appreciate your trust
    that we will do so carefully and sensibly.  This notice describes our privacy policy.  **By**

19   **visiting Amazon.com, you are accepting the practices described in this Privacy Notice.**
    * * *

20   The information we learn from customers helps us personalize and continually improve

21   your shopping experience at Amazon.com.  Here are the types of information we gather.

22   • **Information You Give Us:**  We receive and store any information you enter on

23   our Web site or give us in any other way.  Click here to see examples of what we
    collect.  You can choose not to provide certain information, but then you might

24   not be able to take advantage of many of our features.  We use the information
    that you provide for such purposes as responding to your requests, customizing

25   future shopping for you, improving our stores, and communicating with you.

26   • **Automatic Information:**  We receive and store certain types of information

27   whenever you interact with us.  For example, like many Web sites, we use
    "cookies," and we obtain certain types of information when your Web browser

28

of Use; Exhibit F: Privacy Notice); <u>accord</u> Dkt. # 50 (Exhibit A: Conditions of Use; Exhibit B: Privacy Notice).  They inform visitors that their use of Defendant's web site is conditioned on their acceptance of its terms and that visitors who do not desire cookies should consult with their browser's manufacturer.  Dkt. # 50-2 at 1–2.  And, perhaps most importantly, they inform visitors <u>that failure to accept cookies will effectively preclude their use of Defendant's site</u>.  <u>Id.</u> Accordingly, Plaintiffs' use of Defendant's site to make purchases would appear to serve both as an acknowledgment that cookies were being received and an implied acceptance of that fact.

　　　To avoid the import of these terms, Plaintiffs raise two arguments:  (1) that "there is no basis to conclude that Amazon's disclosures, even if read, informed Plaintiffs that Amazon intentionally bypasses Plaintiffs' internet browser controls," and (2) that "Amazon's disclosures

---

> accesses Amazon.com or advertisements and other content served by or on behalf
> <u>of Amazon.com on other Web sites.</u>  Click here to see examples of the
> information we receive.

Dkt. # 50-2 at 1 (some emphasis added).

Under the heading "What About Cookies?," the Notice goes on to explain:

- Cookies are alphanumeric identifiers that we transfer to your computer's hard drive through your Web browser to enable our systems to recognize your browser and to provide features such as 1-Click purchasing, Recommended for You, personalized advertisements on other Web sites (e.g., Amazon Associates with content served by Amazon.com and Web sites using Checkout by Amazon payment service), and storage of items in your Shopping Cart between visits."

- The Help portion of the toolbar on most browsers will tell you how to prevent your browser from accepting new cookies, how to have the browser notify you when you receive a new cookie, or how to disable cookies altogether.  Additionally, you can disable or delete similar data used by browser add-ons, <u>such as Flash cookies,</u> by changing the add-on's settings or visiting the Web site of its manufacturer.  However, <u>because cookies allow you to take advantage of some of Amazon.com's essential features, we recommend that you leave them turned on.  For instance, if you block or otherwise reject our cookies, you will not be able to add items to your Shopping Cart, proceed to Checkout, or use any Amazon.com products and services that require you to Sign in.</u>

<u>Id.</u> at 1–2 (emphasis added).

1   are so buried within Amazon's website that Plaintiff did not read them and cannot reasonably be

2   expected to have read them."[9]  Opp. (Dkt. # 67) at 4.  Notably, Plaintiffs' first position is a

3   marked departure from their prior position that they "do not allege that misstatements [or]

4   omissions in Amazon's Privacy Notice and Terms of Use caused them injury."  Dkt. # 52 at 28.

5   It may be that Plaintiffs are judicially estopped from asserting this new theory of liability.  See

6   Williams v. Boeing Co., 517 F.3d 1120, 1134–35 (9th Cir. 2008).

7          In contrast, Plaintiffs' second position is not new.  They rely on the Second Circuit's

8   opinion in Specht v. Netscape Commc'ns Corp., 306 F.3d 17 (2d Cir. 2002), to contend that

9   "Amazon's disclosures, even if they accurately depicted Amazon's activities, are not prominent

10   enough to put a reasonable user on notice of them."  Opp. (Dkt. # 67) at 13–14.  And in the face

11   of Defendant's contrary evidence—evidence that purports to show that Defendant placed links to

12   both its Conditions of Use and its Privacy Notice on its home page, Dkt. # 64 at ¶ 3, as well as

13   on each of its "checkout pages," id. at ¶¶ 4–7—they argue only that the Court should not

14   consider Defendant's evidence in resolving the present motion.  The Court disagrees.

15          When evaluating a motion to dismiss, a court may consider documents on which a

16   "complaint 'necessarily relies' if:  (1) the complaint refers to the document; (2) the document is

17   central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to

18   the 12(b)(6) motion."  Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010)

19   (citations and internal quotation marks omitted).  And in this case, Plaintiffs refer to Defendant's

20   terms in paragraphs 25, 78, and 91–109 of their Second Consolidated Amended Supplemental

21   Complaint (Dkt. # 62), and the terms are clearly central to Plaintiffs' claim.  Moreover, Plaintiffs

22   raise no objection as to the authenticity of the copy of the terms or the web site pages attached to

23   _____

24          [9]  Given the issue of causation identified by the Court in its previous Order, Plaintiffs appear to
     have abandoned their contention that their injury occurred as soon as they navigated to Defendant's site

25   and cookies were transferred to their computer.  See Dkt. # 52 at 28–29 ("Instead, Plaintiffs allege that
     Amazon's deceptive conduct occurred before plaintiffs could ever read Amazon's Privacy Notice and its

26   Terms of Use." (emphasis in original)).  They also appear to concede that they "do not assert false
     advertising claims and do not allege that misstatements [or] omissions in Amazon's Privacy Notice and

27   Terms of Use caused them injury."  Opposition (Dkt. # 52) at 28.

28   ORDER GRANTING IN PART DEFENDANT'S THIRD MOTION TO DISMISS - 12

1    Defendant's motion.  See Opp. (Dkt. # 15–16).  They simply argue against their consideration.

2    Accordingly, the Court will consider Defendant's exhibits.  Knievel v. ESPN, 393 F.3d 1068,

3    1076–77 (9th Cir. 2005) ("The rationale of the 'incorporation by reference' doctrine applies with

4    equal force to internet pages as it does to printed material.  Just as a reader must absorb a printed

5    statement in the context of the media in which it appears, a computer user necessarily views web

6    pages in the context of the links through which the user accessed those pages.").

7          Notably, because the Court intends to consider Defendant's exhibits in the resolution of

8    Defendant's motion as to Plaintiffs' CPA claim (as well as their unjust enrichment claim), it is

9    required by Federal Rule of Civil Procedure 12(d) to construe at least that part of Defendant's

10   motion that relies on those exhibits as a motion for summary judgment and provide Plaintiffs "a

11   reasonable opportunity to present all the material that is pertinent to the motion."  Plaintiffs

12   request this opportunity.  Thus, in an abundance of caution, the Court directs the parties meet

13   and confer and file within 30 days of the date of this Order a joint notice that sets forth a

14   summary judgment briefing schedule on the issue of authorization.  Limited discovery

15   concerning Defendant's conditions and notice, their location on Defendant's site, and each

16   Plaintiffs' use of Defendant's site would likely be both beneficial and appropriate.  Cf.

17   Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 402 (2d Cir. 2004) (distinguishing itself from

18   Specht because of the frequency of the claimant's exposure to the defendant's terms); Specht,

19   306 F.3d at 28–29 (applying basic California contract formation principles to determine whether

20   the online terms were effective).

21                    **ii.   Unfair or Deceptive Act or Practice**

22         As discussed, the Court directs the parties to more fully address the issue of whether

23   Defendant's conduct was unfair or deceptive in light of its terms under a summary judgment

24   standard.[10]

25

26   _____

27         [10]  The Court notes that Plaintiff Ariana Del Vecchio has been dismissed from this action.  Dkt. #
     71.  Accordingly, her claims regarding unsolicited mail are no longer at issue.

28   ORDER GRANTING IN PART DEFENDANT'S THIRD MOTION TO DISMISS - 13

1        **3.      Trespass to Chattels**

2        Trespass to chattels "is the intentional interference with a party's personal property

3   without justification that deprives the owner of possession or use." <u>Sexton v. Brown</u>,

4   147 Wn. App. 1005, 2008 WL 4616705, at *5 (2008) (unpublished opinion) (citing Restatement

5   (Second) of Torts § 217 (1965)). It "may be committed by intentionally (a) dispossessing

6   another of the chattel, or (b) using or intermeddling with a chattel in the possession of another."

7   Restatement (Second) of Torts § 217.

8        Notably, however, "[t]he interest of a possessor of a chattel in its inviolability, unlike the

9   <u>similar interest of a possessor of land, is not given legal protection by an action for nominal</u>

10  <u>damages for harmless intermeddlings with the chattel</u>." <u>Id.</u> at § 218, cmt. e (emphasis added).

11  "Therefore, one who intentionally intermeddles with another's chattel is subject to liability only

12  if his intermeddling is harmful to the possessor's materially valuable interest in the physical

13  condition, quality, or value of the chattel, or if the possessor is deprived of the use of the chattel

14  for a substantial time, or some other legally protected interest of the possessor is affected . . . ."

15  <u>Id.</u>

16       As previously discussed, Plaintiffs have failed to plead any facts that would permit the

17  Court to infer that they sustained any plausible harm to a materially valuable interest in the

18  condition, quality, or value of their computers. Unlike in <u>eBay, Inc.</u>, Plaintiffs have not alleged

19  that Defendant "sends some 80,000 to 100,000 requests to plaintiff's computer systems per day."

20  <u>eBay, Inc. v. Bidder's Edge, Inc.</u>, 100 F. Supp. 2d 1058, 1071 (N.D. Cal. 2000). Nor have they

21  alleged that Defendant's cookies "'bombard[ed]' [their] computers with pop-up advertisements

22  that obscure[d] the web page a user [wa]s viewing and 'destroy[ed] other software on [their]

23  computer.'" <u>Sotelo v. DirectRevenue, LLC</u>, 384 F. Supp. 2d 1219, 1230 (N.D. Ill. 2005).

24       To the contrary, not a single Plaintiff has alleged that he or she even noticed any

25  diminution in the  performance of their computers, relying instead on generalities. <u>See</u> SCASC

26  (Dkt. # 61) at ¶ 128. Accordingly, even were the court to assume that Defendant interfered with

27  Plaintiffs' personal property <u>without justification</u>, there is no basis from which the Court could

28  ORDER GRANTING IN PART DEFENDANT'S THIRD MOTION TO DISMISS - 14

conclude that Defendant's interference caused any plausible harm to that property.  Cf. Specific
Media, 2011 WL 2473399, at *7 (C.D. Cal. 2011) ("Here, Plaintiffs have not alleged that the
functioning of their computers was impaired (except in the trivial sene of being unable to
permanently delete cookies) or would be imminently impaired to the degree that would enable
them to plead the elements of the tort.").

### 4.    Unjust Enrichment

As before, the basis of Plaintiffs' claim for unjust enrichment is Defendant's alleged
unauthorized appropriation of Plaintiffs' information.  E.g., SCASC (Dkt. # 61) at ¶¶ 212–17.
They assert that they have cured the factual deficiency previously present, however, by alleging
that Defendant "profited to the extent of millions of dollars by surreptitiously taking personal
information from Plaintiffs . . . and consuming their computer assets."  The Court is not entirely
convinced.

"To establish unjust enrichment, the claimant must meet three elements:  (1) one party
must have conferred a benefit to the other; (2) the party receiving the benefit must have
knowledge of that benefit; and (3) the party receiving the benefit must accept or retain the
benefit under circumstances that make it inequitable for the receiving party to retain the benefit
without paying its value."  Cox v. O'Brien, 150 Wn. App. 24, 37 (2009).  Notably, though, "the
mere fact that a person benefits another is not sufficient to require the other to make restitution."
Lynch v. Deaconess Med. Ctr., 113 Wn.2d 162, 165 (1989) (citing Restatement of Restitution §
1 cmt. c (1937)).  The crux of an unjust enrichment claim is "that a person who is unjustly
enriched at the expense of another is liable in restitution to the other."  Dragt v. Dragt/DeTray,
LLC, 139 Wn. App. 560, 576 (2007) (emphasis added).

In regard to expense, the Court has already explained that Plaintiffs have failed to
plausibly allege any monetary detriment.[11]  Cf. In re DoubleClick Inc. Privacy Litig., 154 F.

---

[11]  To be clear, the Court acknowledges that Plaintiffs allege that they value their information "in
an amount substantially in excess of 1/100th of one cent."  SCASC (Dkt. # 61) at ¶ 174.  The issue is
that Plaintiffs have not alleged any facts to demonstrate any depreciation of that value.

ORDER GRANTING IN PART DEFENDANT'S THIRD MOTION TO DISMISS - 15

1  Supp. 2d 497, 525 (S.D.N.Y. 2001) ("[A]lthough demographic information is valued highly . . .

2  the value of its collection has never been considered a economic loss to the subject.

3  Demographic information is constantly collected on all consumers by marketers, mail-order

4  catalogues and retailers.  However, we are unaware of any court that has held the value of this

5  collected information constitutes damage to consumers or unjust enrichment to collectors."

6  (footnote omitted)).  Accordingly, they can only rely on their assertion that, "regardless of

7  whether or to what extent such property had economic value to Plaintiffs and class members,

8  Amazon took property belonging to them."  SCASC (Dkt. # 61) at ¶ 214.  Because this assertion

9  is entirely dependant on whether Defendant acted without authorization or in excess of its

10  authorization, the Court will await further briefing to resolve the issue.

### III. CONCLUSION

12  For all of the foregoing reasons, the Court GRANTS Defendant's motion to dismiss IN

13  PART.  Plaintiffs have not plead adequate facts to plausibly establish either a $5,000 loss or that

14  Defendant did anything more than harmlessly intermeddle with their chattel.  Accordingly,

15  Plaintiffs' CFAA and trespass to chattel claims are dismissed.  Moreover, because the Court has

16  already provided Plaintiffs two opportunities to amend their complaints in the face of motions to

17  dismiss, the Court finds that Plaintiffs must lack the requisite facts to plead an adequate claim.  It

18  thus GRANTS Defendant's motion as to each claim with prejudice.  Chodos v. West Publ'g Co.,

19  292 F.3d 992, 1003 (9th Cir. 2002) (setting forth standard of review and noting that court's

20  discretion is particularly broad where it has already granted leave to amend).

21  As to Plaintiff's remaining CPA and unjust enrichment claims, the Court finds that

22  Defendant's motion is dependant on matters outside the pleadings.  It thus construes that part of

23  Defendant's motion as a motion for summary judgment and GRANTS Plaintiffs' request for "a

24  reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P.

25  12(d).  The Court DIRECTS the parties to meet and confer and file within 30 days of the date of

26  this Order a joint notice that sets forth a summary judgment briefing schedule on the issue of

27  authorization.  The parties should also discuss whether limited discovery concerning

28  ORDER GRANTING IN PART DEFENDANT'S THIRD MOTION TO DISMISS - 16

1   Defendant's conditions and notice, their location on Defendant's site, and each Plaintiffs' use of

2   Defendant's site would be beneficial to the resolution of this preliminary dispute.

3

4        Dated this 1st day of June, 2012.

5

6

7                       Robert S. Lasnik
                    United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   ORDER GRANTING IN PART DEFENDANT'S THIRD MOTION TO DISMISS - 17